IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ERIC YOUNG,

                     Petitioner,

                                     Civil Action No.
     v.                          9:10-CV-0697(GTS/DEP)

DAVID STALLONE,

                     Respondent.

_____

APPEARANCES:               OF COUNSEL:

FOR PETITIONER:

ERIC YOUNG, *Pro Se*
07-A-0197
Groveland Correctional Facility
7000 Sonyea Road
Sonyea, NY 14556

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN     ALYSON J. GILL, ESQ.
New York State Attorney General    Assistant Attorney General
120 Broadway
New York, NY 10271

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

     Petitioner Eric Young, a New York State prison inmate as a result of

an Onondaga County Court conviction of attempted burglary, has

commenced this proceeding requesting habeas intervention by this court, pursuant to 28 U.S.C. § 2254.  In his petition, Young asserts that his conviction was the product of a plea that was unlawfully induced and involuntary entered, particularly since he was under the influence of medication at the time of its entry, and contends that the trial court should have ordered a mental examination to determine his competency to proceed before accepting his plea, and later compounded the error by refusing to allow him to withdraw the plea prior to sentencing.  Petitioner also alleges that his trial counsel provided him with ineffective representation by not pressing these issues and inadequately counseling him concerning the consequences of his plea.

Having carefully reviewed the record now before the court, considered in light of petitioner's arguments and the deferential standard to be applied to state court determinations of the substantive issues raised, I find that certain of petitioner's claims are procedurally barred as a result of his failure to pursue them in the state courts and that the single claim that was properly preserved, related to the voluntariness and adequacy of his plea, lacks merit.

I.      BACKGROUND

In or about September of 2006, petitioner was named in a three-count indictment returned by an Onondaga County grand jury accusing him and a co-defendant of burglary, robbery, and grand larceny.  State Court Records (Dkt. No. 6) Exh. F at pp. 19 of 29.  The charges contained in the indictment stemmed from an incident occurring on July 21, 2006, when the two named defendants entered and unlawfully remained in a City of Syracuse dwelling occupied by a eighty-eight year old woman and forcibly stole $1700 in United States currency from the victim while there. *Id.,* Exh. B at p. 2 and Exh. C at p. 6.

Following an arraignment on the indictment, held on September 18, 2006, *see* State Court Records (Dkt. No. 6) Exh. A, petitioner appeared in Onondaga County Court before County Court Judge Anthony F. Aloi on October 2, 2006 concerning the charge, accompanied by an assigned attorney.  *Id.,* Exh. B.  During that session, Judge Aloi explained that Young was being offered a plea agreement which conditioned the outcome on his willingness to testify at his co-defendant's trial, in exchange for an agreement to sentence him to a five-year determinate prison sentence, with an additional five-year post-release supervision term.  *Id.*, Exh. B at pp. 2-4.  To place matters in context, the court

3

explained that as a predicate violent felon, if convicted following trial Young would face a prison term of a minimum of ten years, and possibly up to fifteen years.  *Id.*, Exh. B at pp. 3-4.  After a discussion regarding defendant's dissatisfaction with his assigned counsel, Judge Aloi adjourned the matter.  *Id.*, Exh. B at pp. 4-5.

Petitioner again appeared before Judge Aloi on October 12, 2006, accompanied by his newly-appointed attorney, William Bartholomae, Esq. State Court Records (Dkt. No. 6) Exh. C.  At that time, Judge Aloi reiterated the terms of the conditional plea agreement.  *Id.*, Exh. C at pp. 2-3.  After determining that petitioner fully understood the terms of the agreement and had not been coerced or threatened to enter into it or to plead guilty, the trial court accepted petitioner's guilty plea to second degree burglary.  State Court Records (Dkt. No. 6) Exh. C at pp. 4-5.

On December 20, 2006, Young again appeared before County Court Judge Aloi in connection with the matter.  *Id.*, Exh. D.  During that proceeding it was agreed that in light of his co-defendant's guilty plea, obviating the need for petitioner's testimony at his trial, he should be permitted to withdraw his plea to the charge of burglary in the second degree and instead enter a plea to attempted second degree burglary.  *Id*.

4

at pp. 2-3.  The court reiterated that pursuant to the plea agreement, if the

plea was accepted petitioner would receive a five-year determinate prison

*sentence, with an additional five-year term of post release supervision.

*Id.* at p.3.  Permission was therefore granted for withdrawal of the earlier

plea, and petitioner's plea to the new charge was accepted; in that plea

proceeding petitioner specifically admitted that he had a prior felony

conviction for attempted second degree burglary and was not contesting

that conviction for purposes of the court finding him to be a predicate

felony offender.  State Court Records (Dkt. No. 6) Exh. D at p. 9.

Petitioner appeared for sentencing before the trial court on or about

January 2, 2007.[1]  State Court Records (Dkt. No. 6) Exh. E.   After

sentencing was moved by the prosecution, petitioner's counsel advised

the court that his client suffers from a mental condition and currently

receives supplemental security income ("SSI") benefits based upon his

suffering from bipolar disease.  State Court Records (Dkt. No. 6) Exh. E at

---

[1]      The record is unclear as to whether petitioner's sentencing occurred on January 2, 2007, or on the following day.  The case was first called on January 2, 2007; on that day petitioner's lawyer was present, but he was not.  State Court Records (Dkt. No. 6) Exh. E at pp. 2 - 4.  It appears, however, that the case was again called later on January 2, 2007, at which time he reported being late as a result of mechanical failure of his vehicle.  *Id.* at p. 11.  The signature page of the sentencing transcript bears the date January 3, 2007, however, thereby interjecting some confusion as to the precise date of sentencing.  *Id.* at p. 12.

pp. 4-5.  Counsel added that, according to Young's son, his father was not

present at the time of the burglary, but entered a plea of guilty to protect

another relative who was.  *Id.*  The attorney advised his client that he

could move to withdraw his plea, though the motion would likely be

opposed by the prosecution.  *Id.*

　　While no formal motion to withdraw petitioner's guilty plea was

made, Judge Aloi stated that based upon his observations the petitioner

"has not in any way displayed to this court that he doesn't understand the

proceedings today or that he didn't understand the proceedings before."

State Court Records (Dkt. No. 6) Exh. E at p. 6.  The court later reiterated

that

> [n]othing that's happened in front of this court
> during the course of the pendency of this matter
> would indicate anything other than his
> understanding of these proceedings and his
> understanding of the precarious position that he
> was in and he, with counsel, negotiated a very
> favorable plea bargain agreement and, quite
> frankly, because of his cooperation with the court
> during the course of these proceedings, over the
> objection of [the prosecutor the court] allowed Mr.
> Young to be released during the holidays . . .

*Id.* at p. 7.  The trial court concluded by stating the following:

> I haven't heard anything that would give me a
> basis upon which to withdraw – allow [petitioner] to

6

withdraw his plea.

*Id.* at p. 8.  After asking the petitioner to reiterate his admission of a prior felony conviction, Judge Aloi then sentenced petitioner principally to the promised five-year determinate sentence of imprisonment together with a five-year period of post-release supervision.  *Id.* at pp. 10-12.

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department, arguing that he should have been permitted to withdraw his plea at the time of sentencing based upon an allegedly inadequate plea allocution which failed to establish that the plea was both voluntary and intelligent.  State Court Records (Dkt. No. 6) Exh. F.  From petitioner's single point appellate brief, filed by counsel, the Fourth Department discerned three distinct arguments for reversal only one of which had been properly preserved for appeal.[2]  *People v. Young,* 66 A.D.3d 1445, 885 N.Y.S.2d 860 (4th Dep't 2009).  The court found that the petitioner's argument that he lacked the mental capacity to enter a meaningful guilty plea was properly preserved, but discerned no indication from the record that Young's mental condition deprived him of the ability to understand the proceedings or called into question his competence.  *Id.*

---

[2]     In its decision the Fourth Department did not identify the remaining two claims deemed unpreserved.

The Fourth Department concluded that the remaining two arguments were not properly before the court and declined to exercise discretion to address those arguments in the interest of justice.  Leave to appeal that determination to the New York State Court of Appeals was denied on December 14, 2009.  *People v. Young,* 13 N.Y.3d 912, 895 N.Y.S.2d 326 (2009) (Table).  Plaintiff has not instituted any collateral state court challenges to his conviction.

II.    PROCEDURAL HISTORY

Petitioner commenced this proceeding on June 16, 2010.  Dkt. No. 1.  In his petition, Young asserts two grounds for granting habeas relief, arguing that 1) his guilty plea was both unlawfully induced and involuntarily entered, in that he was under the influence of prescription medication at the time, and the trial court therefore erred in refusing to permit the withdrawal of that plea, and 2) his trial counsel provided ineffective assistance by failing to raise and pursue those issues with the trial court.[3]  Appropriately named as the respondent in Young's petition is David Stallone, the superintendent at the correctional facility in which

---

[3]    Petitioner's position regarding the sufficiency of his counsel's representation has changed since the time of sentencing, at which time he stated to the trial court "I had a pretty good lawyer, Your Honor, . . .."  *See* State Court Records (Dkt. No. 6) Exh. E at p. 10.

8

petitioner was being held at the time of filing.  *See id.*  On August 27,

2010, an answer to the petition was received by the court from the Office

of the New York State Attorney General, representing the respondent.

That answer was accompanied by a memorandum of law as well as the

state court records associated with Young's state court conviction.  Dkt.

Nos. 5, 6.

Young's petition, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Procedural Default

Of the two grounds raised in Young's petition only the first, which

challenges the lawfulness of his guilty plea, has been presented in any

fashion to the state courts.   Plaintiff's second ground for seeking habeas

relief, alleging that he was denied effective assistance of counsel, does

not appear to have been raised before the state courts.  As a preliminary

threshold matter, respondent asserts that by failing to present his

ineffective assistance claim in the first instance to the state courts

9

petitioner has forfeited his right to now seek habeas relief from this court on that ground.

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies, or establish either an absence of available state remedies or that such remedies cannot adequately protect his or her rights.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118, 115 S. Ct. 2269 (1995).  The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  "Comity concerns lie at the core of the exhaustion requirement."  *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir.), *cert. denied, sub nom.*, *Galdamez v. Fischer*, 544 U.S. 1025, 125 S. Ct. 1996 (2005).  Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Id.*  "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different

from that asserted in state court." *Daye,* 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "'fairly presented'" to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971)). A claim has been "fairly presented" if the state courts were apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192.

When a claim has never been presented to a state court, a federal court may find that there is an absence of available state corrective process under section 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile), *cert.*

11

*denied*, 532 U.S. 943, 121 S. Ct. 1404 (2001).  As such, I must determine whether it would be futile for petitioner to present the newly-asserted theory regarding the ineffectiveness of his counsel to the state courts.

Petitioner cannot now file an appeal with the Fourth Department in order to advance his claim regarding the adequacy of the legal representation received from his trial counsel, since in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *See Aparicio*, 269 F.3d at 91.  Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing N.Y. Crim. Proc. Law ("CPL") § 440.10(2)(c)), petitioner could not now properly raise this claim, which is based upon the trial court record, by motion brought pursuant to CPL Article 440.  *Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054, 115 S. Ct. 1436 (1995).  This claim is therefore "deemed exhausted" for purposes of petitioner's habeas application.  *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, No. 00-CV-5673, 2002 WL 31102612, at *10  (E.D.N.Y. Sept. 18,

2002).[4]

Although petitioner's ineffective assistance claim is "deemed exhausted," it is also procedurally defaulted.  *See Aparicio*, 269 F.3d at 90, 96.  Accordingly, a federal court may not engage in habeas review of the claim unless the petitioner demonstrates either 1) both good cause for and actual prejudice resulting from his procedural default, or 2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice.  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000); *Garcia v. Lewis*, 188 F.3d 71, 76-77 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).  Under this second exception, which is both exacting and intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[,]" *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986); *see also House v. Bell*, 126 S. Ct. 2064, 2076 (2006); *Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994), "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'"  *Murray*, 477 U.S. at 495, 106 S. Ct.

---

[4]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

at 2649 (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 1576 (1982)).

To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule.  *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566-67 (1991) (citing *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645); *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999) (citing, *inter alia*, *Coleman*).  Examples of such external mitigating circumstances can include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.[5]  *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645.  When a petitioner has failed to establish adequate cause for his or her procedural default, the court need not go on to also examine the issue of prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *Stepney v. Lopes*, 760 F.2d

---

[5]     It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753, 111 S. Ct. at 2566-67 (quoting *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645.

14

40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435,

at *6 (N.D.N.Y. March 21, 2006) (McCurn, S.J.) (citing *Stepney*); *Staley v.*

*Greiner*, No. 01 Civ. 6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003)

(citing *Stepney*).  In such a case, absent evidence to show the petitioner's

innocence of the crime of conviction, no basis is presented to conclude

that the failure to consider the merits of the federal claim would result in a

fundamental miscarriage of justice, which has been interpreted as

amounting to "an unjust incarceration."  *Spence v. Superintendent, Great*

*Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000).

　　　In this instance, petitioner has not offered any basis upon which to

find good cause for his failure to present the ineffective assistance claim

to the state courts.  It is therefore unnecessary to explore the issue of

actual prejudice, since exemption from the procedural default bar under

this exception requires that a petitioner establish both good cause and

prejudice.  *Garcia*, 188 F.3d at 76.

　　　Based upon the record now before the court, Young would also be

hard-pressed to assert his actual innocence.  Although petitioner's

counsel stated to the trial court at the time of sentencing that he was

informed by his client's son that Young was innocent, this is insufficient to

establish a credible claim of actual innocence.  *See Spence*, 219 F.3d at

172.  Moreover, that claim flies in the face of plaintiff's plea allocution,

during which he admitted on two separate occasions, in open court, that

he participated in the burglary which was the subject of the indictment

against him.  *See* State Court Records (Dkt. No. 6) Exh. C at p. 6; Exh. D

at p. 6.

In sum, by virtue of his failure to present the ineffective assistance of

counsel claim he now advances to the state courts or, alternatively, to

establish a credible claim of actual innocence, petitioner is now

procedurally barred from pursuing that claim in this proceeding.

B.    Adequate and Independent State Law Ground

The first ground of Young's petition, while at its core addressing the

lawfulness of his guilty plea, presents multiple issues stemming from that

plea.  In support of the claim growing out of his plea Young contends that

1) it was not knowing and intelligent because he was suffering from

mental health issues and under the influence of prescription medication at

the time of the plea; 2) he was coerced into pleading guilty as a result of

the court's advice concerning the maximum potential penalties he would

face, if convicted at trial; 3) the plea allocution conducted by the trial court

was legally deficient; 4) he was denied due process as a result of the court's failure to properly determine whether he was competent to enter a guilty plea; and 5) the trial court unfairly denied his request, made at the time of sentencing, to withdraw his guilty plea.  Petition (Dkt. No. 1) at p. 5.  Of these sub-claims only the issue of petitioner's capacity to enter a meaningful and constitutionally defensible guilty plea was addressed by the state appellate court; the remaining grounds raised were not addressed, the court finding that they were not properly preserved for appeal and declining to review them as a matter of discretion, in the interest of justice.  *People v. Young*, 66 A.D.3d 1445, 85 N.Y.S.2d at 60.  Respondent argues that as a result of that finding this court is precluded from addressing the merits of those claims.

As with the exhaustion requirement, both comity and principles of federalism underlie the general rule that a federal court ordinarily will not review a federal claim presented in a habeas petition if it has been rejected by the state courts on a ground that is both "independent and adequate[.]"  *Coleman*, 501 U.S. at 736, 111 S. Ct. at 2558; *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006); *Brown v. Greiner*, 409 F.3d 523, 532 (2d Cir. 2005).  While a procedural forfeiture is typically the

17

product of a failure to comply with a state's requirements regarding timely

presentment of issues to the court, the question of whether a default

discerned by a state court is sufficiently adequate and independent to

preclude federal habeas review is governed by federal law.  *Monroe*, 433

F.3d at 241.

      Addressing the issue of adequacy, the Second Circuit has observed

that

> a procedural bar will be deemed adequate only if it
> is based on a rule that is firmly established and
> regularly followed by the state in question.  When a
> federal court finds that the rule is inadequate under
> this test the rule should not operate to bar federal
> review.  Nonetheless, the principles of comity that
> drive the doctrine counsel that a federal court that
> deems a state procedural rule inadequate should
> not reach that conclusion lightly or without clear
> support in state law.

*Garcia*, 188 F.3d at 77 (internal citations and quotation marks omitted).

As may be self-evident, a state court determination is sufficiently

independent, for purposes of this rule, if it is divorced from and bears no

relation to the merits of the federal law claim presented.  *See Brown*, 409

F.3d at 532.  When addressing the question of procedural forfeiture, a

court should presume that there is no independent and adequate state

ground for a state court decision when the decision "fairly appears to rest

primarily on federal law, or to be interwoven with the federal law, and

when the adequacy and independence of any possible state law ground is

not clear from the face of the opinion[.]'" *Coleman*, 501 U.S. at 733, 111 S.

Ct. at 2556 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41, 101 S. Ct.

3469, 3476 (1983)).

     For a federal court to deny habeas review based on the independent

and adequate state ground doctrine, it must be clear that the state court

actually relied upon the procedural bar as an independent basis for its

disposition of the claim. *Fama*, 235 F.3d at 809.  In a case where both

procedural and substantive arguments have been advanced by the parties

but no opinion is issued by the state court explaining its rejection of a

claim, a federal court may properly assume that the state court based its

decision on state procedural grounds absent "good reason" to believe the

state court's silence represents a decision to deny the claim on its merits.

*Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993).  In instances where a

state court has expressly found both a failure to preserve the argument for

appellate review and alternatively or "in any event" that the argument lacks

merit, the procedural bar applies.  *Fama*, 235 F.3d at 810 n.4 (citing *Glenn

v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) and *Velasquez v. Leonardo*,

989 F.2d 7, 9 (2d Cir. 1990)).  If there is ambiguity, however, as in "when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama*, 235 F.3d at 810; *see also Coleman*, 508 U.S. at 735, 111 S. Ct. at 2557.

In this instance, the Fourth Department's decision not to entertain Young's request for review of various other issues encompassed within ground one of his petition, other than that related to his mental competency, was predicated upon the requirement in New York that a claimed error must be properly preserved for appellate review.  This is a requirement that has been firmly established and regularly followed, and thus satisfies the independent and adequate state ground requirements. *See Garcia*, 188 F.3d at 79-82; *see also Devison v. Cunningham*, No. 09 Civ. 1031, 2010 WL 5060789, at *10 (S.D.N.Y. Oct. 15, 2010), *report and recommendation adopted*, 2010 WL 5060728 (S.D.N.Y. Dec. 08, 2010); *Scott v. Fisher*, 652 F. Supp. 2d 380, 405-407 (W.D.N.Y. 2009).  This court is therefore precluded from addressing those issues on habeas review.

C.    Merits of Petitioner's Properly Preserved Claim

The sole habeas claim available for review by this court in this

proceeding relates to the sufficiency of petitioner's plea, and specifically

whether he was competent to enter that plea.

1.    Standard of Review

Enactment of the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought

about significant new limitations on the power of a federal court to grant

habeas relief to a state court prisoner under 28 U.S.C. § 2254.  Under the

AEDPA, "a determination of a factual issue made by a State court shall be

presumed to be correct [and t]he applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette v. Lefevre*, 246 F.3d

76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotes omitted).

Significantly, a federal court may not grant habeas relief to a state

prisoner on a claim

> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was
> > contrary to, or involved an
> > unreasonable application of, clearly

21

> established Federal law, as determined
> by the Supreme Court of the United
> States; or
>
> 2) resulted in a decision that was
> based on an unreasonable
> determination of the facts in light of the
> evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d); *see also Thibodeau v. Portuondo*, 486 F.3d 61, 65

(2d Cir. 2007); *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir.), *cert. denied*, 534

U.S. 886, 122 S. Ct. 197 (2001); *Boyette*, 246 F.3d at 88.  When applying

this test, the Second Circuit has noted that

> [u]nder AEDPA, we ask three questions to
> determine whether a federal court may grant
> habeas relief: (1) Was the principle of Supreme
> Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled?
> (2) If so, was the state court's decision "contrary
> to" that established Supreme Court precedent? (3)
> If not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v.*

*Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J.)

and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000) (citing

*Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2d Cir.

2000)).

Because the AEDPA's restriction on federal habeas power was premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court.  *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001).  Specifically, as the Second Circuit explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  261 F.3d 303, 312 (2d Cir. 2001); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (citing *Sellan*), *cert. denied sub nom.*, *Jimenez v. Graham*, 127 S. Ct. 976 (2007).  Significantly, the Second Circuit further held that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – *even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.*"  *Sellan*, 261 F.3d at 312 (emphasis added).[6,7]

---

[6]       In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving

23

When a state court's decision is found to be decided "on the merits",

that decision is "contrary to" established Supreme Court precedent if it

applies a rule that contradicts Supreme Court precedent, or decides a

case differently than the Supreme Court on a set of materially

indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-

20.  Moreover, a federal court engaged in habeas review must also

determine not whether the state court's determination was merely

incorrect or erroneous, but instead whether it was "objectively

unreasonable".  *Sellan*, 261 F.3d at 315 (quoting *Williams*, 529 U.S. at

409, 120 S. Ct. at 1521 (O'Connor, J.)).  The Second Circuit has noted

that this inquiry admits of "[s]ome increment of incorrectness beyond

error", though "the increment need not be great[.]"  *Francis S.*, 221 F.3d at

---

open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under AEDPA, in which case pre-AEDPA standards would apply.  *Washington*, 255 F.3d at 52-55; *see also Noble*, 246 F.3d at 98.   That court clarified in *Sellan*, however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

> [7]   In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard.  *Sellan*, 261 F.3d at 312.  He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so.  *Id.*

111.

## 2.   Clearly Established Supreme Court Precedent

The standard governing the acceptance of guilty pleas is neither recently evolved nor controversial.  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970) (citations omitted)); *see also Parke v. Raley*, 506 U.S. 20, 28-29, 113 S. Ct. 517, 523 (1992) (a plea is valid when it is both knowingly and voluntarily made); *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 1711-12 (1969) (United States Constitution requires that guilty plea be intelligently and voluntarily entered).  A knowing plea is entered "'with understanding of the nature of the charge and the consequences of the plea.'" *Santobello v. New York*, 404 U.S. 257, 261 n.1, 92 S. Ct. 495, 498 n.1 (1971) (quoting Fed. R. Crim. P. 11); *see Martinez v. Costello*, No. 03 CIV 2763, 2004 WL 26306, at *5 (S.D.N.Y. Jan. 5, 2004) (citing *Santobello* and Fed. R. Crim. P. 11); *see also Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir. 2006).

Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that he or she 1) was competent to proceed and was fully aware of the nature of the charges faced; 2) had a rational and factual understanding of the proceedings; and 3) was cognizant of the constitutional protections relinquished upon entry of the plea.  *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004); *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir.), *cert. dismissed*, 479 U.S. 805, 107 S. Ct. 248 (1986).  While "the question of whether a plea of guilty has been entered voluntarily within the meaning of the Constitution is often a complex one that involves mixed questions of law and fact[,]" the ultimate issue of whether a plea represents an effective waiver of federal Constitutional rights is controlled by federal law. *Oyague*, 393 F.3d at 104.

### 3.   Contrary to or Unreasonable Application of Clearly Established Supreme Court Precedent

When judged against this standard the evidence in this case fully supports the Fourth Department's finding that the petitioner's plea was properly entered.  Nothing in the record demonstrates that petitioner's alleged mental illness and prescription medication deprived him of the

ability to understand the proceedings or impaired his capacity to enter a guilty plea.

The state court records now before the court reveal that petitioner appeared before County Court Judge Aloi on five separate occasions. While at the first proceeding, held on September 18, 2006, Young did not directly speak, he did so during the remaining four appearances, conducted on October 2, 2006, October 12, 2006, December 20, 2006, and January 2, 2007.  *See* State Court Records Exhs. B, C, D, and E.  A review of the transcripts of those proceedings reflects that petitioner's answers to the court's questioning on those occasions were cogent and intelligent, and provide no indication whatsoever of his inability to fully understand the proceedings.  Having carefully reviewed the available records, I find that the Fourth Department's determination regarding the legal sufficiency of petitioner's plea was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  I therefore recommend that the portion of petitioner's first ground that is property preserved for review by this court be rejected and his habeas petition be denied.

     D.    <u>Certificate of Appealability</u>

In order for a petitioner to appeal a final order denying habeas relief by a state prisoner, he or she must receive a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b) ("unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)", an appeal may not be taken from the denial of a habeas petitioner under section 2254).   A COA may only issue "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

In this case I find that petitioner has not made a substantial showing of the denial of the constitutional right and will therefore recommend that a COA not be issued.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The record in this case firmly establishes that with the benefit of counsel petitioner entered a plea, pursuant to a negotiated agreement, to attempted burglary, in full satisfaction of an indictment that charged him with three felony offenses, and that when entering his plea he was fully aware of the proceedings and the consequences of his plea.  To the extent that petitioner attempts to raise other arguments beyond the single claim that was presented to and decided by the Fourth Department in

connection with the appeal of his conviction, those claims are either procedurally barred or precluded because they were rejected by the state appellate court on adequate and independent grounds.  Based upon the foregoing it is therefore respectfully

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it is further

RECOMMENDED, based upon my finding that Young has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect to any of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this

court's local rules; and it is further

David E. Peebles
U.S. Magistrate Judge

Dated:      December 21, 2011
            Syracuse, NY



Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Chanel SENOR, Petitioner,
v.
Charles GREINER, Supt., Respondent.
No. 00–CV–5673JG.

Sept. 18, 2002.

Following affirmance of his convictions for second-degree murder and criminal possession of a weapon, state prisoner filed petition for federal habeas corpus relief. The District Court, Gleeson, J., held that: (1) prisoner's petition was time-barred; (2) prisoner failed to demonstrate that his trial counsel's actions or inactions amounted to constitutionally inadequate performance; (3) prisoner failed to demonstrate that his appellate counsel's actions amounted to constitutionally inadequate performance; (4) claim that police seized prisoner without probable cause was barred from federal review; (5) even if court were to consider claim of lack of probable cause, the claim lacked merit; (6) claim that prisoner did not voluntarily accompany police to the precinct was barred from habeas review; (7) even if prosecutor's questioning of prisoner about his prior drug conviction was a *Sandoval* violation, prisoner failed to show that it deprived him of a constitutionally recognized right; and (8) claim regarding the alleged *Sandoval* violation was procedurally defaulted.

Petition denied.

West Headnotes

**[1] Habeas Corpus 197 ☞ 603.9**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 Limitations, Laches or Delay
                197k603.9 k. Pursuit of other remedies.

Most Cited Cases
    (Formerly 197k603)

State prisoner's petition for federal habeas corpus relief was time-barred; although one-year grace period from the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) was tolled during periods that prisoner's motions to reargue or appeal his previous adverse rulings were pending in state appellate courts, some 1,184 days passed from the AEDPA's effective date until the earliest date on which prisoner could have been credited with filing his petition. 28 U.S.C.A. § 2244(d)(1)(a).

**[2] Criminal Law 110 ☞ 1930**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1921 Introduction of and Objections to Evidence at Trial
                    110k1930 k. Identification. Most Cited Cases
    (Formerly 110k641.13(6))

Trial counsel's failure to request *Dunaway* hearing to challenge lineup identifications, after purportedly eliciting evidence that police stopped defendant without probable cause, did not amount to constitutionally inadequate performance; only witness who testified at *Wade* hearing mentioned nothing to suggest that he and his partner had stopped and questioned defendant improperly, defendant pointed to no evidence in attorney's possession at conclusion of *Wade* hearing that would have sustained his claim that police lacked probable cause to detain him, and defendant failed to show that, had *Dunaway* hearing been requested, reasonable probability existed that court would have granted hearing and suppressed lineup identifications. U.S.C.A. Const.Amend. 6.

**[3] Criminal Law 110 ☞ 1951**

110 Criminal Law

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

110XXXI Counsel
    110XXXI(C) Adequacy of Representation
        110XXXI(C)2 Particular Cases and Issues
            110k1951 k. Deliberations and verdict. Most Cited Cases
    (Formerly 110k641.13(2.1))

    Trial counsel's failure to move to set aside verdict, after defendant alerted him to possibility that defendant had known one of his jurors in high school, did not amount to constitutionally inadequate performance; defendant's claim that he knew juror was unsupported, court could not conceive of how claim, even if true, afforded a basis for relief for defendant, and defendant failed to show that, had attorney moved to set aside verdict, court would have granted the motion. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ☞ 1968**

110 Criminal Law

    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1966 Appeal
                    110k1968 k. Preservation of error for appeal. Most Cited Cases
    (Formerly 110k641.13(7))

    Defendant failed to demonstrate that appellate counsel's failure to brief on appeal defendant's claim of lack of probable cause with respect to his arrest amounted to constitutionally inadequate performance; claim was both unpreserved for appellate review and meritless, and so the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness, and, in any event, appellate court considered and rejected that very claim when defendant asserted it in his pro se supplemental brief. U.S.C.A. Const.Amend. 6.

**[5] Habeas Corpus 197 ☞ 366**

197 Habeas Corpus

    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners

197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k362 Particular Remedies or Proceedings
                    197k366 k. Direct review; appeal or error. Most Cited Cases
**Habeas Corpus 197 ☞ 378**

197 Habeas Corpus

    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k374 Availability and Effectiveness of State Remedies
                    197k378 k. Availability at time of petition. Most Cited Cases

    Federal habeas petitioner's claim, that police seized him without probable cause, was barred from federal review where petitioner failed to exhaust it in the state courts; claim was presented on direct appeal in petitioner's pro se supplemental brief, appellate court rejected claim as either not preserved or without merit, petitioner failed to apply for leave to appeal from the affirmance of his conviction, claim thus was unexhausted, time limit for exhausting claim had expired, petitioner failed to show cause and resulting prejudice for failure to appeal decision affirming his conviction, and federal court's refusal to consider claim would not result in miscarriage of justice.

**[6] Habeas Corpus 197 ☞ 366**

197 Habeas Corpus

    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k362 Particular Remedies or Proceedings
                    197k366 k. Direct review; appeal or error. Most Cited Cases
**Habeas Corpus 197 ☞ 401**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

197 Habeas Corpus

    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)5 Availability of Remedy Despite Procedural Default or Want of Exhaustion
                197k401 k. In general. Most Cited Cases

Federal habeas petitioner's claim, that he did not voluntarily accompany arresting officers to the precinct, was barred from federal habeas review where the state court denied it based on a state procedural default, which constituted an independent and adequate state ground; state court held that claim was procedurally barred under state law because petitioner based it on matters that appeared in the record but neither raised the claim on direct appeal nor offered a reasonable excuse for having failed to do so, appellate court denied leave to appeal matter, petitioner did not show cause and resulting prejudice for the default, and miscarriage of justice would not result from federal court's failure to review claim.

**[7] Habeas Corpus 197 &#9738;     495**

197 Habeas Corpus

    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k495 k. Witnesses; examination. Most Cited Cases

Even if prosecutor's questioning of petitioner about his prior drug conviction was a *Sandoval* violation, petitioner failed to show that it deprived him of a constitutionally recognized right, as required for the evidentiary error to be cognizable under federal habeas corpus review; given abundance of evidence pointing to petitioner's guilt, petitioner failed to show that the ruling influenced the jury's verdict in any way, and petitioner's claim of a *Sandoval* violation lacked merit, as defense counsel opened the door to prosecutor's questioning, and it was defense counsel, not prosecutor, who elicited the facts underlying petitioner's prior felony conviction.

**[8] Habeas Corpus 197 &#9738;     366**

197 Habeas Corpus

    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k362 Particular Remedies or Proceedings
                    197k366 k. Direct review; appeal or error. Most Cited Cases
**Habeas Corpus 197 &#9738;     368.1**

197 Habeas Corpus

    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k368 Necessity for Repetition or Pursuit of Several Remedies
                    197k368.1 k. In general. Most Cited Cases
**Habeas Corpus 197 &#9738;     378**

197 Habeas Corpus

    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k374 Availability and Effectiveness of State Remedies
                    197k378 k. Availability at time of petition. Most Cited Cases

Federal habeas petitioner's claim, that prosecutor's questioning of him constituted a *Sandoval* violation, was procedurally defaulted; petitioner asserted claim on direct appeal, but failed to include it in his application for leave to appeal further or in any of his other motions, so that claim was unexhausted, claim could no longer be exhausted as 30-day period to make application for leave to appeal had expired, petitioner failed to show cause and resulting prejudice, and federal court's failure to consider claim would not result in miscarriage of justice.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Chanel Senor, Great Meadow Correctional Facility, Comstock, Petitioner Pro Se.

Charles J. Hynes, District Attorney, Kings County, Brooklyn, By Victor Barall, Assistant District Attorney, for Respondent.

MEMORANDUM AND ORDER

GLEESON, District J.

**\*1** On January 10, 1994, a jury in Kings County found petitioner Chanel Senor guilty of murder in the second degree (N.Y. Penal Law § 125.25[1] ) and criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03). Senor was sentenced to concurrent terms of imprisonment of twenty years to life for the murder conviction and two to six years for the weapon possession conviction. He is currently incarcerated pursuant to that judgment. He now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting the following claims: (1) his trial counsel failed to provide him effective assistance; (2) his appellate counsel failed to provide him effective assistance; (3) the police seized him without probable cause, violating his Fourth Amendment rights; (4) he did not voluntarily consent to accompany the arresting officers to the precinct; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation of the court's ruling in a pre-trial hearing deprived him of his right to a fair trial.

For the reasons set forth below, the petition is denied.

BACKGROUND

On the evening of January 10, 1991, Senor, carrying two guns, approached Queran Horton, Nekia Washington, and Daverson Maynard as they were walking in front of 1184 Halsey Street in Brooklyn. Senor pointed one gun at Maynard's chest and the other at Horton's back. Upon feeling the gun in his back, Horton turned around, and Senor shot him in the chest, killing him. Senor then fled.

Detective Anthony Burzotta, investigating the crime, subsequently composed a general description of the individual who shot Horton based on information provided by Maynard and another witness, Roberto Colon. He also learned that a man matching the description of the shooter frequented the corner of Knickerbocker and Putnam Avenues, in Brooklyn. On January 30, 1991, Detective Burzotta went with his partner to that location, where they noticed Senor, who appeared to fit the description of the shooter. Detective Burzotta and his partner stopped Senor and questioned him. They then brought Senor to the precinct station house, where they placed him in two separate lineups. From those lineups, Washington and Maynard independently identified Senor as the individual who shot Horton. Burzotta consequently arrested Senor, and the Kings County District Attorney charged him with murder in the second degree and criminal possession of a weapon in the second and third degrees.

Senor went to trial on these charges in July 1992. The jury deadlocked, and on July 10, 1992, the trial court declared a mistrial. In January 1994, Senor faced a second trial on the same charges. At the conclusion of that trial, the jury found Senor guilty of murder in the second degree and criminal possession of a weapon in the second degree. The court sentenced him as described above.

On February 3, 1994, Senor filed a timely notice of appeal, arguing that (1) the prosecution's failure to turn over a prospective witness's prior statement deprived him of a fair trial; (2) when cross-examining Senor, the prosecution violated the court's pre-trial ruling, thereby depriving him of a fair trial; and (3) the murder conviction was against the weight of the evidence. Senor later filed a *pro se* supplemental brief claiming that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct, and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. On November 6, 1995, the Appellate Division affirmed Senor's judgment of conviction, finding that the verdict was not against the weight of the evidence and that Senor's remaining claims, including those raised in his *pro se* supplemental brief, were either unpreserved for appellate review or without merit. *See People v. Senor,* 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN1]

> FN1. Senor states that he sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction. As support, he cites a certificate from the New York Court of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Appeals, dated June 19, 1996, that denies him leave to appeal. That certificate, however, dismissed Senor's application for leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. There is nothing in the record to indicate that Senor sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction.

**\*2** Meanwhile, on September 13, 1995, Senor, proceeding *pro se,* moved to vacate his judgment of conviction pursuant to N.Y.Crim. Proc. Law § 440.10(1)(d) and (h), asserting the following: (1) the police violated his constitutional rights by seizing him without probable cause; (2) his acquiescence in accompanying the police to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; (3) his trial counsel denied him effective assistance; and (4) the sentence should be modified because it punished him for exercising his right to a jury trial. The court denied his § 440 motion on December 21, 1995. It stated that his claim that the police seized him without probable cause was procedurally barred because the Appellate Division had determined it previously on the merits and because Senor never requested a hearing to test the probable cause issue. The court also found Senor's claims that he did not consent to accompany the police to the precinct and that he received ineffective assistance of counsel to be procedurally barred because he did not raise them on direct appeal and provided no justification for having failed to do so. Moreover, the court stated that Senor's ineffective assistance claim lacked merit. Finally, the court dismissed Senor's claim regarding his sentence because it did not relate to the validity of his conviction.

On November 16, 1995, while his § 440 motion was pending, Senor filed what the Appellate Division deemed to be a motion for reargument of his appeal and an application for a writ of error *coram nobis,* in which he asserted a claim of ineffective assistance of appellate counsel. Then, on January 3, 1996, Senor requested to appeal the denial of his § 440 motion and to consolidate that application with his motion for reargument and his *coram nobis* petition. On February 20, 1996, the Appellate Division denied Senor's application for a writ of error

*coram nobis,* stating that petitioner had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996). In a separate order, also dated February 20, 1996, the Appellate Division denied Senor's motion to reargue his appeal. *See People v. Senor,* No. 94–01311, slip op. at 1 (2d Dep't Feb. 20, 1996). On February 22, 1996, the Appellate Division denied Senor's leave to appeal the denial of his § 440 motion.

On March 29, 1996, Senor filed an application to reargue the denials of (1) his motion to reargue his appeal; (2) his application for leave to appeal the denial of his § 440 motion; and (3) his application to consolidate these motions with his application for a writ of error *coram nobis.* On May 8, 1996, the Appellate Division denied Senor's motion, and on June 19, 1996, the Court of Appeals denied Senor leave to appeal that decision. *See People v. Senor,* 88 N.Y.2d 942, 647 N.Y.S.2d 175, 670 N.E.2d 459 (1996).

On March 6, 1997, Senor filed a second *pro se* motion to vacate his conviction, pursuant to N.Y.Crim. Proc. Law § 440.10(1)(g). He contended that he had discovered new evidence, namely, the unsworn statements of Richard Umana. On May 1, 1997, Senor filed a third § 440 motion, again claiming that he had discovered new evidence, that time in the form of his conversations with four witnesses. The court denied both motions on June 10, 1997, stating that Senor had failed to submit any reliable evidence that these statements had been made, and that even if he had, the evidence would have altered the outcome of his trial.

**\*3** On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97–CV–4929). In that petition, he argued that: (1) his trial counsel was ineffective because he failed to challenge the legality of police conduct and failed to pursue other "colorable claims" based on known facts; (2) his appellate counsel provided ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest; (3) the police seized him without probable cause, questioning him based on a vague description fabricated by witnesses; (4) his acquiescence in accompanying the arresting officers to the precinct did not

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation during trial of one of the court's pre-trial rulings deprived him of his right to a fair trial.

By letter dated January 25, 1999, Senor requested that his petition be placed "on hold" pending the outcome of an application for post-conviction relief in state court based on "some newly discovered evidence [he] just found." Construing this letter to be a motion to dismiss, I granted it without prejudice and closed the case on February 17, 1999. On March 25, 1999, Senor filed his fourth § 440 motion, which was denied on June 18, 1999. In that motion, her raised issues of certain *Rosario* violations, the insufficiency of proof, and prosecutorial misconduct. Leave to appeal was denied on September 15, 1999. Senor filed the instant habeas corpus petition (docket number 00–CV–5673) on July 24, 2000. It includes the same arguments his first petition included.

DISCUSSION

A. *The Statute of Limitations*

There is a one-year statute of limitations in habeas corpus proceedings, which generally begins to run on "the date on which the judgment [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(a).[FN2] In *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir.1998), the Second Circuit held that a prisoner whose conviction became final prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") must be afforded a one-year grace period from April 24, 1996 (the effective date of AEDPA) in which to file for federal habeas relief. *See id.* at 103. Pursuant to § 2244(d)(2), the time during which a properly-filed application for state post-conviction relief is pending shall not be counted in calculating the one-year grace period.

FN2. Section 2244(d)(1)(D) provides alternate start dates for the one-year limitation period, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This provision is inapplicable in this case because Senor does not present any federal claims based on newly-discovered facts.

[1] Because Senor's judgment of conviction became final prior to April 24, 1996, his initial grace period to file for habeas relief was until April 24, 1997.[FN3] This period was tolled from April 24, 1996 through June 19, 1996 because, during that interval, Senor had motions pending in the state appellate courts in which he sought to reargue or appeal his previous adverse rulings. From June 19, 1996 through February 28, 1997, the date on which Senor filed his second § 440 motion, he did not have any litigation pending in the state courts. That period comprised 254 days.

FN3. Senior was convicted on January 10, 1994, and on November 6, 1995, the Appellate Division affirmed his conviction. Because he did not seek leave to appeal to the New York Court of Appeals, his judgment of conviction became final on December 6, 1995, the date upon which the 30–day period for seeking review in the Court of Appeals expired. *See* N.Y.Crim. Proc. Law § 460.10(5)(a).

*4 Senor's grace period was once again tolled from February 28, 1997 through June 10, 1997, the date on which his second and third § 440 motions were denied. Senor did not have any litigation pending in the state or federal courts between June 10, 1997 and August 6, 1997, which comprised fifty-seven days.

On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97–CV–4929), which I dismissed without prejudice on February 17, 1999. That time period comprised 560 days, during which the statute of limitations period was not tolled. *See Duncan v. Walker*, 533 U.S. 167, 181–82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (the time period during which a habeas corpus petition is pending in federal court does not toll the one-year limitations period). Thus, prior to my dismissal of his Senor's first habeas corpus petition, Senor had allowed 871 days to run on his one-year grace period.

After February 17, 1999, Senor waited thirty-six days before filing his fourth § 440 motion, on March 25, 1999.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

That motion was denied on June 18, 1999, and leave to appeal was denied on September 15, 1999. The one-year grace period was tolled during that interval (provided it had not already expired).

Thereafter, Senor had no litigation pending between September 15, 1999 and the filing of his instant habeas petition. The earliest date on which Senor can be credited with filing the petition is July 24, 2000, the date on which he alleges that he placed a set of papers in the mailbox at the Green Haven Correctional Facility. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (when a prisoner is proceeding *pro se,* he is deemed to have filed a document on the date he delivered it to prison authorities for forwarding to the court clerk). The period from September 15, 1999 to July 24, 2000 comprises 313 days.

Adding the period during which the one-year grace period was running against Senor yields a total of 1,184 days. Accordingly, Senor's petition must be dismissed as untimely.

*Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001), *cert. denied,* 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001), provides no relief for Senor. In that case, the Second Circuit held that when a district court is presented with a mixed petition, *i.e.,* a petition that contains some exhausted claims and some unexhausted claims, it may (1) dismiss the entire petition without prejudice; or (2) dismiss the unexhausted claims and stay the rest. The court further held that when a dismissal "could jeopardize the timeliness of a collateral attack," a stay is the only course of action. *Id.* (citation omitted). The court specified that the stay should be conditioned on the petitioner pursuing state court remedies "within a brief interval, normally 30 days after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after a state court exhaustion is completed." *Id,* at 381.

The Second Circuit has not yet decided whether *Zarvela* should be applied retroactively. *See Smaldone v. Senkowski,* 273 F.3d 133, 139 (2d Cir.2001). In any event, I see no unfairness in denying habeas relief to this petitioner because he failed to make the "prompt trip to and from the state courts" contemplated by *Zarvela. See*

*Zarvela,* 254 F.3d at 383. Rather, he delayed more than ten months before returning from the state courts. I note that other district courts within the circuit have dismissed petitions as untimely where petitioners have failed to act within the time constraints suggested in *Zarvela. See, e.g., Felton v. Mazzuca,* No. 98–CV–4567, 2002 WL 655207, at *4 (S.D.N.Y. April 18, 2002) (petition time-barred under *Zarvela* ); *Edwards v. Greiner,* No. 00–CV–1331, 2002 WL 1467708, at * 3 (E.D.N.Y. May 7, 2002) (same). Finally, *Zarvela* is distinguished because, as described below, Senor does not present a "mixed petition" because he has no further recourse to state court. Accordingly, there would have been no need to dismiss the unexhausted claims and stay the balance of the petition to enable Senor to exhaust his state remedies. *See DeJesus v. Greiner,* No. 01–CV–2173, 2001 WL 1098001, at *2, n. 2 (S.D.N.Y. Sept.10, 2001).

**\*5** In conclusion, Senor's petition must be dismissed as time-barred. In any event, as discussed below, each of Senor's claims fail as either procedurally defaulted or without merit because the state court's decision was neither contrary to nor an unreasonable application of clearly established Federal law. *See Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

B. *The Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

389 (2000); *see also* Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir.2001).

A decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Under the latter standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir.2001) (citing Williams, 529 U.S. at 411). Interpreting *Williams,* the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (citing Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in Sellan v. Kuhlman, 261 F.3d 303 (2d Cir.2001):

**\*6** [f]or the purposes of AEDPA deference, a state court 'adjudicate[s] a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

*Id.* at 312.

### C. Senor's Claims

#### 1. Ineffective Assistance of Trial Counsel

Senor claims that his attorney provided him ineffective assistance at trial by failing to contest the legality of police conduct and failing to pursue other "colorable claims." He claims that his trial counsel should have challenged the circumstances surrounding his arrest. Specifically, he contends that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. The police thus had no reason, independent of this improperly obtained description, to stop and detain Senor. Consequently, Senor maintains, his arrest violated the Fourth Amendment, and his attorney should have moved, pursuant to Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), to suppress the identification testimony as the fruit of an unlawful arrest. Moreover, Senor contends that his attorney should have moved to set aside the verdict after he informed his attorney of the possibility that he knew one of the jurors.

Respondent argues that these claims are barred from review in this Court because the state court denied them based on a state procedural default, which constitutes an independent and adequate state ground. A procedurally defaulted claim is reviewable only if petitioner can overcome the procedural bar by showing cause and prejudice, or that a fundamental miscarriage of justice would occur if I declined to review the claim. *See* Coleman v. Thompson, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Harris v. Reed, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also* Lee v. Kemna, 534 U.S. 362, 122 S.Ct. 877, 885, 888, 151 L.Ed.2d 820 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question") (citation omitted). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." McCleskey v. Zant, 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). To satisfy the prejudice requirement, the alleged error must have worked

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

to the petitioner's actual and substantial disadvantage. *See* Amadeo v. Zant, 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). If the petitioner cannot show cause and prejudice, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. A fundamental miscarriage of justice requires a showing of "clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Sawyer v. Whitley,* 505 U.S. 333, 335, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

**\*7** Senor asserted an ineffective assistance of counsel claim in a § 440 motion filed September 13, 1995. The court, in denying the motion, stated that this claim lacked merit, but was also procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c) because Senor could have raised it on direct appeal, but did not, and he provided no justification for having failed to do so. The subsequent order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter that result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Because a state procedural default qualifies as an independent and adequate ground, this Court cannot consider Senor's ineffective assistance claim unless Senor shows cause for the default and prejudice resulting therefrom. Respondent maintains that Senor has not shown cause for failing to raise this claim on direct appeal, nor any resulting prejudice. I need not address this issue because the ineffectiveness claim has no merit.

The Supreme Court has established the following standard for ineffective assistance claims:

First, the defendant must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance fell below an "objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See also Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995). Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. *Strickland,* 466 U.S. at 689; *see also Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998).

[2] Senor has failed to demonstrate in this case that his trial counsel's actions or inactions amounted to constitutionally inadequate performance. He claims that, during a pre-trial hearing pursuant to *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), his counsel elicited evidence that the police stopped Senor without probable cause, but then failed to pursue that issue by requesting a *Dunaway* hearing in which he could have challenged the lineup identifications as the fruit of an unlawful arrest. The record, however, indicates that the only witness who testified at the *Wade* hearing, Detective Burzotta, mentioned nothing to suggest that he and his partner had stopped and questioned Senor improperly. Rather, Detective Burzotta testified that they questioned Senor because he fit the description of their suspect and was hanging out where they were told a person fitting the suspect's description might be. Moreover, Senor points to no evidence in his attorney's possession at the conclusion of the *Wade* hearing that would have sustained his claim that the police had no probable cause to detain him. Senor's attorney, therefore, could not have alleged facts sufficient to establish that the police obtained the pretrial identifications under unlawful circumstances, as required under N.Y.Crim. Proc. Law §§

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

710.20(1) and 710.60(1) to demonstrate that a defendant is entitled to a *Dunaway* hearing. *See People v. Covington,* 144 A.D.2d 238, 533 N.Y.S.2d 433, 434 (1st Dep't 1988), *appeal denied,* 73 N.Y.2d 890, 538 N.Y.S.2d 802, 535 N.E.2d 1342 (1989); *People v. Rolland,* 180 Misc.2d 729, 693 N.Y.S.2d 803 (N.Y.Sup.Ct. Apr.6, 1999). Defense counsel's decision not to request a *Dunaway* hearing thus did not fall outside the bounds of professionally competent assistance, and, on this point, petitioner has not met the first prong of the *Strickland* test.

**\*8** Senor has also failed to meet *Strickland* 's second prong in failing to show that, had his attorney requested a *Dunaway* hearing, a "reasonable probability" exists that the court would even have granted that request, much less suppressed the lineup identifications. *See Strickland,* 466 U.S. at 694. Likewise, counsel's decision to refrain from making a motion to set aside the verdict did not render his performance constitutionally deficient.

[3] Senor further claims that, after the jury found him guilty, he alerted his attorney to the possibility that he had known one of the jurors in high school. Based on that representation, Senor contends, his attorney should have moved to set aside the verdict. In papers submitted to this Court and to the state courts, however, Senor has provided no support for his claim that he knew one of the jurors. Moreover, even if such a showing were made, I cannot conceive of how it affords a basis for relief for Senor, who withheld the information from his attorney and the court. Further, in light of the considerable evidence adduced at trial supporting the jury's guilty verdict, Senor has not demonstrated that, had his attorney moved to set aside the verdict, the court would have granted the motion. With respect to both issues on which he bases his ineffective assistance claim, therefore, Senor has failed to satisfy either prong of the *Strickland* test.

1. *Ineffective Assistance of Appellate Counsel*

Senor next argues that his appellate counsel provided him ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest. In particular, Senor contends that his attorney should have included in his brief to the Appellate Division the claims Senor asserted in his *pro se* supplemental brief

to the Appellate Division: that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct; and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. Senor presented this claim of ineffective assistance of appellate counsel to the Appellate Division in his application for a writ of error *coram nobis.* The Appellate Division denied it on the merits, stating that Senor had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996).

Respondent contends that Senor's claim lacks merit and fails to meet the standard for such claims established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the Supreme Court formulated the *Strickland* test in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo,* 13 F.3d at 533; *see also Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. *See Mayo,* 13 F.3d at 533. A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *Cf. Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) ("relief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy").

**\*9** [4] Senor has failed to demonstrate in this case that his appellate counsel's actions amount to constitutionally inadequate performance. In his thirty-one-page brief to the Appellate Division, Senor's counsel focused on three issues that, he urged, warranted a reversal of Senor's conviction: (1) the prosecution's failure to turn over a prospective witness's prior statement; (2) the prosecution's violation, during the cross-examination of petitioner at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

trial, of the court's pre-trial ruling; and (3) the insufficiency of the evidence to sustain a murder conviction. The brief included a detailed review of the evidence presented at trial as well as citations to the record. Counsel chose not to pursue on appeal the issues related to the propriety of Senor's arrest, presumably because, in his professional judgment, he believed those issues were not preserved for appellate review and, in any event were meritless.

Counsel's decision not to advance the lack of probable cause claim on appeal did not bring his performance below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 687. The claim was both unpreserved for appellate review and meritless, and thus the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness.[FN4]

> FN4. Prior to Senor's first trial, his trial counsel moved to suppress his pretrial identification, claiming, among other grounds, that the police had arrested Senor without probable cause. The prosecution consented to a *Wade* hearing to examine the propriety of the lineup identifications, but did not address Senor's contention that the identifications were the result of an unlawful arrest. During the *Wade* hearing, the prosecution called Detective Burzotta as its sole witness, while the defense called no witnesses. At the conclusion of the hearing, the court addressed only the issue of the lineups, stating that it found they had not been unduly suggestive, and denied the defense's motion to suppress the lineup identifications.
>
> Senor never asked the court for a *Dunaway* hearing to determine whether the police had probable cause to arrest him. Nor did he ask the court to reconsider its decision in the *Wade* hearing or move to reopen the hearing based on any evidence adduced at the first trial. Furthermore, prior Senor's second trial, Senor did not move, pursuant to N.Y.Crim. Proc. Law §§ 710.20(1) and 710.60(1), to suppress any evidence or for a hearing on any suppression issue. Nor did he move, based

upon evidence adduced at the second trial, for reconsideration of his initial motion or for a *Dunaway* hearing.

Under New York law, a defendant fails to preserve an issue for appellate review when he fails to object with specificity during the original proceeding, to seek curative instructions, or to request a mistrial. *See* N.Y.Crim. Proc. Law § 470.05(2). Because Senor failed to object to the admission of the lineup identifications on the specific basis that the police obtained them in violation of his Fourth Amendment rights, the questions of the propriety of Senor's detention and the admissibility of the resulting evidence were not preserved for appellate review. *See People v. Miguel,* 53 N.Y.2d 920, 924, 440 N.Y.S.2d 923, 423 N.E.2d 400 (1981). Moreover, as discussed earlier, Senor's trial counsel had no basis upon which to request a *Dunaway* hearing to raise the probable cause issue.

In any event, Senor cannot show that he was prejudiced by his appellate counsel's decision not to advance the probable cause claim because Senor asserted that claim in his *pro se* supplemental brief submitted to the Appellate Division. The Appellate Division considered the claims raised in Senor's *pro se* brief and determined that they were either unpreserved for appellate review or without merit. Consequently, had appellate counsel included the probable cause claim in his brief to the Appellate Division, the result would have been the same.

## 2. Lack of Probable Cause to Arrest

[5] Senor claims that the police seized him without probable cause, questioning him based on a vague description concocted by two witnesses. As discussed earlier, Senor maintains that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. Because the police had no other reason to stop and detain Senor, he maintains that his resulting arrest violated the Fourth Amendment, and the lineup identifications were the fruit of that unlawful arrest.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

This claim is barred from federal review because Senor failed to exhaust it in the state courts. The exhaustion requirement, which arises out of considerations of comity between the federal and state judicial systems, ensures that state courts have an opportunity to correct any violations of the federal constitutional rights of prisoners already within their jurisdiction. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (*per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982). Exhaustion requires a petitioner to have presented to each level of the state courts the same federal constitutional claims, legally and factually, that are raised in his petition to the federal court, so that the state courts will have been alerted to them and have had the initial opportunity to assess them. *See O'Sullivan,* 119 S.Ct. at 1732–33; *Duncan,* 513 U.S. at 365–66; *Picard,* 404 U.S. at 275–76; *Daye,* 696 F.2d at 191.

**\*10** In this case, Senor presented this Fourth Amendment claim on direct appeal in his *pro se* supplemental brief to the Appellate Division. In its November 6, 1995, decision affirming Senor's judgment of conviction, the Appellate Division rejected this claim, among others, without discussion, as either not preserved or without merit. *See People v. Senor,* 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN5] Senor then failed to apply for leave to appeal to the New York Court of Appeals from the Appellate Division's decision affirming his conviction.[FN6] Because he did not present this claim to the New York Court of Appeals, the claim is unexhausted. *See O'Sullivan,* 119 S.Ct. at 1732–33; *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) (stating that, in order to exhaust state remedies, "a petitioner must present his federal constitutional claim to the highest court of the state").[FN7]

FN5. In *Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 810 (2d Cir.2000), the Second Circuit held that when a state court uses language such as "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit," the validity of the claim is

preserved and is subject to federal review.

FN6. As mentioned earlier, Senor states that he sought leave to appeal the Appellate Division's November 6, 1995, decision, but cites as support a certificate from the New York Court of Appeals, dated June 19, 1996, that denies him leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. Respondent maintains that Senor did not seek leave to appeal the Appellate Division's November 6, 1995, decision affirming his conviction, and nothing in the record indicates that he did.

FN7. Although Senor also raised this same claim in a § 440 motion and then appealed the denial of that motion to the Appellate Division, he still failed to exhaust it because the New York Court of Appeals never had the opportunity to review the claim.

Senor can no longer exhaust this claim because, under N.Y.Crim. Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Because this time limit has expired, this claim is procedurally barred from review by the state courts. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state would hold the claim procedurally barred.")).

Senor has not attempted to show cause and resulting prejudice for his failure to appeal the Appellate Division's decision affirming his conviction. In addition, my refusal to consider the claim would not result in a miscarriage of justice.

In any event, the claim is without merit. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court curtailed federal habeas review

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

of Fourth Amendment claims where the state has provided "an opportunity for full and fair litigation" of the Fourth Amendment challenge. *Id.* at 482. Following *Powell,* the Second Circuit has held that courts should review Fourth Amendment claims in habeas petitions only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. *See Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (*en banc* ); *see also Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

Senor cannot claim that the state lacked sufficient procedures for redress of his Fourth Amendment claim because the courts in this circuit have expressly approved New York's procedure for litigating such claims, specified in N.Y.Crim. Proc. Law §§ 710 *et seq.,* as facially adequate. *See, e.g., Gates,* 568 F.2d at 837 & n. 4; *Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 549 (E.D.N.Y.1999); *Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989).

**\*11** Moreover, Senor has not alleged that an unconscionable breakdown in the process occurred, nor could he. To allege such a breakdown, Senor must prove that "no state court ... conducted a 'reasoned method of inquiry into relevant questions of fact and law' or any inquiry at all into the Fourth Amendment claim." *Shaw v. Scully,* 654 F.Supp. 859, 863–64 (S.D.N.Y.1987) (quoting *Cruz v. Alexander,* 477 F.Supp. 516, 523 (S.D.N.Y.1979)); *see also Taylor,* 36 F.Supp.2d at 549. At the *Wade* hearing prior to his first trial, Senor raised the issue of lack of probable cause to arrest, but did not adduce sufficient facts to press that issue in a *Dunaway* hearing. A state court thus conducted an inquiry into the questions relevant to the issue raised, and no unconscionable breakdown in the process occurred. As a result, I cannot consider Senor's illegal arrest argument as an independent basis for habeas review.

### 3. *The Claim that Senor did not Voluntarily Accompany the Police to the Precinct*

[6]  Senor claims that his acquiescence in accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion. Respondent argues that this claim is barred from habeas review because the state court denied it based on a state procedural default, which constitutes an independent and adequate state ground.

I agree. In denying petitioner's first § 440 motion, the court held that Senor's claim that he did not voluntarily consent to accompany the police to the precinct station was procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c), because petitioner based it on matters that appeared in the record, yet did not raise the claim on direct appeal and failed to offer a "reasonable excuse" for not doing so. The order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter this result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Senor does not show cause and prejudice for the default. Furthermore, considering the paucity of evidence supporting his claim that his arrest violated the Fourth Amendment, a miscarriage of justice will not result from my failure to review the claim.

### 4. The Claim That the Prosecutor Failed to Turn Over a Prior Witness Statement and *Violated a Pre–Trial Ruling*

During Senor's second trial, defense witness Yashika Jones testified on direct examination that, on the night Senor was arrested, she went to Putnam Avenue, where Senor usually hung out, to look for him. *See* Tr. at 259.[FN8] On cross-examination, the prosecutor asked Jones why she thought Senor would be at Putnam Avenue. Jones replied, "Because he sold drugs up there on Putnam Avenue." *Id.* at 264. Later on in the trial, when Senor testified, defense counsel asked him if he had ever been convicted of a felony. Senor answered yes. Defense counsel then asked if the conviction related to drugs. Senor replied, "Yes, it was possession." *Id.* at 295. On cross-examination, the prosecutor asked Senor, "Now, you were arrested for selling drugs for the case that you took five years probation for?" *Id.* at 305. Senor answered, "Yes." *Id.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

FN8. "Tr." refers to the transcript of Senor's second trial.

**\*12** Senor claims that the prosecutor violated New York law as articulated in *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), by failing to turn over to the defense a statement Jones gave to the prosecutor prior to trial, in which she allegedly mentioned that Senor had sold drugs on Putnam Avenue. He further asserts that, by eliciting from Jones that Senor sold drugs and by asking Senor on cross-examination about his drug activities, the prosecutor violated the court's pre-trial ruling in a hearing pursuant to *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974). During that *Sandoval* hearing, the trial court had ruled that if Senor testified on his own behalf at trial, the prosecution could inquire about his prior felony conviction, but could not elicit the underlying facts of that conviction, specifically that it was for possession of a controlled substance. Senor maintains that the prosecutor intentionally withheld from the defense Jones' statement regarding Senor selling drugs, so that, at trial, the prosecutor could circumvent the court's *Sandoval* ruling and elicit from Jones facts related to Senor prior drug possession conviction. Senor contends that these actions deprived him of a fair trial.

Respondent contends that this Court cannot review this claim because it relates only to state, not federal, questions. That is not entirely correct. The Supreme Court has emphasized on several occasions that federal habeas relief does not lie for errors of state law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). In conducting habeas review, a federal court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle,* 502 U.S. at 67; 28 U.S.C. § 2241. A federal court, therefore, cannot review a habeas claim based on an alleged *Rosario* violation because the *Rosario* rule is purely a matter of state law. *See Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y.1998); *Morrison v. McClellan,* 903 F.Supp. 428, 429 (E.D.N.Y.1995); *United States ex rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd,* 508 F.2d 837 (2d Cir.1975).

[7] A claim based on an alleged *Sandoval* violation, on the other hand, deals with an evidentiary question and may present an issue for habeas relief, but only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right. *See Rosario v. Kuhlman,* 839 F.2d 918, 924–25 (2d Cir.1988); *Benitez v. Senkowski,* No. 97–Civ–7819, 1998 WL 668079, at \*7 (S.D.N.Y. Sept.17, 1998); *Rojas v. Senkowski,* No. 95–CV–1866, 1996 WL 449321, at \*3 (E.D.N.Y. July 29, 1996) ("The decision to admit prior convictions ... [is] not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude." (quotations omitted)).

**\*13** In order for an evidentiary error to be cognizable under habeas corpus review, the error must cause "actual prejudice" to the petitioner by having a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); *see also Loliscio v. Goord,* 263 F.3d 178, 185 (2d Cir.2001) (posing but not answering question whether, in light of AEDPA, a federal habeas court should continue to apply the *Brecht* standard or determine instead whether the state court's decision was contrary to, or involved an unreasonable application of, the harmless error standard established in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

Even assuming the trial court erroneously permitted the prosecutor to question Senor about his prior drug conviction, Senor has not demonstrated that the ruling influenced the jury's verdict in any way. The prosecution presented abundant evidence at trial pointing to petitioner's guilt. Furthermore, Senor's claim is meritless. On direct examination of Jones, the defense opened the door to questions regarding why Jones went to Putnam Avenue to look for Senor. In addition, when questioning Senor, the defense counsel, not the prosecutor, elicited the facts underlying Senor's prior felony conviction. The prosecutor, therefore, appropriately developed these facts on cross-examination of Senor.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

(Cite as: 2002 WL 31102612 (E.D.N.Y.))

[8] In any event, the claim is procedurally defaulted. Senor asserted this claim on direct appeal to the Appellate Division, but failed to include it in his leave application. Moreover, he failed to include it in any of his § 440 motions. Thus, the claim is unexhausted. *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir.1991). Senor can no longer exhaust this claim because, under N.Y. Crim Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Thus, he can no longer seek leave to appeal this claim. In addition, he cannot raise this claim in another § 440 motion because it relates to facts that appear on the record and, consequently, he should have asserted it on direct appeal and cannot do so now through a collateral challenge. *See* N.Y.Crim. Proc. Law § 440.10. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See O'Sullivan,* 119 S.Ct. at 1732–33; *Grey,* 933 F.2d at 120. Therefore, this claim is procedurally barred from federal review because Senor fails to show cause and prejudice or that a fundamental miscarriage of justice will result.

## CONCLUSION

For the reasons stated above, Senor's petition for a writ of habeas corpus is denied in its entirety. I hereby decline to issue a certificate of appealability, since Senor has not presented a "substantial showing of the denial of a constitutional right." *Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996).

**\*14** So Ordered.

E.D.N.Y.,2002.

Senor v. Greiner
Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Julia LONG, Petitioner,
v.
Elaine A. LORD, Respondent.
**No. 03-CV-0461 NPM.**

March 21, 2006.

Julia Long, Bedford Hills Correctional Facility, Bedford
Hills, NY, Petitioner, pro se.

Hon. Eliot Spitzer, Office of Attorney General, New York
State Attorney General, The Capitol, Albany, NY, for the
Respondent.

Bridget E. Holohan, Ass't Attorney General, of counsel.

*Memorandum-Decision and Order issued in*

SMITH, J.

*MEMORANDUM-DECISION and ORDER*

MCCURN, Senior J.

**\*1** Petitioner Julia Long, a New York State prison inmate
as a result of 1997 convictions for the crimes of first
degree assault and criminal possession of a weapon, has
commenced this proceeding seeking federal habeas relief
pursuant to 28 U.S.C. § 2254. In her petition, Long asserts
seven separate grounds in support of her request for
federal habeas intervention. Respondent has filed a
response in opposition to Long's petition, arguing therein
that some of the claims asserted by Long are procedurally
barred, and additionally that none of the grounds advanced
in her petition have merit.

This Court finds that Long is procedurally barred from
asserting several of the claims she has raised in her
petition. Since petitioner has not established cause for her
procedural default concerning those grounds or that she is
actually innocent of any of the crimes of which he stands
convicted, this Court denies those claims as procedurally
barred. Furthermore, after considering the remaining
grounds raised by Long in her petition in conjunction with
applicable case law, this Court finds that the additional
claims asserted by Long in her habeas petition lack merit.
Accordingly, this Court denies and dismisses Long's
petition.

I. *BACKGROUND*

A. *State Court Proceedings*

According to the state court records below, in the
afternoon of May 1, 1995, Long attended a meeting at the
TC Club in Albany, New York in order to discuss the
possibility of leasing that property from its owner. *See*
Transcript of Trial of Julia Long (1/3/97) ("Trial Tr.") at
366. Ivetta Parson, an individual with whom Long had had

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

an altercation earlier that year, was also at the club around the time of Long's meeting. *See* Trial Tr. at 120-23. For reasons not apparent from the record, Long approached Parson at that time and sprayed her face with mace. Trial Tr. at 123-24. Parson ran out of the club and went to the home of her friend, Regina Monell, where Parson washed her face. Trial Tr. at 125. The two then decided to drive to the TC Club with some friends and confront Long about the incident that had just transpired. Trial Tr. at 126-27. When the group arrived at the club, Parson observed Long holding a handgun. Trial Tr. at 132. Parson exited her vehicle, and as she was walking around her car she discovered that she was bleeding.[FN1] Trial Tr. at 132-33. Around this same time, Monell observed Long firing her weapon at Parson, Trial Tr. at 163-64, and soon thereafter Monell noticed that she had also been shot. Trial Tr. at 164.

> FN1. Parson did not hear Long's gun discharge. Trial Tr. at 133.

**\*2** The trial transcript also reflects that on May 1, 1995, Charles Traynham was a long time acquaintance of Robert Temple. Trial Tr. at 292. At approximately 5:00 p.m. on that date, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Traynham left the store and heard Temple calling out that he had been "hit." Trial Tr. at 294. When Traynham noticed that Temple was bleeding, Traynham drove him to a nearby hospital to be treated for his injuries, Trial Tr. at 296, which included a life-threatening gunshot wound to an artery in his right arm. Trial Tr. at 186-89.[FN2]

> FN2. The prosecution was unable to locate Temple prior to the date of Long's trial. Trial Tr. at 289.

Kenneth Kennedy, a Detective with the Albany Police Department, was assigned to perform a criminal investigation relating to the above-referenced shooting. After speaking with several individuals, Detective Kennedy began looking for Long so that he could question her about her activities on May 1, 1995. Trial Tr. at 325. When Long learned that the police were attempting to question her about the shooting, she contacted an attorney and thereafter surrendered to law enforcement agents. Trial Tr. at 438-39.

On October 13, 1995, an Albany County grand jury returned an indictment against Long. *See* Indictment No. 950631 ("Indictment"). In that accusatory instrument, Long was charged with one count of attempted murder, two counts of first degree assault, and two counts of second degree criminal possession of a weapon. *See* Indictment, Counts One through Five. Beginning on January 3, 1997, Long was tried before a jury on the foregoing charges in Albany County Court with County Court Judge Thomas A. Breslin presiding. After the parties presented their closing arguments and the court instructed the jury, the jury began its deliberations. Following several requests by the jury for the reading back of testimony and clarifications regarding the court's instructions, Trial Tr. at 634-52, the jury declared that it had reached a verdict in the case. In its verdict, the jury: i) acquitted Long of the attempted murder charge; ii) convicted her of both counts charging Long with first degree assault; iii) convicted her of the count charging Long with second degree criminal possession of a weapon (which related to victim Monell); and iv) acquitted her of the final count charging Long with second degree criminal possession of a weapon (which related to victim Temple). Trial Tr. at 652-55.

Prior to sentencing, Long's counsel filed a motion to set

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

aside the jury's guilty verdict pursuant to New York Criminal Procedure Law ("CPL"), Section 330.30 ("CPL § 330 Motion"). *See* Record on Appeal ("Record") at 133. In that application, defense counsel alleged that the convictions must be reversed because Parson was allowed to testify that she was shot by Long despite the fact that Long had never been charged with assaulting Parson. Record at 134. Counsel also claimed that there was insufficient evidence adduced at trial to establish that Temple was shot by Long. Record at 135. After hearing argument on that application, on February 21, 1997, the county court denied Long's CPL § 330 Motion in its entirety. Record at 119-24. That court then sentenced Long to consecutive, indeterminate terms of five to fifteen years imprisonment on each of the first degree assault convictions, and a lesser, concurrent term of imprisonment on the criminal possession of a weapon conviction. *See* Record at 130-31.

**\*3** Long appealed her convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department. However, on November 25, 2000, prior to perfecting that appeal, Long filed a motion to vacate her sentence pursuant to CPL § 440.20. Record at 138. In that application, Long alleged that the consecutive sentences that had been imposed on her by the county court were illegal and contrary to her rights under both the federal and New York state constitutions. *See* Record at 139-44 ("CPL 440.20 Motion"). In support of that application, Long provided an affidavit of Temple-of whom Long had been convicted of assaulting-in which Temple declared that he could not identify the individual who shot him on May 1, 1995. Record at 145. Long's application was opposed by the District Attorney, Record at 146-47, and by Decision and Order dated January 25, 2001, Judge Breslin denied Long's CPL 440.20 Motion in its entirety. Record at 149-51 ("January, 2001 Order"). Long sought leave to appeal that decision to the Appellate Division, *see* Record at 152, and in its order dated April 20, 2001, the Third Department granted Long leave to appeal the

January, 2001 Order to the Appellate Division along with her direct appeal of her conviction. Record at 155.

With the assistance of counsel, Long argued in her direct appeal that: i) she was unduly prejudiced by Parson's testimony to the effect that she was shot by Long; ii) there was insufficient evidence adduced at trial to convict Long of the first degree assault of Temple; iii) she was denied her right to a fair trial due to the manner in which the trial court mischaracterized the allegations of one of the charges in the Indictment; iv) the jury's verdict was repugnant; and v) the sentences were unduly harsh and excessive. *See* Appellant's Brief on Appeal ("App.Br.") at 1-25. That appeal was opposed by the District Attorney in his brief dated December 14, 2001, and on February 28, 2002, the Third Department unanimously affirmed Long's convictions and sentences. *People v. Long,* 291 A.D.2d 720, 738 N.Y.S.2d 721 (3d Dept.2002). New York's Court of Appeals denied Long leave to appeal in its order dated June 17, 2002. *See People v. Long,* 98 N.Y.2d 677, 746 N.Y.S.2d 467, 774 N.E.2d 232 (2002).

B. *Proceedings in this Court*

Long commenced this proceeding, *pro se,* on April 14, 2003. *See* Petition (Dkt. No. 1). In that pleading, petitioner argues that: i) admission into evidence of an uncharged crime purportedly committed by Long deprived her of her right to a fair trial; ii) the trial court wrongfully denied Long's application to dismiss the third count in the Indictment; iii) the jury's verdict was repugnant; iv) the trial court misstated the factual allegations contained in the third count in the Indictment in its instructions to the jury; v) the sentence imposed was both harsh and excessive; vi) the imposition of consecutive sentences was both illegal and violative of Long's right against Double Jeopardy; and vii) the Appellate Division wrongfully refused to hear Long's appeal of the denial of her CPL 440.20 Motion.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

*See* Petition at ¶ 13. Long has also filed a memorandum of law in support of her petition. *See* Dkt. No. 2 ("Supporting Mem.").

**\*4** By Order dated April 24, 2003, the respondent was ordered to file a response to Long's petition. On June 20, 2003, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer together with a memorandum in opposition to Long's petition. Dkt. Nos. 8-9. In his opposing memorandum, respondent argues that Long is procedurally barred from asserting certain of the claims raised in her petition, and that none of Long's claims have merit. *See* Dkt. No. 9 ("Opp.Mem.").

## II. *DISCUSSION*

### A. *Procedurally Defaulted Claims*

This Court initially considers respondent's claim that Long has procedurally defaulted on her claims: i) which allege that she was denied her right to a fair because Parson was allowed to testify about an uncharged crime purportedly committed by Long; ii) that assert that the county court mischaracterized a charge contained in the Indictment; and iii) which contest both the legality and constitutionality of her sentences. *See* Opp. Mem. at 3-6.

### 1. *Admission of Evidence of an Uncharged Crime*

Petitioner's initial ground for relief is based upon Parson's trial testimony in which she suggested that she was shot by Long. *See* Petition, Ground A.

In her direct appeal, Long noted that the Indictment never charged her with committing any crime against Parson. *See* App. Br. at 3; *see also* Indictment. Prior to trial, defense counsel obtained a ruling from the county court that precluded Parson from testifying about the fact that she had been shot on May 1, 1995. *See* App. Br. at 5; *see also* Appellant's Appendix at A1. At trial, however, Parson testified that she was shot on that day in a manner which suggested that Long was the individual who had shot her. *See* Trial Tr. at 163-64. In addressing Long's appellate claim that the admission of that testimony constituted reversible error, the Third Department ruled that Long had "failed to object to Parson's testimony and, therefore, did not preserve this issue for appellate review." *Long*, 291 A.D.2d at 721, 738 N.Y.S.2d 721 (citing CPL § 470.05[2] ) (other citation omitted).

A state court's determination that a claim was not preserved for appellate review is a finding of procedural default. *See* *Rivera v. Moscicki,* No. 03 CIV. 5810, 2005 WL 2347840, at *3 (S.D.N.Y. Sept. 22, 2005); *Wilson v. Supt., Attica Corr. Facility,* No. 9:00-CV-767, 2003 WL 22765351, at *3 (N.D.N.Y. Nov.24, 2003) (Sharpe, M.J.) (citations omitted), *adopted, Wilson v. Supt., Attica Corr. Facility,* slip op. at 2 (N.D.N.Y. Feb. 3, 2004) (Mordue, J.); *Betancourt v. Bennett,* No. 02-CV-3204, 2003 WL 23198756, at *12 (E.D.N.Y. Nov.7, 2003). Therefore, Long has procedurally defaulted on her first ground for relief.

### 2. *Misstatement Regarding Count Three of the Indictment*

In her fourth ground seeking federal habeas intervention, Long argues that in its charge to the jury, the trial court mischaracterized the allegations contained in Count Three of the Indictment. Petition, Ground D. Specifically, she notes that such count alleged that Long shot Temple in his *chest* and right arm. *See* Indictment, Count Three

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

(emphasis added). In its charge to the jury, however, the trial court declared that this count alleged that Long had shot Temple in the right side of his *head* and in his right arm. *See* Trial Tr. at 617 (emphasis added). Long claims in this action, as she did in her direct appeal, that as a result of the foregoing she was deprived of her right to a fair trial. *See* Supporting Mem. at 16-18; App. Br. at 16-18.

**\*5** In addressing this appellate claim, the Appellate Division determined that Long had "failed to object to the court's charge and, therefore, that error has not been preserved for review (*see,* CPL 470.05[2] )." Since the Third Department explicitly determined that Long had failed to preserve this issue for appellate review, Long has procedurally defaulted on the fourth claim asserted in her petition.[FN3] *Rivera,* 2005 WL 2347840, at \*3; *Wilson,* 2003 WL 22765351, at \*3; *Betancourt,* 2003 WL 23198756, at \*12.

> FN3. The Appellate Division's decision might be liberally read as one that alternatively addressed the merits of this claim. *See Long,* 291 A.D.2d at 723, 738 N.Y.S.2d 721 (after noting Long's procedural default on the claim relating to the county court's misreading of Count Three of the Indictment, the Third Department opined that "were we to address the issue, we would find it without merit since all other trial references to Temple's wound correctly characterized its nature").
>
> Even assuming, *arguendo,* that the above cited language may properly be characterized as an (alternative) decision addressing the merits of this claim, the undersigned notes that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as

an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir.1996) (citing *Velasquez* ); *see also Olivo v. Thorton,* No. 05 CIV.3237, 2005 WL 3292542, at \*8 (S.D.N.Y. Dec. 6, 2005); *Broome v. Coughlin,* 871 F.Supp. 132, 134 (N.D.N.Y.1994) (Kaplan, J., sitting by designation). Therefore, this Court deems Long to have procedurally defaulted on this ground.

3. *Claims Raised in CPL 440.20 Motion*

Long argued in her CPL 440.20 Motion, and similarly asserts in her sixth ground for relief herein, that the county court's imposition of consecutive sentences on Long was both illegal and contrary to her constitutional right to be free from Double Jeopardy. *See* Record at 139-44; Petition, Ground F.

As noted above, the Appellate Division granted Long permission to appeal the county court's January, 2001 Order denying Long's CPL 440 .20 Motion. *See* Record at 155. Long's appellate counsel did not, however, assert on appeal any claims that Long had raised in her CPL 440.20 Motion. *See* App. Br. at 4-25. In addressing this fact in the context of Long's appeal, the Third Department noted:

Although [Long] appeals from both the judgment of conviction and the order denying the CPL 440.20 motion, her failure to address any issues pertaining to the denial of her CPL 440.20 motion constitutes an abandonment of the appeal from that order. Accordingly, we address only the arguments raised on

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

the appeal from the judgment of conviction.

*Long*, 291 A.D.2d at 721, 738 N.Y.S.2d 721.

Where a petitioner abandons a claim at the appellate level, federal courts are to view such a claim as procedurally defaulted. *Delucia v. West*, No. 04 CIV. 3605, 2005 WL 1981708, at *4 (S.D.N.Y. Aug. 17, 2005) ("claims [that] may be considered abandoned ... result[ ] in a procedural default"); *Stephens v. Lacy*, 914 F.Supp. 44, 45 (E.D.N.Y.1996) (claims abandoned at the appellate level are procedurally defaulted). This Court accordingly finds that Long has procedurally defaulted on her sixth ground seeking federal habeas intervention.

B. *Consequences of Procedural Default*

A federal district court is precluded from reviewing a habeas claim if the state courts' rejection of that same claim rested on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir.2000); *Marengo v. Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y.2004) (citations omitted). Thus, where the state court decision clearly and expressly indicates that its determination rests on a state procedural bar, a federal court may not review such claim when it is subsequently asserted in a federal habeas petition unless the petitioner demonstrates both good cause for and actual prejudice resulting from the noncompliance with the state's procedural rule. *Fama v. Commissioner of Correctional Services*, 235 F.3d 804, 809 (2d Cir.2000); *Livingston v. Herbert*, No. 00-CV-1698, 2002 WL 59383, at *2 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), *adopted,* No. 00-CV-1698, docket no. 20 (N.D.N.Y. Jan. 24, 2002) (Kahn, J.), *appeal dismissed,* No. 02-2083, slip op. at 1 (2d Cir. Aug. 28, 2002) (unpublished). Additionally,

review of procedurally defaulted claims is available where the petitioner demonstrates that a fundamental miscarriage of justice would occur absent federal court review.[FN4] *Dixon,* 293 F.3d at 80; *Morales v. Greiner*, No. CV-98-6284, 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005).

> FN4. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002).

**\*6** For this Court to excuse Long's procedural default under the "cause and prejudice" exception which permits federal review of procedurally barred claims, she must first establish "cause" for her default. *E.g., St. Helen v. Senkowski,* 374 F.3d 181, 184 (2d Cir.2004) (citation omitted), *cert. denied,* 543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). To establish such cause, a petitioner must show that "some objective external factor impeded [her] ability to comply with the relevant procedural rule." *Wilson,* 2003 WL 22765351, at *3 (citing *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Restrepo v. Kelly,* 178 F.3d 634, 638 (2d Cir.1999)). Examples of such "external factors" include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's trial or on direct appeal. *Wilson,* 2003 WL 22765351, at *3 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)); *see Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citing *Murray* ); *United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1992).

In the present action, Long has not offered any cause for her failure to preserve the above-referenced procedurally

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

defaulted claims-all of which were based upon matters contained in the record-for review in her direct appeal of her conviction. Significantly, Long has never asserted, in the state courts or this action, that her trial counsel rendered ineffective assistance by his failure to object to either Parson's trial testimony or the manner in which the trial court described the allegations contained in the third count in the Indictment to the jury during the county court's instructions.[FN5] Nor has Long ever argued that her appellate counsel rendered ineffective assistance by failing to raise any of the claims Long asserted in her CPL 440.20 Motion on appeal.

> FN5. Long was represented by Eugene Grenz, Eq. at her criminal trial, and by Theresa M. Suozzi, Esq. on appeal.

Since Long has not established cause for her procedural default concerning these claims, this Court need not decide whether she suffered prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally barred claims unless *both* cause and prejudice is demonstrated.[FN6] *See Stepney,* 760 F.2d at 45; *D'Alessandro v. Fischer,* No. 01 CIV. 2551, 2005 WL 3159674, at *9 n. 10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney* ); *Moore v. Greiner,* No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct.19, 2005) (citing *Stepney* ); *Lutes v. Ricks,* No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing *Stepney* and *Jones v. Barkley,* No. 9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb.27, 2004) (Sharpe, J.) (collecting cases)); *Pou v. Keane,* 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn, J.).

> FN6. The petitioner bears the burden of

demonstrating cause for her procedural default and resulting prejudice. *See Simpson v. Portuondo,* 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

**\*7** The finding that Long has failed to establish cause for her procedural default does not necessarily preclude this Court from considering her procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly invoke habeas review as to such claims if the court is convinced of the petitioner's actual innocence. On this question, the Second Circuit has observed that:

> The Supreme Court has explained that the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo,* 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L.Ed.2d 808 ... (1995). " "[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 ... (1998). "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup,* 513 U.S. [at] 327-28 ... (some internal citation marks omitted)).

*Sweet v. Bennett,* 353 F.3d 135, 142 (2d Cir.2003); *see also D'Alessandro,* 2005 WL 3159674, at *8; *Marengo,* 342 F.Supp.2d at 228. Thus, in considering whether a petitioner's procedural default may be excused under this "actual innocence" exception, federal courts are to consider the sufficiency of the evidence offered against the petitioner at his or her trial. *Dixon,* 293 F.3d at 81.

Considering first Long's convictions for the crimes of first

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

degree assault, this Court notes that "New York Penal Law § 120.10(1) provides that a person is guilty of first degree assault when, '[w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument." ' Jackson v. Lacy, 74 F.Supp.2d 173, 178 (N.D.N.Y.1999) (McAvoy, C.J.).

With respect to Long's assault conviction relating to Monell, the trial transcript reflects that soon after Monell observed Long firing her weapon at Parson, Monell heard Parson's friend, Charlene Gause, directing Parson to shoot Monell.[FN7] Trial Tr. at 165. Soon thereafter, Monell discovered that she had been shot. Trial Tr. at 165-66. Additionally, a forensic detective with the Albany Police Department testified that the location of seven shell casings found at the crime scene was consistent with having been fired from the area where Long was observed standing by Monell and Parson. Trial Tr. at 270-77. The foregoing evidence amply supported the jury's finding that Long was guilty of the first degree assault of Monell.[FN8]

> FN7. Monell testified that on the date of the shooting, she inquired of Gause why she was asking Long to shoot Monell, however Gause responded by stating: "You better back up, you better back up." Trial Tr. at 165.

> FN8. Long never claimed in the state courts that the evidence at trial was insufficient to establish her guilt of the assault charge relating to Monell. See App. Br. In fact, at trial, Long's defense counsel conceded that there was "a factual basis to send that [charge] to the jury." Trial Tr. at 350-51.

As to Long's conviction on the first degree assault relating

to Temple, after reviewing the relevant trial testimony relating to this charge, this Court adopts the Appellate Division's determination that the trial testimony "provided a valid line of reasoning and permissible inferences from which any rational trier of fact could find [Long] guilty beyond a reasonable doubt of all the essential elements of the crime of assault in the first degree" as to Temple. See Long, 291 A.D.2d at 722, 738 N.Y.S.2d 721.[FN9]

> FN9. This Court discusses in more detail the evidence adduced at trial relating to Long's conviction on the assault of Temple *infra* in conjunction with Long's habeas challenge relating to the trial court's failure to grant her motion to dismiss the count in the Indictment accusing petitioner of that crime.

**\*8** Turning to Long's conviction of second degree criminal possession of a weapon in conjunction with her assault on Monell, the Court notes that in New York, a person is guilty of that crime when, with the intent to use a weapon unlawfully against another, a person "possesses a loaded firearm." *See* New York Penal L. § 265.03. The evidence adduced at trial was more than sufficient to establish that on May 1, 1995, Long possessed a loaded firearm which she intended to use unlawfully with respect to Monell. *See, e.g.,* Trial Tr. at 134, 164-66.

In sum, after carefully considering this issue, this Court concludes that petitioner has failed to meet her burden of proving that she is actually innocent of any of the crimes of which she was convicted.[FN10] Therefore, this Court finds no basis to overlook Long's procedural default regarding the above-referenced claims, and accordingly denies her first, fourth and sixth grounds for relief (delineated by petitioner as Grounds "A," "D," and "F," respectively) as procedurally forfeited. *See, e.g.,* Lutes, 2005 WL 2180467, at *9; Ayuso v. Artuz, No. 99 CIV 12015, 2001

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

WL 246437, at *8-9 (S.D.N.Y. Mar.7, 2001); *DeLeon v. Hanslmaier,* No. CV-94-5512, 1996 WL 31232, at *3-4 (E.D.N.Y. Jan.19, 1996), *aff'd,* 104 F.3d 355 (2d Cir.1996).

> FN10. The petitioner bears the burden of proving actual innocence where he or she seeks federal review of procedurally defaulted habeas claims. *E.g., Speringo v. McLaughlin,* 202 F.Supp.2d 178, 189 (S.D.N.Y.2002).

C. *Remaining Claims*

1. *Standard of Review*

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. Under the AEDPA, a federal court cannot grant habeas relief to a state prisoner on a claim:

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry,* 403 F.3d at 66; *Boyette,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court can grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*9 *Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108-09 (2d Cir.2000)).

In *Sellan v. Kuhlman,* 261 F.3d 303, 309-10 (2d Cir.2001), the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

required if the claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law. *Sellan,* 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that:

[f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-*even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."*

*Sellan,* 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller,* 303 F.3d 231, 246 (2d Cir.2002). When a state court's decision is found to be decided "on the merits," that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal court engaged in habeas review is to determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable." *Williams,* 529 U.S. at 409; *see also Sellan,* 261 F.3d at 315. The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error," though "the increment need not be great[.]" *Francis S.,* 221 F.3d at 111.

2. *Substance of Long's Remaining Claims*

A. *Motion to Dismiss Indictment*

In her second ground for relief, Long argues that the trial court wrongfully failed to dismiss the third count in the Indictment despite the fact that insufficient evidence was adduced at trial establishing her guilt of that charge. *See* Petition, Ground B; Supporting Mem. at 7-10; *see also* Indictment, Count Three; App. Br. at 7-10.

At the close of the prosecution's proof, Long's counsel moved pursuant to CPL § 290.10 to dismiss, *inter alia,* Count Three of the Indictment, which accused Long of the first degree assault of Temple.[FN11] *See* Trial Tr. 351. The county court denied that application, concluding that there existed a sufficient factual basis to submit that Count to the jury for its consideration. Trial Tr. at 352.

FN11. That procedure under the CPL, which is now referred to as a request for a trial order of dismissal, is derived from the prior practice utilized to secure the same result-the directed verdict of acquittal. *Faux v. Jones,* 728 F.Supp. 903, 907 (W.D.N.Y.1990) (citing CPL § 290.10).

*10 A motion under CPL § 290.10 must be denied where the trial evidence, when viewed in a light most favorable to the prosecution, is legally sufficient to support a guilty verdict. *People v. Phillips,* 256 A.D.2d 733, 734-35, 682 N.Y.S.2d 685 (3d Dept.1998) (citation omitted). A claim based upon a trial court's failure to dismiss a charge in an indictment is properly considered a challenge to the sufficiency of evidence relating to such charge. *See Gwathney v. Sabourin,* 269 F.Supp.2d 63, 66 (E.D.N.Y.2003); *Phillips,* 256 A.D.2d at 734-35, 682 N.Y.S.2d 685 (citation omitted). Accordingly, federal courts considering habeas claims premised upon a trial

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 11

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

court's failure to dismiss one or more counts in an indictment must determine whether the state court's decision denying the motion to dismiss is contrary to, or involved an unreasonable application of, Supreme Court case law governing evidence sufficiency claims. *E.g., Ubrich v. Murphy,* No. 98-CV-0655, slip op. at 41 (N.D.N.Y. Apr. 4, 2003) (Peebles, M.J.), *adopted,* No. 98-CV-0655, Dkt. No. 28, slip op. at 2 (N.D.N.Y. May 13, 2003) (Scullin, C.J.).

i. *Clearly Established Supreme Court Precedent*

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he or she is charged. *See Fiore v. White,* 531 U.S. 225, 228-29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001); *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A habeas petitioner claiming that there was insufficient evidence supporting a challenged conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup,* 513 U.S. at 323 n. 38; *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citations omitted). Moreover, in reviewing the record, the court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319.

ii. *Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent*

The trial evidence established that on May 1, 1995, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Around that same time, both Parson and Monell observed Long near the TC Club brandishing a gun. Trial Tr. at 132, 163-64. Long was observed firing the weapon at Parson, Trial Tr. at 163-64, and around that same time Temple, who was near the TC Club on that date, sustained a life-threatening gunshot wound. Trial Tr. at 188-89, 294. Additionally, seven 9 mm shell casings were found in the area where Long was observed by Monell and Parson holding a gun, Trial Tr. at 270-77, evidence which strongly suggested that Long fired her weapon multiple times. The foregoing evidence, viewed collectively, is more than sufficient to surpass the relatively modest hurdle imposed by *Jackson* with respect to Long's conviction on the first degree assault charge relating to Temple. Therefore, this Court concludes that Long has not demonstrated that the Appellate Division's decision denying the aspect of her appeal which challenged the denial of her motion to dismiss the third count in the Indictment due to evidence insufficiency, *see Long,* 291 A.D.2d at 721-22, 738 N.Y.S.2d 721, is either contrary to, or involves an unreasonable application of, *Jackson* and its progeny. This Court accordingly denies her second ground for relief.

B. *Repugnant / Inconsistent Verdict*

**\*11** As noted above, the jury acquitted Long of the attempted murder charge relating to Monell (Count One), as well as the weapons possession charge which accused her of possessing a firearm and intending to use same unlawfully as to Temple (Count Five). *See* Trial Tr. at

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 12

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

652-55.

Long argues in this proceeding, as she did in state court, that the jury's verdict is repugnant because she was acquitted of the charge which accused Long of criminally possessing a weapon but convicted of the assault charge as to Temple, which required, *inter alia,* a finding by the jury that Long used a firearm in conjunction with such assault. *See* Petition, Ground C; Supporting Mem. at 11-15; *see also* App. Br. at 11-15; Indictment, Counts Three, Five.

i. *Clearly Established Supreme Court Precedent*

In *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Supreme Court opined that:

The most that can be said in [ ] cases [in which the jury renders an inconsistent verdict] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

*Dunn,* 284 U.S. at 393 (internal quotation and citation omitted); *see also Powell,* 469 U.S. at 64-65 (quoting *Dunn* ). Since the Government is unable to seek review of the portion of the verdict that acquits a defendant due to the Double Jeopardy Clause of the United States Constitution, it is "unclear whose ox has been gored" by an inconsistent verdict. *Powell,* 469 U.S. at 65-66 (footnote omitted). Consequently, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at

65-66; *Bradshaw v. Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 2409, 162 L.Ed.2d 143 (2005) ("inconsistent jury verdicts may be enforced") (citing *Powell, Dunn* ) (Souter and Ginsburg, concurring); *Dowling v. United States,* 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ("inconsistent verdicts are constitutionally tolerable" ) (citation omitted); *Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside").

ii. *Contrary To, or Unreasonable Application of, Supreme Court Precedent*

In denying Long's appellate claim relating to the alleged inconsistency of the jury's verdict, the Appellate Division opined:

Defendant reasons that she cannot be guilty of shooting Temple if the jury also determined that she did not possess a gun. However, it is equally possible that the verdict resulted from the jury's assessment that, although she possessed a loaded handgun, she did not have the intent to use it unlawfully against Temple (*see,* Penal Law § 265.03[2] ). The jury could have determined that she acted recklessly by creating a grave risk of death to Temple causing serious physical injury (*see,* Penal Law § 120.10[3] ). Therefore, "[t]he acquittal of the former ... did not negate [any] elements of the latter [.]" Where, as here, a rational theory exists to support each verdict, the jury's determination will not be disturbed.

**\*12** *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721 (citation to case law omitted). Thus, the Third Department found that the jury's verdict was not, in fact, inconsistent.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 13

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Since the present habeas claim is rooted in the assumption that the jury's verdict was repugnant, *see* Petition, Ground C, this Court initially considers whether the verdict was, in fact, inconsistent.

In instructing the jury on the first degree assault charge relating to Monell, the trial court charged the jury that the prosecution was required to establish that on or about May 1, 1995, Long, "did, with intent to cause serious physical injury to another person, cause[ ] such injury to such person ... by means of a deadly weapon." Trial Tr. at 613-14. In sharp contrast to that charge, when instructing the jury as to the first degree assault charge relating to Temple, the county court instructed the jury that the prosecution was required to establish that on or about May 1, 1995, "under circumstances evincing a depraved indifference to human life, [Long] recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused serious physical injury to another person." Trial Tr. at 616-17. Thus, unlike the assault charge relating to Monell, the jury was *not* required to find that Long *intended* to cause serious physical injury to Temple in considering whether she was guilty of that assault charge. Both weapons possession charges, however, required the jury to find, *inter alia,* that Long possessed a firearm *with the intent to use that weapon unlawfully. See* Trial Tr. at 622, 624 (weapons possession charge relating to Monell); Trial Tr. at 626-28 (weapons possession charge relating to Temple). Thus, unlike the assault charge relating to Temple, the jury was instructed that it could *only* find Long guilty of the weapons possession charge relating to that victim if it found, *inter alia,* that: "she possessed [a loaded pistol] *with intent to use it unlawfully against ... Robert Temple."* Trial Tr. at 627.

Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." CPL §

300.30(5). "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin,* 76 N.Y.2d 804, 806, 559 N.Y.S.2d 962, 559 N.E.2d 656 (1990) (citing *People v. Tucker,* 55 N.Y.2d 1, 6-7, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981)).

In the state court matter below, the Appellate Division determined that the jury could have properly found both: i) that Long acted recklessly when she shot Temple, thereby creating a grave risk of death to him and causing him serious physical injury; and ii) that although Long possessed a loaded handgun on May 1, 1995, she did not *intend* to use it unlawfully against Temple. [FN12] *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721. This Court agrees with the Third Department's determination that the jury's verdict was in no way inconsistent or repugnant. Thus, Long cannot prevail on her third ground for relief, which is premised upon the assumption that the jury's verdict was inconsistent.

> FN12. Unlike the evidence adduced at trial regarding shooting victim Monell, the testimony adduced at trial established that Temple merely happened to be a bystander near the TC Club at the time Long fired her weapon. Trial Tr. at 293-94.

**\*13** Additionally, as noted above, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See* Powell, 469 U.S. at 65-66. Since an allegedly inconsistent verdict is not a sufficient reason for setting it aside, *Harris,* 454 U.S. at 345, the Appellate Division's decision denying this aspect of Long's appeal is neither contrary to, nor an unreasonable application of, the above-referenced

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Supreme Court authority. Therefore, for this reason as well, this Court must deny Long's third ground for relief. *E.g., Brunson v. Tracy,* 378 F.Supp.2d 100, 110 (E.D.N.Y.2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations omitted); *Vassell v. McGinnis,* No. 04-CV-0856, 2004 WL 3088666, at *6 (E.D .N.Y. Dec. 22, 2004); *Muldrow v. Herbert,* 299 F.Supp.2d 166, 170 (W.D.N.Y. Feb.3, 2004) ("an allegedly inconsistent verdict does not present a constitutional violation. Therefore, such a claim is not even cognizable on habeas review"), *appeal dismissed,* No. 04-1839pr (2d Cir. Jan. 20, 2005).

C. *Harsh and Excessive Sentence*

In her fifth claim, Long alleges that in light of her age, background, familial obligations and lack of criminal history, the sentence imposed on her was harsh and excessive.[FN13] Petition, Ground E. She further alleges that the sentences "violate[ ] New York State and Federal Sentencing Guidelines." Petition, Ground E.

FN13. This claim was asserted by Long in her direct appeal. *See* App. Br. at 20-24.

These claims, however, fail to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citing *Underwood v. Kelly,* 692 F.Supp. 146 (E.D.N.Y.1988), *aff'd mem.,* 875 F.2d 857 (2d Cir.1989)); *see also Brown v. Donnelly,* 371 F.Supp.2d 332, 343-44 (W.D.N.Y.2005); *Jackson,* 74 F.Supp.2d at 181 ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law"). Although petitioner now claims that the sentences imposed on her were illegal, *see* Petition, Ground E, the Court notes that in Long's direct appeal, appellate counsel explicitly acknowledged that the sentences imposed on her client were authorized by New York law. *See, e.g.,* App. Br. at 20 (counsel conceding that the imposed sentences were "authorized by law").

Moreover, the Court's review of Long's sentences establishes that the imposed sentences were consistent with New York Penal Law. For example, Long was sentenced to terms of five to fifteen years imprisonment on each of her first degree assault convictions. *See* Record at 130-31. The Appellate Division has specifically noted that such a sentence for a conviction of that crime is "within permissible statutory ranges" in New York. *See People v. Duncan,* 279 A.D.2d 887, 889, 720 N.Y.S.2d 578 (3d Dep't), *leave denied,* 96 N.Y.2d 828, 729 N.Y.S.2d 448, 754 N.E.2d 208 (2001). Similarly, Long's sentence of five to fifteen years imprisonment on her weapons possession conviction, Record at 131, has been explicitly acknowledged as authorized under New York law. *See People v. Rodriguez,* 276 A.D.2d 326, 326-27, 714 N.Y.S.2d 267 (1st Dep't 2000), *leave denied, People v. Rodriguez,* 96 N.Y.2d 738, 722 N.Y.S.2d 805, 745 N.E.2d 1028 (2001).[FN14]

FN14. As to Long's claim relating to the United States Sentencing Guidelines, *see* Petition, Ground E, the Court finds that Long has not articulated how the United States Sentencing Guidelines are germane, in any way, to her convictions, which arose out of state court prosecutions based upon Long's violation of New York's penal laws.

***14** With respect to the consecutive nature of the sentences imposed on Long regarding the first degree assault convictions,[FN15] this Court notes that the discretionary power of trial courts in New York "includes

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

the ability to impose consecutive penalties for multiple crimes." *People v. Ramirez,* 89 N.Y.2d 444, 450, 654 N.Y.S.2d 998, 677 N.E.2d 722 (1996) (citing *Matter of Walker v. Walker,* 86 N.Y.2d 624, 629, 635 N.Y.S.2d 152, 658 N.E.2d 1025 (1995)) (other citation omitted). "[E]ven if the statutory elements of multiple offenses overlap, sentences may be imposed to run consecutively when multiple offenses are committed through separate and distinct acts, though they are part of a single transaction." *Ramirez,* 89 N.Y.2d at 451, 654 N.Y.S.2d 998, 677 N.E.2d 722 (citing *People v. Laureano,* 87 N.Y.2d 640, 643, 642 N.Y.S.2d 150, 664 N.E.2d 1212 (1996)) (other citation omitted).

> FN15. The trial court imposed consecutive sentences with respect to the assault convictions; the sentence on the weapons possession conviction was ordered to run concurrent with the other sentences imposed by the county court. Record at 130-31.

Long's assault on two different victims-Monell and Temple-clearly constitutes separate acts which permitted the county court to impose consecutive sentences. *See DeSordi v. Walker,* No. 98-CV-1351, slip op at 31-32 (N.D.N.Y. Mar. 7, 2002) (Sharpe, M.J.) ("the stabbing of separate victims clearly constituted separate acts, [rendering permissible] the imposition of consecutive sentences") (citations omitted), *adopted DeSordi v. Walker,* No. 98-CV-1351 (N.D.N.Y. July 30, 2002) (Kahn, J.), *aff'd,* 84 Fed.Appx. 160 (2d Cir. Jan.12, 2004), *cert. denied sub nom. DeSordi v. Burge,* 543 U.S. 811, 125 S.Ct. 44, 160 L.Ed.2d 15 (2004). Thus, the sentences imposed on Long, including the consecutive nature of some of those sentences, are clearly permitted by state law.

Arguably, this ground could be construed as a claim that

the imposed sentences constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272; *see Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Eighth Amendment only forbids sentences which are "grossly disproportionate" to the crime). Sentences of imprisonment that are within the limits of valid state statutes are simply not cruel and unusual punishment in the constitutional sense. *Brumfield v. Stinson,* 297 F.Supp.2d 607, 622 (W.D.N.Y.2003) (citing *Thompson v. Lord,* No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.)) (other citations omitted) [, *adopted, Thompson v. Lord,* No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.) ].

Long has not provided anything in support of her petition which suggests that either the terms of imprisonment or consecutive nature of the sentences imposed on her is "grossly disproportionate" to her crimes. *E.g., Harmelin,* 501 U.S. at 995. This Court therefore finds no basis upon which it may properly find that Long is entitled to habeas relief due to the sentences she received as a consequence of her convictions and accordingly denies ground E in her petition.

D. *Failure to Consider Appeal of Denial of CPL 440.20 Motion*

**\*15** In her seventh and final ground, petitioner argues that although the Third Department granted her leave to appeal the denial of her CPL 440.20 Motion, that court nevertheless "refused to hear [s]aid motion" in violation of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

her constitutional rights. *See* Petition, Ground "G." [FN16]

> FN16. In her seventh ground for relief, Long also refers to a "reconsideration motion." *See* Petition, Ground G. None of the state court records provided to this Court reflect any motion for reconsideration. Thus, it appears as though Long's reference to a "reconsideration motion" merely constitutes a typographical error on the part of petitioner.

This claim appears to allege that the Third Department wrongfully determined that Long failed to assert any appellate claim relating to her CPL 440.20 Motion and had therefore abandoned those claims. *See Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721. Therefore, this Court briefly reviews Long's CPL 440.20 Motion, together with the claims raised in her appellate brief, in order to ascertain whether the Third Department's determination that Long abandoned any appellate claim relating to the denial of her CPL 440.20 Motion is supported by the record.

Long's CPL 440.20 Motion alleged that the county court's imposition of consecutive sentences violated: i) the provisions of both the federal and New York State constitutions which prohibit individuals from being placed in Double Jeopardy; and ii) New York's Penal Law which addresses the issue of when a trial court may properly impose consecutive sentences. *See* CPL 440.20 Motion. Although Long's appellate brief made one brief reference to the CPL 440.20 Motion filed by Long, *see* App. Br. at 21, that brief never referred to any of the arguments asserted in the CPL 440.20 Motion. Nor did that brief incorporate by reference any of the claims asserted in that motion. *See* App. Br. Thus, the appellate brief never asserted as a basis for relief any claim that the sentences imposed on Long violated the Double Jeopardy clauses of

either the state or federal constitutions, or which argued that the consecutive nature of the sentences rendered them illegal under New York law. [FN17] *See* App. Br. Rather, the portion of the appellate brief which challenged the sentences imposed on Long was limited to an argument that the sentences were harsh and excessive. *See* App. Br. at 20-24.

> FN17. As noted *ante* by this Court in addressing Long's claim that the imposed sentences were harsh and excessive, appellate counsel *conceded* in her brief that the sentences imposed by the trial court were "authorized by law." *See* App. Br. at 20.

The foregoing conclusively establishes that although Long was afforded the opportunity to challenge the denial of her CPL 440.20 Motion on appeal, appellate counsel chose, apparently for strategic reasons, to refrain from asserting any claims relating to the denial of that motion in counsel's direct appeal of Long's conviction. Thus, to the extent Long now seeks federal habeas relief based upon a claim that the Appellate Division erred in either: i) concluding that Long failed to assert any of the claims raised by her in her CPL 440.20 Motion on appeal; or ii) deeming Long to have abandoned those claims, this Court finds such claims to be contradicted by the record and entirely without merit.

### III. *CONCLUSION*

After carefully considering all of the submissions before the Court, the undersigned concludes that Long has procedurally defaulted on her claims which allege that: i) she was denied her right to a fair because testimony relating to an uncharged crime was admitted into evidence against her at trial; ii) the trial court mischaracterized the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
(Cite as: 2006 WL 1977435 (N.D.N.Y.))

allegations asserted against her in Count Three of the Indictment; and iii) her sentences are illegal and violative of both the federal and New York state constitutions. Since petitioner has not established cause for her procedural default concerning such claims or that she is actually innocent of any of the crimes of which she stands convicted, this Court denies those claims as procedurally barred. Furthermore, after considering the remaining grounds raised by Long in her petition, this Court finds that such claims lack merit and do not afford Long a basis for federal habeas relief. Thus, those claims are denied on the merits.

**\*16** IT IS THEREFORE HEREBY

ORDERED, that Long's habeas petition (Dkt. No. 1) is DENIED and DISMISSED, and it is further

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by regular or electronic mail, and it is further

ORDERED, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

IT IS SO ORDERED.

N.D.N.Y.,2006.
Long v. Lord
Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Esau STALEY III, Petitioner,
v.
Charles GREINER, Respondent.
No. 01Civ.6165(JSR)(DF).

Feb. 6, 2003.

Following affirmance, 692 N.Y.S.2d 314, of state convictions for attempted rape and first-degree sexual abuse, petition for federal habeas relief was brought. The District Court, Freeman, United States Magistrate Judge, recommended that: (1) alleged 72-hour delay between arrest and arraignment was not presumptively prejudicial for speedy trial purposes, and (2) claims of alleged grand jury defects, i.e. improper amendment of indictment and failure to allow defendant's testimony, were not cognizable on federal habeas review.

Dismissal of petition recommended.

West Headnotes

**[1] Habeas Corpus 197 ☞ 423**

197 Habeas Corpus

197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)6 State's Reliance on or Waiver of Procedural Bar or Want of Exhaustion
197k423 k. State Court Consideration of Merits. Most Cited Cases
State trial court's alleged constitutional violation forming predicate for federal habeas petitioner's ineffective assistance of counsel claim would be treated as exhausted even though not objected to in trial court, since trial court had addressed merits of constitutional claim. 28

U.S.C.A. §2254(b)(1)(A).

**[2] Habeas Corpus 197 ☞ 409**

197 Habeas Corpus

197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)5 Availability of Remedy Despite Procedural Default or Want of Exhaustion
197k409 k. Prejudice. Most Cited Cases
Where federal habeas petitioner failed to show cause for his procedural defaults in state court, it was unnecessary for federal district court to consider issue of prejudice before dismissing claims as procedurally barred. 28 U.S.C.A. §2254.

**[3] Criminal Law 110 ☞ 264**

110 Criminal Law

110XIV Arraignment
110k264 k. Requisites and Sufficiency of Arraignment. Most Cited Cases
Alleged 72-hour delay between arrest and arraignment was not presumptively prejudicial for purposes of right to speedy trial. U.S.C.A. Const.Amend. 6.

**[4] Habeas Corpus 197 ☞ 474**

197 Habeas Corpus

197II Grounds for Relief; Illegality of Restraint
197II(B) Particular Defects and Authority for Detention in General
197k474 k. Indictment, Information, Affidavit, or Complaint. Most Cited Cases
Assuming that state indictment had been improperly amended and that amendment violated defendant's right to be tried only on charges presented to grand jury, claim was not cognizable on federal habeas review since right to have charges presented to grand jury was state-created, not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

federal right. 28 U.S.C.A. §2254.

**[5] Habeas Corpus 197 &#9755;&#8212; 473**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
      197II(B) Particular Defects and Authority for Detention in General
        197k473 k. Grand Jury. Most Cited Cases
    Claim of defect in state grand jury process, i.e. that due process was violated when defendant was not given opportunity to testify before grand jury, was not cognizable on federal habeas review. 28 U.S.C.A. §2254.

Esau Staley III, Green Haven Correctional Facility, Drawer B, Stormville, NY, pro se.

REPORT AND RECOMMENDATION

FREEMAN, Magistrate J.

*INTRODUCTION*

**\*1** Petitioner Esau Staley III ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court, New York County. Upon a jury verdict, Petitioner was found guilty of one count of Attempted Rape in the First Degree and one count of Sexual Abuse in the First Degree. Petitioner was sentenced to a term of 15 years on the rape charge and seven years on the sexual abuse count. He is currently incarcerated at Green Haven Correctional Facility.

Petitioner challenges his conviction and asserts that (1) he was denied effective assistance of counsel; (2) his arraignment was improperly delayed; (3) the indictment against him was impermissibly amended; and (4) his due process rights were violated because he was not given an opportunity to testify before the grand jury. (*See* Pet. at § 12.) FN1 Respondent argues that the petition should be dismissed on the grounds that Petitioner's claims are unexhausted, procedurally barred, or without merit. (*See* Resp. Mem. at 10–17.) FN2 For the reasons stated below, I recommend that the petition be dismissed.

    FN1. "Pet." refers to Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254,

dated April 25, 2001, and filed on July 9, 2001.

    FN2. "Resp. Mem." refers to Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated April 17, 2002.

I. *FACTUAL BACKGROUND*

    _____ According to the testimony at trial, on the morning of October 23, 1995, Bah Fatoumata, ("Fatoumata") a 36–year old woman, arrived at work at the Bebe Hair Braiding Salon at 145 Eighth Avenue in Harlem. (Tr. at 100.) FN3 She was the first to arrive, so she unlocked the front door. (*Id.*) The salon's glass door was covered by a large poster, thereby concealing the salon's interior from the street. (*Id.* at 104, 108.)

    FN3. "Tr." refers to the transcript of Petitioner's trial, which took place from May 20, 1996 through May 23, 1996.

Shortly thereafter, Petitioner opened the front door of the salon and began talking to Fatoumata. (*Id.* at 101.) Fatoumata could not understand what he was saying, but Petitioner gestured in such a way as to indicate that he wanted his hair braided. (*Id.*) Fatoumata pointed to her watch to indicate that he should come back later. (*Id.* at 101, 115.) Petitioner then left the salon. (*Id.*)

Approximately 20 minutes later, Petitioner returned to the salon and began speaking again to Fatoumata. (*Id.*) Fatoumata testified that she was frightened by Petitioner, so she told him that she did not speak English and again pointed to her watch to indicate that he should come back later. (*Id.* at 101–02, 117.) Petitioner, however, closed the door and walked towards Fatoumata. (*Id.* at 102.) Petitioner then grabbed Fatoumata and pulled her onto the floor. (*Id.*) Fatoumata and Petitioner began to struggle as Petitioner attempted to rape Fatoumata. (*Id.* at 102–04, 120–130.) Petitioner grabbed a pair of scissors that were nearby, and attempted to cut Fatoumata's pants, and to stab her in the neck. (*Id.* at 102, 124.) After a struggle over the scissors, Petitioner cut Fatoumata's face near her right eye. (*Id.* at 104.) During the struggle, Fatoumata managed to rip one of the posters off the glass door, hoping that someone on the street would then see and help her. (*Id.* at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

104–05, 235.)

**\*2** At some point between 9:00 a.m. and 10:00 a.m. that morning, Lacine Kamara ("Kamara") was bringing his girlfriend, Mawa Kata ("Kata"), to work at the salon. (*Id.* at 248.) He saw that the poster had been pulled down, and spotted two feet on the ground inside the store with the toes pointing up. (*Id.* at 248–50.) Kamara and Kata approached the salon to investigate. (*Id.* at 250 .) When Kata pushed the door open, Petitioner got up and ran from the store. (*Id.* at 251.) After spotting Fatoumata in the store, covered with blood, Kamara chased after Petitioner. (*Id.* at 251–52.) He was joined by some uniformed police officers and one of them, Police Officer Guillermina Tavares ("Tavares"), apprehended Petitioner. (*Id.* at 252, 260–61.) _____ Kamara returned to the salon immediately after Petitioner was taken into custody. (*Id.* at 252.) Tavares arrived at the salon shortly thereafter. (*Id.* at 261–62.) At that time, she found Fatoumata lying on the ground outside of the store near the scissors, which Tavares collected as evidence. (*Id.* at 262–65.) Fatoumata had a cut by her right eye, and acted as if she were in shock. Since she did not speak English, Fatoumata was unable to tell the police what had happened. (*Id.* at 134, 263.) A bystander told Tavares that Petitioner had tried to rob Fatoumata. (*Id.* at 272.)

Fatoumata was taken by ambulance to Columbia Presbyterian Hospital, where she was met by her husband and brother. (*Id.* at 193–94.) With her family interpreting, Fatoumata told the hospital staff what had happened. (*Id.* at 194–95.) On November 8, 1995, Fatoumata picked Petitioner out of a line-up. (*Id.* at 167.)

## II. *PROCEDURAL BACKGROUND*

### A. *Pre–Trial Proceedings*

_____ On October 24, 1995, the day after his arrest, Petitioner was taken to Criminal Court, Supreme Court, New York County, to be arraigned on a felony complaint. (*See* Respondent's Affidavit in Opposition to Petition for a Writ of Habeas Corpus, sworn to April 1, 2002 ("Resp.Aff."), Ex. G.) The government asserts that Petitioner was, in fact, arraigned on October 24, although his case was then adjourned to October 27, in order to

determine whether the grand jury would return an indictment against him. (*See* Resp. Mem. at 13.) It appears from the record that the government is correct on this point, and it also appears that counsel appeared for Petitioner at the time of his arraignment on October 24. (Resp. Aff., Exs. G and M.) Petitioner, however, disputes that he was arraigned on October 24, contending that he was not actually arraigned until October 27. (*See* Resp. Aff., Exs. F and G.) [FN4]

> **FN4.** Although, at one point in his petition, Petitioner seems to acknowledge that he was arraigned on October 24, 1995 (*see* Petition § 15), this is at odds with what appears to be one of his principal arguments that his arraignment was unlawfully delayed.

On November 1, 1995, Petitioner was indicted on one count each of first degree rape, sexual abuse, and second degree-burglary. On April 10, 1996, the burglary count was dismissed. On May 2, 1996, a *Wade/Huntley* hearing was held before the Honorable Franklin R. Weissberg. [FN5] (*See* Resp. Mem. at 6; Resp. Aff., Exs. A and B.) In that hearing, Petitioner moved to suppress his post-arrest statements and the victim's identification testimony. (*Id.*) On May 16, 1996, Justice Weissberg denied Petitioner's motion to suppress the identification evidence, but granted a portion of Petitioner's motion to suppress his statements. (*Id.*)

> **FN5.** This hearing was held pursuant to: (1) *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), to determine whether Petitioner's pretrial identification was the result of impermissibly suggestive procedures, and (2) *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), to determine whether any statements made by Petitioner should be suppressed.

_____ B. *Jury Selection and Trial*

**\*3** _____ Petitioner was tried by a jury from May 20, 1996, through May 23, 1996. At trial, the prosecution's witnesses were Fatoumata, Kamara, Tavares, and Detective John Savino. Petitioner presented no witnesses

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

and did not testify on his own behalf. On May 23, 1996, the jury found Petitioner guilty of first degree rape and first degree sexual abuse. (Tr. at 391.) On June 10, 1996, Petitioner was sentenced to a term of 15 years on the rape charge and seven years on the sexual abuse count. *See People v. Staley,* 262 A.D.2d 30, 30, 692 N.Y.S.2d 314 (1st Dep't 1999).

C. *Direct Appeal*

Petitioner appealed his conviction to the Appellate Division, First Department. On appeal, he raised the following two claims: (1) the trial court erred in denying Petitioner's request to call Fatoumata to testify at the *Wade* hearing; and (2) that the trial court erred in denying Petitioner's motion for a mistrial based on the interpreter's alleged mis-translation of Fatoumata's testimony. (*See* Resp.App. Ex. B.) On September 30, 1999, the Appellate Division affirmed Petitioner's conviction. *See People v. Staley,* 262 A.D.2d 30, 692 N.Y.S.2d 314 (1st Dep't 1999). In its opinion, the Appellate Division concluded that the "hearing court properly denied defendant's request for the complainant to testify at the *Wade* hearing." 262 A.D.2d at 30, 692 N.Y.S.2d at 314. Additionally, the Appellate Division held that Petitioner "failed to establish that there was any error in the translation of the complainant's testimony." *Id.,* 692 N.Y.S.2d at 315.

Petitioner sought leave to appeal the affirmance of his conviction. (*See* Resp.App. Ex. D.) On June 28, 1999, leave to appeal to the Court of Appeals was denied. *See People v. Staley,* 93 N.Y.2d 979, 695 N.Y.S.2d 66, 716 N.E.2d 1111 (1999).

D. *Petitioner's Motion To Vacate The Conviction*

On June 27, 2000, Petitioner, proceeding *pro se,* filed a motion in the trial court, seeking to vacate the judgment pursuant to New York Criminal Procedure Law §§ 440.10(1)(h). (*See* Resp. Aff. Ex. F.) Petitioner claimed that he was entitled to post-conviction relief on the ground that he was denied effective assistance of trial counsel. Specifically, Petitioner alleged that his trial attorney failed: (1) to challenge an alleged 72–hour delay between the time of Petitioner's arrest and his arraignment; (2) to challenge the legality of the initial accusatory instrument, which, according to Petitioner, contained charges different than those upon which he was indicted; (3) to advise

Petitioner of his right to testify before the grand jury; and (4) to challenge the trial court's ruling concerning alleged errors of translation by the official court interpreter. (*See id.*) The State opposed Petitioner's motion on November 6, 2000. (*See id.,* Ex. G.)

By written opinion dated December 13, 2000, the trial court denied Petitioner's Section 440.10 motion, stating:

Despite some apparent confusion on defendant's part, the record clearly reveals that defendant was arraigned in a timely manner. Defendant also asserts that his trial lawyer was ineffective in failing to challenge the legality of the felony complaint. Regardless of the sufficiency of the felony complaint, however, the return of an indictment by the Grand Jury served to cure any alleged defect. As such, defendant's trial attorney's failure to raise these issues below did not constitute ineffective representation.

*4 In addition, defendant claims [*sic* ] that his attorney was ineffective because he failed to inform him of his right to testify before the Grand Jury is similarly denied. Assuming *arguendo* that this claim is true, a point which the People do not concede, a failure to effectuate a defendant's alleged desire to testify before a Grand Jury does not rise to a deprivation of meaningful representation. (citation omitted).

Finally, the remaining purported error by the trial court, which involved the accuracy of the court interpreter's translation, was already unsuccessfully raised on direct appeal. As the underlying error complained of by the defendant was not error at all, it clearly cannot be used to form the basis for a finding of ineffectiveness of counsel.

(*Id.,* Ex. H.)

On March 20, 2001, the Appellate Division denied Petitioner's motion for leave to appeal the denial of his Section 440.10 motion. (*See id.,* Ex. K.) The instant petition followed.

III. *DISCUSSION*

A. *Exhaustion*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

_____ 1. *Legal Standards*

_____ A federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "opportunity to pass upon and correct alleged violations of ... [a] prisoner's federal rights." *Picard,* 404 U.S. at 275 (citation omitted).

The standards for presenting federal constitutional claims to state courts are not so stringent as to require the recitation of "book and verse on the federal constitution." *Picard,* 404 U.S. at 278 (citation omitted). However, the state courts must be "apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997) (quoting *Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc* )). Petitioners can ensure that state courts are "alerted to the fact that [they] are asserting claims under the United States Constitution," *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995), by presenting their claims in a fashion demonstrating either

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye,* 696 F.2d at 194; *accord Petrucelli v. Coombe,* 735 F.2d 684, 688 (2d Cir.1984). Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is generally fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) (citation omitted).

_____ 2. *Petitioner Has Presented a "Mixed" Petition.*

**\*5** _____ In this case, it appears that Petitioner has presented a "mixed petition," containing both exhausted and unexhausted claims. *See Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001).

Petitioner's first claim alleges ineffective assistance of counsel, a claim Petitioner raised previously in his Section 440.10 motion. As noted above, Petitioner asserted in that motion that his trial counsel was ineffective for failing to challenge certain purported constitutional violations involving, *inter alia,* the timing of Petitioner's arraignment, the appropriateness of the indictment on which he was tried, and the conduct of the grand jury proceedings. When Petitioner's Section 440.10 motion was denied by the trial court, Petitioner sought leave to appeal the denial of that motion to the Appellate Division. Once the Appellate Division denied leave to appeal, Petitioner's ineffective assistance claim was exhausted for purposes of habeas review. *See Klein v. Harris,* 667 F.2d 274 (2d Cir.1981) ("no appeal to the New York Court of Appeals lies from an order denying a motion for leave to appeal to the Appellate Division"), *overruled on other grounds by Daye,* 696 F.2d at 195; *Jackson v. Moscicki,* No. 99 Civ. 2427(JGK), 2000 WL 511642 at \*5 (Apr. 27.2000) (petitioner exhausted his ineffective assistance of counsel claim by raising it in a Section 440.10 motion and seeking leave to appeal to the Appellate Division). Therefore, to the extent the ineffective assistance claim now being asserted by Petitioner is the same as the claim he asserted in his Section 440.10 motion, the exhaustion requirement is satisfied.[FN6]

FN6. As discussed further *infra* (*see* n.9), the petition is not well drafted, and it is possible to construe Petitioner's present ineffective assistance claim as being different from the claim that he raised in the state court. The petition of a *pro se* litigant, however, should be liberally construed, *see Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983), and therefore the Court's first assumption should be that the claim being presented for habeas review is, in fact, the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

claim that Petitioner exhausted in the state court.

[1] In this habeas proceeding, Petitioner is now also directly challenging three of the alleged constitutional violations that formed the predicate of the ineffective assistance claim that he raised in his Section 440.10 motion. Because he never previously raised any of these alleged violations as separate and distinct claims—either in the Section 440.10 motion itself or on direct appeal—these additional claims are arguably all unexhausted. *See* Turner v. Artuz, 262 F.3d 118, 123 (2d Cir.2001) ("A court considering ineffective assistance might never reach the underlying constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying constitutional claims."). Nonetheless, it seems appropriate, under *Turner,* to consider one of these additional claims exhausted, in that the trial court effectively ruled on it, on the merits, in the context of the court's decision rejecting the ineffective assistance claim. *See id.* (expressly declining to address the situation where the state court clearly analyzed the merits of an underlying claim). More specifically, and as quoted above, the trial court held that Petitioner's counsel had not been ineffective for failing to object to an unconstitutional delay in Petitioner's arraignment, because, as a factual matter, *there was no* delay in arraignment. (*See supra* at 6.) Because the trial court actually addressed the purported delay, that particular underlying claim should be viewed as exhausted. The other two underlying claims, however, should be considered unexhausted, as they were never presented as separate claims—or separately analyzed—by the state court.

2. *Petitioner's Unexhausted Claims Should Be Deemed Exhausted and Procedurally Barred.*

**\*6** When ruling on a mixed petition, the Court may choose (1) to reach the merits of all claims in the petition—including the unexhausted claims—as long as the Court *denies* the claims on the merits, *see* 28 U.S.C. § 2254(b)(2)(2000); (2) to stay the petition and allow the petitioner a "reasonable" period of time to return to state court, exhaust the claims, and return to federal court, Zarvela, 254 F.3d at 381; (3) to dismiss the petition without prejudice to the petitioner's ability to re-file after

exhausting the unexhausted claims, *id.* at 380; or (4) to "deem" the claims exhausted, provided that the unexhausted claims no longer can be raised in state court, *see* Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); Bossett v. Walker, 41 F.3d 825, 828–29 (2d Cir.1994) (citations omitted); Grey v. Hoke, 933 F.2d 117, 120–21 (2d Cir.1991) (citations omitted).

In this instance, Petitioner could have raised his unexhausted claims in his one opportunity for direct appeal,[FN7] but did not do so. For this reason, he is now foreclosed from raising the claims collaterally in another Section 440.10 motion. *See* N.Y.Crim. Proc. § 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal). Petitioner also cannot seek state review of his unexhausted claims pursuant to either a writ of error *coram nobis, see* People v. Gordon, 183 A.D.2d 915, 584 N.Y.S.2d 318 (2d Dep't 1992) (*coram nobis* relief only available for claims of ineffective assistance of appellate counsel) (citation omitted), or a state writ of habeas corpus, *see* People ex rel. Allah v. Leonardo, 170 A.D.2d 730, 565 N.Y.S.2d 331 (3d Dep't 1991) (state writ of habeas corpus unavailable where claim could have been raised on direct appeal) (citations omitted). Because Petitioner now has no procedural recourse to New York's courts to advance his unexhausted claims, those claims are appropriately deemed exhausted. *See* Bossett, 41 F.3d at 828–29; Grey, 933 F.2d at 120–21.

> FN7. *See* N.Y. Court Rules § 500.10(a) (permitting only one application for leave to appeal); *see also* N.Y.Crim. Proc. §§ 450.10 and 450.15 (allowing a petitioner only one chance to appeal).

When, however, a claim is deemed exhausted because of a procedural bar, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." Gray v. Netherland, 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *see also* Carmona v. United States Bureau of Prisons, 243 F.3d 629, 633 (2d Cir.2001). The only ways that Petitioner can overcome the procedural bar to review in this Court are to show (1) both

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

"cause" for failing properly to raise the claim in state court and "prejudice" resulting from the alleged constitutional error, or (2) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice." *See* Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In this case, Petitioner cannot satisfy either standard, with respect to either of his unexhausted claims.

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz,* No. 99 Civ. 12015(AGS) (JCF), 2001 WL 246437, at *8 (S.D.N.Y. Mar. 7, 2001). Cause for a default exists where a petitioner can show that (1) "the factual or legal basis for a claim was not reasonably available to counsel," (2) " 'some interference by state officials' made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citation omitted). "Prejudice" requires Petitioner to demonstrate that the alleged constitutional error worked to Petitioner's *"actual* and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphasis in original).

**\*7** [2] Here, Petitioner cannot demonstrate any "cause" for his procedural defaults. He has not shown, and cannot show, that the factual or legal bases for his defaulted claims were not reasonably available at the time of his direct appeal. Nor has Petitioner alleged, and there is no evidence suggesting, that his failure to raise the claims on direct appeal resulted from either interference by state officials or ineffective assistance of appellate counsel. As Petitioner cannot show cause for his procedural defaults, this Court need not reach the question of whether Petitioner can show prejudice. *See Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

The Court may also excuse a procedural default where the petitioner "can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (citing *Coleman,* 501 U.S. at 750). This exception, however, is quite narrow; it is "concerned with actual as compared to legal innocence." *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Thus, to meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496. "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In this case, Petitioner has offered no evidence, scientific or otherwise, showing his actual innocence. Therefore, Petitioner has not made an adequate showing to satisfy the fundamental miscarriage of justice exception. Accordingly, Petitioner's unexhausted claims should be dismissed as procedurally barred.

Moreover, as discussed further below (*see infra* at 19–22), Petitioner's unexhausted claims should be dismissed in any event, because they do not actually raise federal constitutional issues, and thus they are not cognizable on habeas review.

B. *Standard of Review*

Where the state court has reached the merits of a claim, this Court must apply a deferential standard in reviewing that claim in a habeas proceeding. Specifically, this Court must adhere to the standard of review set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the relevant portion of which provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**\*8** 28 U.S.C. § 2254(d). In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court clarified the meaning of the "contrary to" and "unreasonable application" clauses of AEDPA Section 2254(d)(1). A state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent, *id.* at 405, or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result, *id.* at 406. An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to the particular facts before it. *Id.* at 413. The Supreme Court has explained that "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. Thus, the writ may not issue simply because the state court decision is erroneous or incorrect; rather, the application must also be unreasonable. *Id.* at 411.

AEDPA Section 2254(d), however, only applies to the review of claims that have been "adjudicated on the merits" by the state court. 28 U.S.C. § 2254(d). The Second Circuit has held that the phrase "adjudicated on the merits" means "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001). Where the state court has rejected a claim on procedural grounds or has otherwise not reached the merits of the claim, this Court must review that claim *de novo. See Washington v.. Schriver,* 255 F.3d 45, 55 (2d Cir.2001).

_____ C. *Petitioner's Claims*

_____ 1. *Ineffective Assistance of Counsel*

_____ To the extent the state court adjudicated Petitioner's ineffective assistance of counsel claim on the merits on Petitioner's Section 440.10 motion, this Court must review that determination under AEDPA's deferential standard of review. Applying that standard of review, the Court should dismiss the claim.

The right to counsel in criminal prosecutions is grounded in the Sixth Amendment. Because the Constitution "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results [,] ... 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v. Washington,* 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Counsel can deprive a criminal defendant of this right "simply by failing to render 'adequate legal assistance.' " *Id.* at 686 (citation omitted).

**\*9** In order for counsel to be deemed constitutionally "ineffective," however, counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* Petitioner can demonstrate such ineffectiveness by showing both that: (1) counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. The Court may reject an ineffective assistance of counsel claim for failure to satisfy either of these prongs of the *Strickland* standard, without reaching the other. *See id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also Morales v. United States,* 199 F.3d 1322 (Table), No. 98–3700, 1999 WL 1015641, at \*1 (2d Cir.1999) (court did not address "whether appellant's trial counsel was unreasonably deficient in his performance because any deficiency in this

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

Here, if Petitioner is resting his ineffective assistance claim on the contention that his trial counsel failed to challenge an alleged 72–hour delay between the time of Petitioner's arrest and arraignment, then Petitioner cannot meet the *Strickland* standard because he is relying on an incorrect factual premise. In ruling on Petitioner's Section 440.10 motion, the trial court found that, despite "apparent confusion" on the part of Petitioner, the record "clearly reveal[ed]" that Petitioner had been arraigned in a "timely manner." (*See* Resp. Mem. Ex. H.) Under AEDPA, this factual finding is "presumed correct" and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Not only has Petitioner failed to present any evidence to rebut this factual finding, but this Court's own review of the documentary record regarding Petitioner's arraignment reveals that Petitioner was initially arraigned on October 24, 1995, the day after he was arrested, and that he was represented by a lawyer at his arraignment. (*See* Resp. Aff., Exs. G and M.) FN8

> FN8. In addition, Petitioner's trial attorney stated during the trial that Petitioner was arraigned on October 24, 1995. (Tr. at 161 .)

As this Court must accept as correct the state court's finding that there was no unreasonable delay in Petitioner's arraignment, it cannot be said that Petitioner's counsel acted unreasonably in failing to challenge the alleged delay. Nor can it be said that the state court's resulting rejection of Petitioner's ineffective assistance of counsel claim was contrary to, or an unreasonable application of federal law, under 28 U.S.C. § 2254(d). Accordingly, to the extent Petitioner is asserting such a claim here, it should be dismissed under AEDPA. FN9

> FN9. From the language of Petitioner's claim, it may be that Petitioner is no longer challenging his counsel's failure to object to the supposed delay in his arraignment, but rather the deprivation of counsel during the alleged "critical" period of the delay. (*See* Pet. § 12(A) (asserting that Petitioner "did not speak with counsel until 72 hours after [his] initial arrest").) If this is the basis of Petitioner's current claim,

then his claim is unexhausted, as it is based on an argument that was never presented to the state courts. Further, for the reasons stated above in connection with Petitioner's other unexhausted claims, the claim is now procedurally barred. In any event, the claim would fail for lack of merit, even under a *de novo* standard of review. Under the Sixth Amendment, the right to counsel "attaches only at the initiation of adversary criminal proceedings ... and before proceedings are initiated, a suspect in a criminal investigation has no constitutional right to the assistance of counsel." *Davis v. United States,* 512 U.S. 452, 456–57, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *see also Ferguson v. Walker,* No. 00 Civ. 1356, 2002 WL 31246533 (S.D.N.Y. Oct.7, 2002) ("the right to counsel ... attaches only upon the initiation of adversary criminal proceedings, such as by formal charge, indictment or arraignment"). In this case, the record shows that adversary criminal proceedings were initiated against Petitioner with the filing of the felony complaint on October 24, 1995, the same day that counsel was appointed for Petitioner. (*See* Resp. Aff., Exs. G and M.) Thus, Petitioner was not, in fact, deprived of counsel.

_____ 2. *Speedy Arraignment*

Petitioner also claims that the alleged 72–hour delay before his arraignment was itself a constitutional violation. Liberally construed, this claim could be read to suggest that the alleged delay implicated defendant's Sixth Amendment right to a speedy trial. *See Holmes v. Bartlett,* 810 F.Supp.2d 550, 561–62 (S.D.N.Y.1993) (analyzing claim by habeas petitioner of delay between arrest and arraignment as an alleged violation of the Sixth Amendment right to a speedy trial). As already discussed, however, the trial court found, and the record reflects, that Petitioner was actually arraigned within one day of his arrest. Under the circumstances, Petitioner can have no basis for arguing any constitutional violation.

*10 [3] Indeed, even if Petitioner were correct that 72 hours elapsed before he was arraigned, he would still have no grounds to complain that this violated a constitutional right. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

L.Ed.2d 101 (1972), the Supreme Court held that the following four factors must be considered in determining whether a defendant' Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether or not the defendant asserted his right; and (4) prejudice to the defendant. Id. at 530–33. The Court noted that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. at 530. In this case, Petitioner bases his claim solely on the length of the alleged 72–hour period between his arrest and arraignment. This delay is not "presumptively prejudicial." See United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir.1992) (suggesting that any delay over eight months is presumptively prejudicial, while a delay of less than five months is not); United States v. Ballam, 70 F.3d 1280, 1995 WL 710498 at *2 (9th Cir.1995) (text in Westlaw) (stating that "[t]he judicial consensus of how much time must go by before a delay is presumed prejudicial ranges from eight months ... to one year"); United States v. Pereira, 463 F.Supp. 481, 488 (E.D.N.Y.1978) (holding that a delay of 20 days was not presumptively prejudicial).

Moreover, in Williams v. Ward, 845 F.2d 374 (2d Cir.1988), the Second Circuit held that delays of 72 hours between arrest and arraignment in the New York City criminal justice system do not violate the right under the Fourth and Fourteenth Amendments to obtain a probable cause determination within a "brief" period of time after arrest. See id. (holding that "the procedural benefits provided to arrestees under New York City's arraignment system justify constitutionally arrest-to-arraignment periods of seventy-two hours in length"). Thus, if Petitioner's claim is based on the Fourth Amendment, it would fail under Williams.

For these reasons, Petitioner has not shown that the state court's rejection of this claim was contrary to, or involved an unreasonable application of federal law. See 28 U.S.C. § 2254(d). Accordingly, this claim should be dismissed.

_____ 3. Petitioner's Remaining Claims

Petitioner's last two claims relate to the conduct of the state grand jury proceedings. Specifically, Petitioner claims that (a) the original indictment against him was impermissibly amended, and (b) he was unfairly denied the opportunity to testify before the grand jury. (Pet. §§ 12(C) and D).) As discussed above (see supra at 10–13), these claims are unexhausted and procedurally barred. Further, they cannot be reviewed in this Court, as they do not implicate federal constitutional rights.

_____ a. Amendment of the Indictment

**11 [4] According to Petitioner, the assistant district attorney went to the grand jury with robbery charges on October 27, 1995, but then determined that robbery charges were not warranted. (See Pet. §§ 12(B) and C).) On November 1, 1995, Petitioner was indicted on different charges, i.e. on one count each of first degree rape, sexual abuse, and second degree-burglary. (See Pet. § 12(C).) Based on these allegations, Petitioner contends that the indictment against him was improperly amended. (Id.) Respondent, however, asserts that Petitioner has misunderstood the relevant proceedings. (See Resp. Mem. at 15.) Respondent contends that, in claiming that the indictment "broaden [ed] and altered" the initial charges against him (Pet. § 12(C)), Petitioner must be referring to the fact that the felony complaint against him included a different charge (i.e. robbery) than the charges ultimately contained in the indictment (i.e. first degree rape, sexual abuse, and second-degree burglary). (See Resp. Mem. at 15.) Respondent asserts that the prosecution properly submitted to the grand jury the charges on which Petitioner was eventually indicted, and that the indictment itself was never amended. (Id.)

It appears that, in deciding Petitioner's Section 440.10 motion, the state court accepted Respondent's version of events. (See Resp. Mem. Ex. H (finding that "return of an indictment by the Grand Jury served to cure any alleged defect" in the original felony complaint).) Any such factual finding by the state court is presumed correct under AEDPA. 28 U.S.C. § 2254(e)(1). Yet regardless of whether the state court entirely resolved the relevant factual issue, Petitioner does not relate his claim to a federal constitutional violation (see Pet. § 12(C) (contending only that the indictment was amended), and therefore his claim is not cognizable on habeas review.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)

(Cite as: 2003 WL 470568 (S.D.N.Y.))

It may be that Petitioner is attempting to argue, as he did in his Section 440.10 motion, that the purported amendment to his indictment violated his right "to be tried only on charges brought by the Grand Jury indictment." (See Resp. Aff., Ex. F, at 11–12 .) Yet if this is Petitioner's argument on habeas review, his claim still fails. The right to have state charges presented to a grand jury is a state-created right, not a federal right. Rodriguez v. Senkowski, No. 92 Civ. 5484, 1995 WL 347024, at *2 (E.D.N.Y. May 31, 1995) (rejecting challenge to a state trial court's amendment of an indictment). Accordingly, "any alleged impropriety in the amendment of the indictment is predicated on state law, and is therefore beyond this Court's review." Id.; see also Medina v. Herbert, No. 98 Civ. 1871, 1998 WL 799173 at *5 (S.D.N.Y. Nov. 16, 1998) ("In general, challenges to the sufficiency of a state indictment are not issues cognizable on habeas review.").

b. *Deprivation of Right To Testify Before the Grand Jury*

*12 [5] Petitioner finally claims that his due process rights were violated because he was never given the opportunity to testify before the grand jury. (Pet. § 12(D).) Once again, however, any alleged defects in the state grand jury process are not cognizable on habeas review. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir.1989) (holding that claims concerning state grand jury proceedings are foreclosed from habeas review because "any error in the grand jury proceeding was rendered harmless beyond reasonable doubt by the petit jury's guilty verdict"); Afflic v. New York, No. 01 Civ. 6152, 2002 WL 500373 (S.D.N.Y. Apr.3, 2002) ("Petitioner's claim that he was not advised of his right to appear before the Grand Jury does not present an issue of constitutional dimension, but merely one of state law"); McMoore v. Miller, No. 98 Civ.1915, 2002 WL 975305 at *9 (S.D.N.Y. Apr.19, 2002) (dismissing habeas claim based on petitioner's failure to testify before the grand jury because "[petitioner's] right to testify before a grand jury is based solely on *state* law, the wrongful denial of that right does not entitle him to a *federal* writ of habeas corpus") (emphasis in original).

As Petitioner's claim does not implicate a federal constitutional right, it cannot be reviewed in this Court, and should be dismissed.

*CONCLUSION*

For the foregoing reasons, I recommend that Petitioner's petition for a writ of habeas corpus be dismissed in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States Courthouse, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir.1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58 (2d Cir.1988); McCarthy v. Manson, 714 F.2d 234, 237–38 (2d Cir.1983).

S.D.N.Y.,2003.

Staley v. Greiner
Not Reported in F.Supp.2d, 2003 WL 470568 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Miguel DEVISON, Petitioner,
v.
Raymond J. CUNNINGHAM, Respondent.
No. 09 Civ. 1031(DAB)(JLC).

Oct. 15, 2010.
*REPORT AND RECOMMENDATION*

JAMES L. COTT, United States Magistrate Judge.

**\*1 To the Honorable Deborah A. Batts, U.S.D.J.:**

*Pro se* petitioner Miguel Devison ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence in the New York State Supreme Court, New York County, on June 24, 2004. (Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody dated December 26, 2008 ("Petition" or "Pet.")) (Doc. 1)). A jury convicted Petitioner of Conspiracy in the Second Degree under N.Y. Penal Law § 105.15 (McKinney 2010) and Criminal Sale of a Controlled Substance in the Third Degree under N.Y. Penal Law § 220.39. (*Id.* at 1.) The trial court sentenced Petitioner to separate consecutive terms of eight to twenty-four, and two to six years, respectively. (*Id.*) Petitioner is currently incarcerated at the Woodbourne Correctional Facility in Woodbourne, New York. (*Id.*) For the reasons set forth below, I recommend that the Petition be denied in its entirety.

### I. BACKGROUND

**A. The Crime**

The trial giving rise to Petitioner's conviction concerned a drug-selling conspiracy that operated primarily out of two adjacent buildings: 550 West 146th Street and 552 West 146th Street in Manhattan. The conspiracy consisted of two different operations. Isidro "Montro" Pena headed one operation out of 552 West

146th Street. (Trial Transcript ("Trial Tr.") at 804–06.) [FN1] Miguel "Bolo" Hernandez headed the other operation out of both 550 and 552 West 146th Street. (*Id.* at 829, 851–55.)

> FN1. The voir dire, trial, and sentencing transcripts have been filed with the Clerk of the Court. (*See* Docket Entries Nos. 9–14.)

Although each organization had its own independent structure, the two businesses worked together in various ways. (*Id.* at 2114–15.) For instance, each organization's dealers worked together during the night and agreed on a method to divide customers between the organizations. (*Id.* at 2114–15.) Workers occasionally transferred from one organization to the other. (*Id.* at 2117.) Moreover, "pitchers," those who sold the cocaine from each of the organizations directly to consumers, often communicated with one another. (*Id.* at 125, 224.)

Petitioner initially worked under Hernandez. (*Id.* at 2116, 2136–37.) During this period, he worked at 550 West 146th Street and gave instructions to other workers by radio. (*Id.* at 2133.) In January 2001, however, Petitioner began working for Pena, (*Id.* at 2137.) He began as a lookout but later "became [Pena's] right hand." (*Id.* at 2138.) On at least one occasion, Petitioner and another worker were left in charge of Pena's operation while Pena was out of town. (*Id.* at 1717–19.)

The police began investigating the drug-selling activity at 550 and 552 West 146th Street in September 2002. (*Id.* at 1527–29.) From observation posts, police detectives watched men with radios direct customers to lines outside the two buildings at 550 and 552 West 146th Street. Customers would give money to the pitchers, and the pitchers would give the customers clear plastic bags or tinfoil packets of cocaine in return. (*Id.* at 23.)

**\*2** Police observed Petitioner direct other members of the conspiracy on several occasions. On November 5, 2002, a police detective watched Petitioner, who was standing on the corner of 146th Street and Broadway, speak into a radio when a police car approached. (*Id.* at

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

229.) Very shortly thereafter, the doors of both buildings shut closed, and drug buyers fled. (*Id.* at 230.) Police observed similar sequences of events involving Petitioner "a couple of times." (*Id.* at 229.)

On April 4, 2003, a detective saw Petitioner on the street with a radio, and the detective intercepted several of Petitioner's broadcasts. (*Id.* at 1908–13.) At one point, Petitioner transmitted, "Pitcher, pitcher, open the door, open the door" and a man in a ski mask opened the door of 552 West 146th Street. (*Id.* at 1913.) Subsequently, an undercover police officer went to the door of that building and purchased a tinfoil packet of crack cocaine. (*Id.* at 980–81.) The detective intercepting Petitioner's transmissions shortly thereafter heard Petitioner shout, "Azul, azul, azul," Spanish for "blue," upon which the pitcher at 552 West 146th Street shut the door to the building. (*Id.* at 1914–15.) Petitioner went into a nearby store, and police officers arrested him when he emerged. (*Id.* at 1915–19.)

Five days later, on April 9, 2003, the Police raided the drug-selling operations on 146th Street. (*Id.* at 61–62.) Police executed 17 search warrants and arrested 31 people related to the organizations that sold drugs from 550 and 552 West 146th Street. (*Id.* at 62–63.)

**B. Procedural History**

**1. Trial and Sentencing**

Petitioner was tried with three codefendants: Effrain Alfonzo, Jose Luis Carlos, and Guillermo Acevedo. (Voir Dire Transcript ("Voir Dire Tr.") at 1.)

On May 25, 2004, a jury in New York State Supreme Court, New York County, convicted Petitioner of criminal sale of a controlled substance in the third degree. (*Id.* at 3491.) The following day, May 26, the same jury acquitted Petitioner of conspiracy in the first degree but convicted him of conspiracy in the second degree. (*Id.* at 3507.) The court on June 24, 2004 sentenced Petitioner to consecutive terms of eight to twenty-four years and two to six years, respectively. (Sentence Transcript ("Sentence Tr.") at 24.)

**2. Direct Appeal**

On appeal to the New York Supreme Court, Appellate Division, First Department (the "Appellate Division"), Petitioner's assigned counsel argued that the trial court erred by (1) denying the defense's challenges for cause as to two prospective jurors—one who could not promise to base her verdict solely on the evidence and another who suggested a bias in favor of police testimony (Declaration of Thomas B. Litsky in Opposition to Petition for a Writ of Habeas Corpus dated October 30, 2009 ("Litsky Decl.") Ex. A, at 26–36) (Doc. 15); (2) refusing to question a juror who, during trial, initiated and had a conversation with a police witness outside the courtroom (*id.* at 37–46); (3) refusing to question individual jurors to determine whether they were tainted by one juror's disclosure that she had been robbed in the course of the trial or by another juror's possible disclosures of her opinion regarding Petitioner's guilt (*id.* at 47–59); (4) refusing to discharge a juror whose aunt lived in the building that Petitioner and his defendant co-conspirators allegedly controlled and in which they allegedly based their drug-selling operation (*id.* at 60–67); and (5) denying a requested multiple conspiracies charge (*id.* at 68–84).

**\*3** The Appellate Division reached the merits of four of Petitioner's claims that were preserved for review. It first concluded that the trial court properly denied Petitioner's challenges for cause to two prospective jurors, reasoning that neither prospective juror "evinced bias or a state of mind likely to preclude him or her from rendering an impartial verdict based on the evidence adduced at trial." *People v. Devison,* 38 A.D.3d 203, 204, 831 N.Y.S.2d 64, 65 (1st Dep't 2007). Second, the Appellate Division concluded that the questioning of each individual juror, after a juror told the rest of the jury that she had been robbed during the trial, was not necessary because the incident was not relevant to the evaluation of the evidence, and the trial judge instructed the jury that they could not decide the case based on anything that happened outside of the courtroom. *Id.* at 205, 831 N.Y.S.2d at 66. Third, the Appellate Division concluded that the trial court properly declined to question individual jurors after a juror, whom the trial court discharged, had been crying hysterically because she had come to an irrevocable opinion about the case prior to its completion. *Id.* The Appellate Division reasoned that questioning was not necessary because the discharged juror told the court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

that she did not tell the other jurors about her opinion and the other jurors did not hear her conversation with the court officer about this issue. *Id.* Finally, the Appellate Division concluded that the trial court properly declined to replace a juror who, after seeing pictures of one of the buildings, realized that her aunt lived in the building. *Id.* 831 N.Y.S.2d at 65. It reasoned that she did not have any implied bias based on this fact alone as she had not been to her aunt's home in months, promised not to go there during the trial, and stated unequivocally that she had formed no opinion about the case based on her aunt's connection to the building. *Id.,* 831 N.Y.S.2d at 66.

As to Petitioner's other claims, the Appellate Division concluded that they were both unpreserved and without merit. It first found that the trial court properly declined to question the sworn juror who talked to a key prosecution witness because they spoke of trivial matters and no other jurors were present during the conversation. *Id.* at 204, 831 N.Y.S.2d at 65–66. Next, it declined to review Petitioner's contention that the juror who had an aunt living in one of the buildings at issue in the case should have been replaced based on her and her aunt's "consanguinity," but went on to state that the contention was without merit as the aunt was not someone who had been injured by the crime charged. *Id.* at 205, 831 N.Y.S.2d at 66. Next, the Appellate Division concluded that the trial court properly declined to give the jury a multiple conspiracies charge, even though Petitioner argued that the drug-selling operations in the two adjoining buildings could be considered separate conspiracies. *Id.* The Appellate Division based this decision on the reasons it stated in its decision regarding codefendant Alfonzo's appeal,[FN2] and further concluded that Petitioner's other arguments on this issue were without merit. *Id.* at 205–6, 831 N.Y.S.2d 64, 831 N.Y.S.2d 66. Therefore, the Appellate Division affirmed Petitioner's convictions on March 1, 2007. *Devison,* 38 A.D.3d at 204, 831 N.Y.S.2d at 65.

FN2. In *People v. Alfonso,* 35 A.D.3d 269, 269, 827 N.Y.S.2d 39, 39–40 (1st Dep't 2006), the Appellate Division concluded that the evidence, viewed most favorably to the defendants, could not support a multiple conspiracies charge as the drug operations in the adjoining buildings "were

so closely linked that they could only be viewed as a single conspiracy."

**\*4** Petitioner filed for leave to appeal to the New York Court of Appeals, which was denied on June 7, 2007. *People v. Devison,* 9 N.Y.3d 842, 840 N.Y.S.2d 769, 872 N.E.2d 882 (2007).

**3. Collateral Attack**

On November 8, 2007, Petitioner filed a Motion to Vacate the Judgment pursuant to N.Y. C.P.L. § 440.10 with a supporting affidavit. (Litsky Decl. Ex. H, at 34–74 (Doc. 15).) Petitioner contended his right to a fair trial and an impartial jury had been violated because the trial court failed to (1) conduct an inquiry of a sworn juror who spoke with a lead police witness during trial; or (2) dismiss a juror whose aunt lived in the building where the conspiracy allegedly took place. (*Id.* at 38, 840 N.Y.S.2d 769, 872 N.E.2d 882.) Petitioner also contended that he was denied effective assistance of counsel when his defense counsel failed to (a) request that the trial court conduct an inquiry of a sworn juror who spoke with a lead police witness, (b) move the trial court to remove a sworn juror whose aunt lived in the building where the alleged conspiracy occurred, and (c) protect and preserve the defendant's right to appeal by making proper motions and timely objections. (*Id.*)

The trial court denied Petitioner's motion on July 29, 2008 based on "the reasons set forth in the People's response." (*Id.* at 32, 840 N.Y.S.2d 769, 872 N.E.2d 882.) Petitioner then filed an Application for a Certificate Granting Leave to Appeal the New York Supreme Court's decision denying his Motion to Vacate the Judgment on September 6, 2008. (*Id.* at 1–2, 840 N.Y.S.2d 769, 872 N.E.2d 882.) On November 5, 2008, Petitioner's Application for a Certificate Granting Leave to Appeal was denied. (Litsky Decl. Ex. J. (Doc. 15).)

**4. Habeas Petition**

Having properly exhausted his state law remedies with respect to each of his claims,[FN3] Petitioner timely filed his Petition on December 26, 2008. (Pet. at 1 (Doc. 1).)[FN4] In his Petition, Petitioner reiterates the same claims he presented to the Appellate Division and, in his § 440.10 motion, the trial court—that his constitutional rights were

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

violated when (1) the trial court denied the defense's challenges for cause where one prospective juror could not promise to base her verdict solely on the evidence and another juror indicated a bias in favor of police testimony; (2) the trial court refused to question a juror who, during trial, spoke with a "crucial police witness" outside the courtroom; (3) the trial court refused to conduct individual inquiries of the jurors to determine whether they were tainted by one juror's disclosure that she had been robbed in the course of the trial or by another juror's possible disclosure regarding Petitioner's guilt; (4) the trial court refused to discharge a juror whose aunt lived in a building in which the Petitioner and his codefendants based their drug-selling operation; (5) the trial court denied a requested multiple conspiracies charge; and (6) Petitioner's trial counsel, due to his ineffectiveness, failed to make timely objections and motions for the trial court to (a) conduct an inquiry of a sworn juror who spoke with the lead prosecution witness during trial, and (b) remove a sworn juror who was related within the sixth degree to a person that lived in the building where the alleged conspiracy had occurred, (_Id._ at 9, 840 N.Y.S.2d 769, 872 N.E.2d 882.)

> FN3. It is undisputed that Petitioner has properly exhausted all of his claims by fairly presenting the federal constitutional nature of the claims to each available level of the state courts. (_See_ Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Resp.'s Opp'n") at 26 (Doc. 16)); _see generally Dave v. Attorney Gen.,_ 696 F.2d 186, 190–94 (2d Cir.1982).

> FN4. Although the habeas corpus petition was filed with the Court on February 5, 2009, because Petitioner is _pro se,_ he benefits from the "prison mailbox rule," which provides that a petition is deemed filed on the day it is handed to the prison officials for mailing, _Houston v. Lack,_ 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Petitioner signed and dated the Petition on December 26, 2008; I will thus assume for purposes of this Report and Recommendation that this is the date that Petitioner handed his petition to the prison officials for mailing.

## II. APPLICABLE LEGAL PRINCIPLES

### A. AEDPA Standard of Review

**\*5** When a state court has adjudicated a federal constitutional claim on the merits,[FN5] "[u]nder the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' " _Knowles v. Mirzayance,_ ––– U.S. ––––, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009) (quoting 28 U.S.C. § 2254(d)(1)). Accordingly, the only source of clearly established Federal law that a federal court may consider in reviewing a state prisoner's habeas application are the decisions of the Supreme Court. _Williams v. Taylor,_ 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Moreover, a federal court reviewing a habeas application need only consider "the holdings, as opposed to the dicta, of th[e] Supreme Court's decisions as of the time of the relevant state-court decision." _Id._

> FN5. A claim is considered to have been "adjudicated on the merits" when a court has rendered "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim adjudicated, rather than on a procedural, or other, ground." _Sellan v. Kuhlman,_ 261 F.3d 303, 311 (2d Cir.2001).

A state court decision is "contrary to" clearly established law under the first clause of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." _Williams,_ 529 U.S. at 412–13.

A state court decision involves an "unreasonable application" of clearly established law under the second clause of § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." _Williams,_ 529 U.S. at 413. Additionally, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply.' " *Serrano v. Fischer,* 412 F.3d 292, 296–97 (2d Cir.2005) (citation omitted).

The Supreme Court "ha[s] explained that 'an unreasonable application of federal law is different from an incorrect application of federal law.' " *Renrico v. Lett,* ––– U.S. ––––, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (quoting *Williams,* 529 U.S. at 410). " '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (quoting *Williams,* 529 U.S. at 411). Instead, "that application must be 'objectively unreasonable.' " *Id.* (quoting *Williams,* 529 U.S at 409). Thus, the " 'petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.' " *Besser v. Walsh,* 601 F.3d 163, 178 (2d Cir.2010) (quoting *Cotto v. Herbert,* 331 F.3d 217, 248 (2d Cir.2003)).

**B. Procedural Bar**

*\*6* "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that Ms independent of the federal question and adequate to support the judgment.' " *Cone v. Bell,* ––– U.S. –––– 129 S.Ct. 1769, 1780 (2009) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). The doctrine is designed to " 'ensur[e] that the States' interest in correcting their own mistakes is respected in all federal habeas cases.' " *Cone,* 129 S.Ct. at 1780 (quoting *Coleman,* 501 U.S. at 732). The Supreme Court thus "ha[s] held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Id.* (citing *Coleman,* 501 U.S. at 732).

**1. Independence**

Generally, in order to determine whether the state law

ground upon which a petitioner relies is independent, reliance on the state procedural rule must be "clear from the face of the opinion." *Coleman,* 501 U.S. at 735; *see also Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997).

If the state court decision states that a claim is procedurally barred, but reaches the merits in the alternative, habeas review is inappropriate. *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005); *Glenn,* 98 F.3d at 724. However, if the state court decision contains ambiguous language such as "the claims are either unpreserved or without merit," the claims are subject to federal court habeas review. *Deberry v. Portundo,* 403 F.3d 57, 64 (2d Cir.2005) (emphasis added) (citing *Fama,* 235 F.3d at 811).

**2. Adequacy**

To be deemed adequate, the state procedural rule on which the court's decision was based must be a rule that is "firmly established and regularly followed" by the state in question, *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), and that it has not been "misapplied in [the petitioner's] case in particular." *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (internal quotation marks and citations omitted); *see also Clark v. Perez,* 510 F.3d 382, 391 (2d Cir.2008); *Garvey v. Duncan,* 485 F.3d 709, 714 (2d Cir.2007). Moreover, even if a state rule is discretionary, it can serve as an adequate and independent state law ground. *Beard v. Kindler,* –––U.S. ––––– 130 S.Ct. 612, 618 (2009).

In certain limited circumstances, however, even state rules that are firmly established and regularly followed will not foreclose review of a federal claim where the particular application of the rule is "exorbitant." *Lee,* 534 U.S. at 376. The Supreme Court in Lee determined that the application of a firmly established and regularly followed state procedural rule would be exorbitant based on three considerations. *Id.* at 381. The Second Circuit adopted and summarized these considerations as a three-part test in *Cotto v. Herbert,* 331 F.3d at 240. These three considerations are not dispositive for determining adequacy, but serve as guidelines in evaluating "the state interest in a procedural rule against the circumstances of a particular case." *Garvey,* 485 F.3d at 714 (citing *Lee,*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

534 U.S. at 381–85). The three factors are

*7 (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto, 331 F.3d at 240.

**3. Exceptions—Cause, Prejudice, and Miscarriage of Justice**

A petitioner who has procedurally defaulted is not entitled to habeas review of his claim, unless he can demonstrate either (1) cause for the default and actual prejudice, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 749–50. To show cause, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A petitioner suffers actual prejudice when the outcome of the case would likely have been different but for the alleged constitutional violation. *See, e.g., Reed v. Ross,* 468 U.S. 1, 12, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *Collins v. Artus,* No. 08 Civ.1936(PKC)(JCF), 2009 WL 2633636, at *8 (S.D.N.Y. Aug. 26, 2009). Even absent a showing of cause and prejudice, a petitioner's claim may be entitled to habeas review if he can show that denying review would result in a "fundamental miscarriage of justice;" in such instances, a court may only grant relief in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495–96.

**C. Interpretation of *Pro Se* Submissions**

Finally, I note that Petitioner is proceeding *pro se,* and therefore his submissions " 'must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)); *see also Seidemann v. Bowen,* 584 F.3d 104, 118 (2d. Cir.2009). Additionally, the Court must liberally construe the pleadings and interpret them " 'to raise the strongest arguments that they suggest.' " *Diaz v. United States,* 517 F.3d 608, 613 (2d Cir.2008) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (citation and internal quotation marks omitted).

**III. DISCUSSION**

**A. Denial of For–Cause Challenges Claim**

Petitioner asserts that he was deprived of due process and his right to an impartial jury by the trial court's denial of two of his for-cause challenges to two prospective jurors—Maria Vasquez ("Vasquez") and John Davin ("Davin"). [FN6] (Pet. at 9 (Doc. 1).) Defense counsels ultimately struck both prospective jurors with peremptory challenges. (Voir Dire Tr. at 271, 386.) The Appellate Division concluded that the trial court "properly denied defendant's challenges for cause to two prospective jurors." *Devison,* 38 A.D. at 204, 831 N.Y.S.2d at 64.

> FN6. Petitioner does not identify the jurors by name; however, Vasquez is identified as Prospective Juror # 3, and Davin is identified as Prospective Juror # 10. Petitioner contends that Vasquez did not agree to base her verdict solely on the evidence presented at trial. (Pet. at 9 (Doc. 1).) The Voir Dire Transcript reflects, however, that Vasquez agreed to do so. (Voir Dire Tr. at 237.) Indeed, in response to a question from Petitioner's counsel whether she could be able to vote not guilty if the prosecution does not meet its burden, (*id.* at 235–37), Vasquez states that "I'll just go by the evidence that is presented; that is in front of me" (*id.* at 237). Moreover, shortly thereafter, Petitioner's counsel asked Vasquez, "Do you understand if you have opinions, they would need to be based on the evidence that was presented here?" (*Id.*) Vasquez unequivocally answered "[y]es" to that question. (*Id.*)

*8 Respondent contends that this claim is not

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

cognizable on habeas review. (Resp.'s Opp'n at 32.) I agree. The Sixth Amendment, which is made applicable to the States by the Fourteenth Amendment, guarantees a criminal defendant the right to trial by an impartial jury. *Duncan v. Louisiana,* 391 U.S. 145, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The Supreme Court has concluded, however, that no due process violation occurs when a trial court refuses to excuse a juror for cause and the defendant chooses to use a peremptory challenge against that juror. *United States v. Martinez–Salazar,* 528 U.S. 304, 315–16, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000); *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Ross,* 487 U.S. at 88. Indeed, the Supreme Court, in *United States v. Skilling,* recently reiterated that "if [a] defendant elects to cure [a trial judge's erroneous for-cause ruling] by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, we have held, he has not been deprived of any ... constitutional right." —— U.S. ——, 130 S.Ct. 2896, 2922 n. 1, 177 L.Ed.2d 619 (2010) (citation and internal quotation marks omitted). Accordingly, to assert a cognizable claim on this ground, Petitioner must establish that the jury that convicted him was not impartial. *United States v. Rubin,* 37 F.3d 49, 54 (1994) (citing *United States v. Towne,* 870 F.2d 880, 885 (2d Cir.1989)).

Here, after the trial court denied Petitioner's challenges for cause regarding Vasquez and Davin, Petitioner's counsel and the counsel of a co-defendant exercised their peremptory challenges to remove them from the venire. (Voir Dire Tr. at 271, 386.) Petitioner, moreover, has not established that the jury eventually empaneled was not impartial. *See Skilling,* 130 S.Ct. at 2923–25. Accordingly, Petitioner is not entitled to habeas corpus relief based on this claim.

**B. Jury Misconduct Claims**

Petitioner next asserts that the trial court denied him a fair and impartial jury on three separate grounds—by (1) not questioning juror Ferdinand Rivera ("Rivera") about his conversation with Detective Richard Canelo ("Canelo"), a key government witness, outside the

courtroom; (2) declining to discharge juror Maria Montalvo ("Montalvo") when she informed the court that her aunt lived in a building involved in the case; and (3) declining to question juror Yoiata Ehe ("Ehe") after she disclosed that she had been robbed during the course of the trial, or juror Andrea Scheuer ("Scheuer") after she informed the court that she had formed an irrevocable opinion about the defendants' guilt or non-guilt and was therefore discharged. (Pet. at 9 (Doc. 1).)

Petitioner's first claim is procedurally barred and his second and third claims are meritless.

**1. Juror Ferdinand Rivera**

**a. Background**

*9 After opening statements, Detective Canelo informed the court, outside of the presence of the jury, that he had spoken with juror Ferdinand Rivera in the hallway earlier in the day. (Trial Tr. at 5.) From the transcript, it appears that Rivera initially believed Canelo to be another juror. (*Id.*) Rivera remarked that Canelo "wasn't here yesterday," to which Canelo responded that he was "a detective on one of the cases." (*Id.*) Rivera then "said something about the trains being delayed; about the weather." (*Id.*) Rivera said he was a paramedic and asked where Canelo worked. (*Id.*) Canelo told him he worked in Washington Heights, and the conversation ended. (*Id.*) No other jurors were present, and the conversation did not touch on the case. (*Id.*) Canelo did not know that Rivera was a juror. (*Id.* at 6)

The counsel of codefendant Carlos asked the trial court to question Rivera about the conversation, but the trial court declined to do so, reasoning that it did not "like singling out jurors" and that it was "satisfied on this record that nothing untoward happened. There was no discussion about the case." (*Id.*) Carlos's counsel then requested that the court remove Rivera from the jury, arguing that Rivera was "ingratiating himself with the detective." (*Id.* at 7.) The court declined, pointing out that Canelo had not told Rivera that both men were involved with the same case. (*Id.*)

Petitioner's counsel asserted that Rivera would recognize Canelo when Canelo testified and would have formed an opinion about Canelo's credibility based on the

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

fact that "[t]hey had his very friendly, lovely conversation." (*Id.*) The prosecutor responded that Rivera and Canelo had a "one-way conversation" that would not have allowed Rivera to form an opinion about Canelo. (*Id.* at 8.) The counsel of codefendant Acevedo reiterated the earlier motion to question Rivera. (*Id.*) The court again declined to do so. (*Id.*)

**b. Independent and Adequate State Grounds**

Federal habeas review of a claim is barred when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on [an independent and adequate] state procedural bar ...." *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996) (citing *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)); *accord* *Coleman,* 501 U.S. at 750; *Richardson v. Greene,* 497 F.3d 212 (2d Cir.2007).

Here, as the Appellate Division concluded, Petitioner's constitutional arguments regarding the trial court's determination concerning Rivera were not preserved for appellate review because Petitioner's counsel never lodged an objection based on federal constitutional grounds. *See* *People v. Devison,* 38 A.D.3d at 204, 831 N.Y.S.2d at 64. Indeed, Petitioner's counsel's objections were general and did not specifically assert a federal constitutional basis for the objections. (*See* Trial Tr. at 5–7.)

**\*10** New York Criminal Procedure Law § 470.05 preserves for review " 'only those questions of law as to which 'a protest ... was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.' " *Garcia v. Lewis,* 188 F.3d 71, 78 (2d Cir.1999) (quoting N.Y.C.P.L. § 470.05). The Second Circuit has consistently recognized § 470.05 as an independent and adequate state procedural bar. *See* *id.* at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citing *Bossett v. Walker,* 41 F.3d 825, 829 n. 2 (2d Cir.1994)); *see also* *Garvey v. Duncan,* 485 F.3d 709, 720 (2d Cir.2007).

Because Petitioner's constitutional claim was unpreserved for state appellate review, it is procedurally

barred. *See, e.g., Garcia,* 188 F.3d at 82 (concluding that petitioner's claim was procedurally barred where state appellate court ruled claim unpreserved for review). Thus, the remaining question is whether the Appellate Division's application of the rule to the Petitioner's case was reasonable, and not "exorbitant." *See* *Garvey,* 485 F.3d at 718. This requires an analysis of the *Cotto* factors.

**i. *Was the alleged violation actually relied on at trial, and would perfect compliance have changed the trial court's decision?***

Regarding the first *Cotto* factor, the question of whether the trial judge "actually relied on" the procedural default "is less applicable in this case because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." *Cotto,* 331 F.3d at 242. Moreover, the issue of "whether perfect compliance would have changed the outcome, 'is less relevant' in evaluating the failure to preserve a claim." *Stewart v. Greene,* No. 05 Civ. 0566(WHP)(THK), 2009 WL 4030833, at \*15 (S.D.N.Y. Nov. 19, 2009) (quoting *Ashley v. Burge,* No. 05 Civ. 4497(JGK), 2006 WL 3327589, at \*5 (S.D.N.Y. Nov.3, 2006). As noted by the Second Circuit in *Cotto,* "the likely impact of a timely objection involves a certain degree of speculation." *Cotto,* 331 F.3d at 243; *see also* *Donaldson v. Ercole,* No. 06–5781–pr, 2009 WL 82716, at \*2 (2d Cir., Jan.14, 2009) (summary order). The first *Cotto* factor, therefore, does not suggest that application of the rule was exorbitant.

**ii. *Did New York State case law indicate that compliance with the rule was demanded in the present case?***

Regarding the second *Cotto* factor, New York courts consistently require compliance with the contemporaneous objection rule, except in unique circumstances. *See, e.g., People v. Hicks,* 6 N.Y.3d 737, 739, 810 N.Y.S.2d 396, 843 N.E.2d 1136, 1138 (2005) (concluding that defendant's contention that trial court failed to conduct probing inquiry of allegedly biased juror was unpreserved in absence of protest to scope or intensity of court's inquiry of juror) (citing C.P.L. 470.05(2)); *People v. Dandridge,* 45 A.D.3d 330, 331, 845 N.Y.S.2d 55, 57 (1st Dep't 2005) (rejecting as unpreserved defendant's claim that trial court failed to make additional inquiry of juror when defendant failed to object to inquiry that trial court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

**\*11** In *Lee,* the Supreme Court explained that "in the 'unique circumstances' presented, that is, 'the sudden, unanticipated, and at the time unexplained disappearance of critical, subpoenaed witnesses on what became the trial's last day,' the state courts had never before applied the state rule in question." *Garvey,* 485 F.3d at 719 (quoting *Lee,* 534 U.S. at 382). In *Garvey,* however, the Second Circuit found no such circumstances. There, the defendant did not provide the trial court with a fair opportunity to consider the constitutional issue of whether a civilian-facilitated identification was suggestive and needed to be suppressed. *Id.* at 715–16. The defense's noncompliance with C.P.L. § 470.05(2) was the result of defense counsel making only a declaration that the identification was suggestive, which was considered insufficient under the contemporaneous objection rule, and not due to any unique circumstances mitigating the need for compliance. *Id.* at 719. Like *Garvey,* this case presents no unique set of circumstances similar to those in Lee that led to Petitioner's noncompliance. *See Garvey,* 485 F.3d at 719. Since there was no "sudden, unanticipated event" that caused Petitioner's failure to comply with C.P.L. § 470.05(2), the second consideration does not suggest that application of the Rule was exorbitant. *Garvey,* 485 F.3d at 719; *Lee,* 534 U.S. at 382.

### iii. *Would demanding perfect compliance with the contemporaneous objection rule serve a legitimate governmental interest?*

Finally, Petitioner did not "substantially comply" with the contemporaneous objection rule. The Second Circuit has recognized that demanding compliance with C.P.L. § 470.05 serves a legitimate governmental interest—"the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." *Garvey,* 485 F.3d at 720. While Petitioner's counsel did put the trial court on notice regarding his belief that the court should question Rivera regarding his conversation with Detective Canelo, Petitioner's counsel's omission of any federal dimension in his comments to the court hindered the furtherance of the court's legitimate governmental interest in requiring compliance with the rule. The third consideration thus does not suggest that the Appellate Division's application of C.P.L. § 470.05 was exorbitant.

Consequently, because the Appellate Division's decision was based on a ground independent of any federal question and adequate under firmly established and regularly followed state law, Petitioner's claim that the trial court's refusal to question Rivera violated his federal constitutional rights is procedurally barred.

### c. Cause and Prejudice, or Fundamental Miscarriage of Justice

Petitioner cannot overcome this procedural bar because he has not established cause for his procedural default. "[T]he cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McClesk v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting *Murray,* 477 U.S. at 488); *accord Bloomer v. United States,* 162 F.3d 187, 191 (2d Cir.1998). Petitioner has identified no such objective factor external to the defense. [FN7] Because Petitioner has not demonstrated cause for his procedural default, the Court need not address the issue of prejudice. *See McCleskey,* 499 U.S. at 502; *Acosta v. Giambruno,* 326 F.Supp.2d 513, 520 (S.D.N.Y.2004).

> [FN7]. Although Petitioner asserts that his counsel's failure to move for the trial court to question Rivera constitutes ineffective assistance of counsel—a recognized "objective factor external to the defense." *see Murray,* 477 U.S. at 488—as discussed in Part III.D.2. *infra,* Petitioner's counsel was not constitutionally ineffective.

**\*12** Finally, Petitioner makes no showing that failure to consider the claim would result in a fundamental miscarriage of justice; he points to no evidence to suggest that he is actually innocent, and would have struggled to do so in the face of the substantial evidence adduced at trial demonstrating his guilt. *See Murray,* 477 U.S. at 495–96. Accordingly, Petitioner is unable to overcome the procedural bar of his claim that the trial court's refusal to question Rivera violated his federal constitutional rights.

### 2. Jurors Yoiata Ehe and Andrea Scheuer

### a. Background

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

On the morning of May 3, 2004, at the approximate midpoint of the trial, the court announced that juror Yoiata Ehe had telephoned the court, reporting that she had been robbed that morning. (Trial Tr. at 1627–28.) After a recess, codefendant Carlos's counsel asked that the court remove Ehe from the jury, arguing that her experience being robbed might prevent her from being fair. (*Id.* at 1632.) Codefendant Alfonzo's attorney joined the application and asked in the alternative that the trial court question Ehe about the events of that morning. (*Id.*) Petitioner's counsel neither made nor joined any request regarding juror Ehe.

The court responded that Ehe would bring any "problem" to the court's attention and that the court would not question her unless Ehe did so. (*Id.* at 1633.) Petitioner's counsel and Alfonzo's counsel objected that individual jurors might not in fact bring their problems to the court, but the court responded that "the jurors are capable of letting [the court] know if they want to speak to [the court]." (*Id.*) In the end, the court decided not to rule on the issue at that time. (*Id.* at 1634.)

After the lunch recess that day, Carlos's counsel informed the trial court that he saw Ehe, in the hallway, telling other jurors about her robbery. (*Id.* at 1697.) Carlos's counsel asked for a mistrial and renewed his request that the court remove or question Ehe. (*Id.*) Alfonzo's counsel reported seeing Ehe tell "five to eight other jurors" what had happened to her and that the other jurors "were visibly reacting to this in an emotional way." (*Id.*) Ehe "looked very upset." (*Id.* at 1698.) Alfonzo's counsel requested that the court question Ehe, and Carlos's counsel renewed his request for a mistrial, arguing that "all the other jurors ha[d] been tainted." (*Id.* at 1698–99.)

After this discussion, the court called in the jury. The court drew attention to Ehe's lateness that morning and stated that it did not "know what she told you or didn't tell you." (*Id.* at 1699.) The court reminded the jurors "that anything that occurs outside the courtroom is not evidence." (*Id.*) Further, the court stated that it trusted that the jurors were "still following [the court's] instructions" and reiterated that "you must decide the case strictly on the evidence that has to do with this trial" and that "anything that occurs outside the juryroom [sic] is not

evidence and must not affect your ability," (*Id.* at 1699–1700.) The court concluded by stating its assumption that, unless a juror informed the court otherwise, "everyone ... can be fair jurors, and decide this case strictly on the evidence, and under the law." (*Id.* at 1700.)

**\*13** The following day, May 4, the court called in juror Ehe in order to "see if she [was] all right and find out exactly what happened." (*Id.* at 1771.) Ehe stated that her attacker "grabbed [her] from behind" and took her purse. (*Id.*) She reported the incident to the police but "didn't get to see [the attacker's] face." (*Id.* at 1773.) The court next asked whether Ehe could be "fair to both sides," and Ehe responded that she could. (*Id.* at 1772.)

The next morning, May 5, a court officer presented the court with a note from Ehe's doctor prescribing bed rest for Ehe. (*Id.* at 1984.) With the consent of the parties, the court excused Ehe, replacing her with alternate juror Andrea Scheuer. (*Id.* at 1985.) Codefendant Carlos's counsel renewed his application for a mistrial, requesting in the alternative that the court question the individual jurors about what Ehe had told them. (*Id.* at 1986.) The court denied both requests. (*Id.*)

The following day, May 6, a court officer informed the court that Scheuer was "crying hysterically" and had "already formed an opinion about the case." (*Id.* at 2239.) The court noted that Scheuer was "pretty displeased" about taking Ehe's place on the jury and losing "her seat next to juror number six," which appeared "very important to her." (*Id.* at 2240.) The court called in Scheuer, who, outside the presence of the other jurors, verified that she had formed an opinion about the defendants. (*Id.* at 2241.) She stated that she did not feel that anything would change her opinion and that she did not believe she could continue. (*Id.* at 2242.) Scheuer also told the court that she had not discussed her opinion with other jurors or alternate jurors. (*Id.*)

Scheuer left the courtroom, and codefendant Acevedo's counsel moved for a mistrial, arguing that Scheuer had been "carrying on" with other jurors. (*Id.* at 2245.) Codefendant Alfonzo's counsel joined the motion, referring to Scheuer's "flirtatious behavior" with juror

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

number six. (*Id.* at 2246.) Alfonzo's counsel claimed that Scheuer had not been honest with the court and "possibly ... could have told another juror, especially since she had a relationship with one." (*Id.* at 2246–47.) The court denied the motion, calling Alfonzo's counsel's argument "speculation." (*Id.* at 2247.) Alfonzo's counsel requested that the Court question the jurors individually, but the court declined to do so, though it stated that it would consider a curative instruction. (*Id.* at 2247.) The court discharged Scheuer, replacing her with an alternate juror, and it warned Scheuer not to contact any juror or alternate juror until after the verdict. (*Id.* at 2248.) When the jury returned, the court told the jurors they were "not to speculate as to the reasons or anything to do with the substitution." (*Id.* at 2249.)

**b. The Merits—Jury Misconduct**

Petitioner contends the trial court erroneously failed to question the jury both after juror Ehe told some jurors that she had been robbed, and after juror Scheuer told the court that she had formed an opinion about the defendants' guilt or non-guilt, thus depriving Petitioner of his right to a fair and impartial jury. (Pet. at 9 (Doc. 1).)

**\*14** Regarding Ehe, the Appellate Division concluded that "[t]he court properly declined to question each juror individually about what another juror had said about having been robbed." *Devison,* 38 A.D.3d at 205, 831 N.Y.S.2d 64. The Appellate Division reasoned that "the incident had nothing to do with the jury's evaluation of the evidence, and the court's instruction to the entire panel, that nothing outside the courtroom was evidence and that the case must be decided solely on the evidence, was sufficient to address any possible prejudice, especially since the case did not involve robbery or any related crime." *Id.*

Similarly, the Appellate Division concluded that the trial court properly declined to question the jurors regarding Scheuer. *Id.* The Appellate Division reasoned that she "stated that she had not spoken to any other jurors about her opinion, and that her conversation with the court officer was not overheard," *Id.* Moreover, the court reasoned, "there was nothing in the record to indicate that the juror had spoken to any other juror about this matter and there is no reason to disturb the court's credibility

determination regarding the juror's statement." *Id.*

The question presented is thus whether the Appellate Division's conclusions regarding Ehe and Scheuer constitute an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

I conclude that they do not. There is no Supreme Court precedent that would have required the trial judge to question the jury in this case. Though the right to an impartial jury requires the trial judge to investigate external jury coercion, *see Remmer v. United States,* 347 U.S. 227, 229–30, 74 S.Ct. 450, 98 L.Ed. 654 (1954), reviewing courts are deferential to trial judges' decisions with respect to handling intra-juror misconduct allegations because trial courts "face a delicate and complex task whenever they undertake to investigate reports of juror misconduct or bias during the course of a trial." *United States v. Thomas,* 116 F.3d 606, 618 (2d Cir.1997). Moreover, "[i]ntra-jury communications pose a less serious threat to a defendant's right to an impartial trial than do extra-jury influences, and therefore [trial] courts are entitled to even greater deference in their responses to them than in responses to outside influences." *United States v. Cox,* 324 F.3d 77, 86 (2d Cir.2003) (citation and internal quotations omitted). Finally, the Second Circuit requires that "[o]n § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial." *Fama,* 235 F.3d at 813. After all, the trial court "which observ[es] the jury on a day to day basis ... is in the best position to sense the atmosphere of the courtroom as no appellate court can on a printed record." *United States v. Abrams,* 137 F.3d 704, 708 (2d Cir.1998) (citation and internal quotation marks omitted). Thus, "[i]n many instances, the court's reiteration of its cautionary instructions to the jury is all that is necessary." *Id.* (quoting *United States v. Thai,* 29 F.3d 785, 803 (2d Cir.1994)); *cf. Skilling,* 130 S.Ct. at 2925 ("Jurors, ..., need not enter the box with empty heads in order to determine the facts impartially. 'It is sufficient if the juror[s] can lay aside [their] impression[s] or opinion[s] and render a verdict based on the evidence presented in court.' " (quoting *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961))).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

**\*15** That is exactly what happened here. After learning of Ehe's conversation with the other jurors, the court delivered a cautionary instruction, reminding the jury that anything that occurs outside the courtroom is not evidence, and that they "must decide the case strictly on the evidence that has to do with th[e] trial." (Tr. at 1699–1700.) The court, moreover, informed the jury that if any juror no longer felt he or she could decide the case based on the evidence, that he or she should let the judge know. (*Id.* at 1700.) The court thus took sufficient steps to ensure that the jury was not biased by any conversations that its members might have had with Ehe. Petitioner has produced no evidence tending to overcome the strong presumption of correctness that this Court applies to the trial court's determination that the jury was impartial, and the trial court did not deprive Petitioner of a trial by an impartial jury by refusing to question the jurors individually following Ehe's discussion with them about her robbery.

The same applies to the trial court's determination that it was unnecessary to question individual jurors in relation to Scheuer's emotional display and subsequent discharge. The court took sufficient steps to ensure that the jury was impartial by questioning Scheuer and confirming that she had not discussed the opinion she had formed with other seated or alternate jurors. (Trial Tr. at 2241–42.) Moreover, the court was careful to instruct the jury that it was "not to speculate as to the reasons or anything to do with the substitution." (*Id.* at 2249.)

There is no clearly established law of the Supreme Court that would have compelled the trial court to question the jury in circumstances such as these. Petitioner's claims in this regard are therefore meritless.

**3. Juror Maria Montalvo**

**a. Background**

At the end of the day on April 15, 2004, after the government's first witness concluded his testimony and after the jury had left the courtroom, a court officer reported that juror Maria Montalvo had told the officer that her aunt lived at 552 West 146th Street, one of the buildings in which Petitioner and his codefendants worked. (*Id.* at 80.) The officer stated that she only

realized her aunt lived in a building involved in the case when she "watched the building," presumably on a video introduced into evidence. (*Id.*) The court recalled Montalvo. In response to the court's questions, Montalvo stated that she had visited her aunt at 552 West 146th Street, but that she had not done so since September or October 2003, six or seven months before Petitioner's trial, when she went in "for two seconds." (*Id.* at 81.) Montalvo assured the court that she would not visit the building for the duration of the trial and that she did not know any of the defendants or witnesses in the case. (*Id.* at 81–82.) Further, she agreed that she had formed no opinion about the case based on her visits to the building and that she had not discussed the matter with any other jurors, after which she exited the courtroom. (*Id.* at 82.)

**\*16** After Montalvo departed, Petitioner's counsel stated, "Judge, we have an—" but was interrupted by codefendant Alfonzo's counsel before he could continue. (*Id.* at 82.) Alfonzo's counsel requested that Montalvo be replaced by an alternate juror, arguing that counsel would not have selected a juror with a relative in 550 or 552 West 146th Street. (*Id.* at 82–83.) Codefendant Carlos's counsel declared his concern to be "what [Montalvo had] been told by her aunt, [and] what she's heard about the building." (*Id.* at 84.) Codefendant Acevedo's counsel was concerned that Montalvo had not disclosed the place of her aunt's residence during voir dire. (*Id.* at 85–86.) After his initial interrupted statement, Petitioner's counsel was silent during this exchange.[FN8]

> **FN8.** It thus appears from the transcript that Petitioner's claim was not preserved for review before the Appellate Division. *See* C.P.L. § 470.05. Since the Appellate Division found the claim preserved, however, I must nevertheless address its merits.

The court declined to replace Montalvo with an alternate juror. (*Id.* at 86.) It noted that Montalvo had not intentionally withheld information during voir dire but had only realized that her aunt lived in a building involved in the case when she saw an image of the building during the trial. (*Id.* at 84.) After declining to remove Montalvo, the court adjourned. (*Id.* at 87.)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

The court next convened on April 19. Codefendant Carlos's counsel then renewed the motion to have Montalvo removed from the jury. (*Id.* at 94.) He reported that a defendant's family member who had been observing the trial had "recognized [Montalvo] from 146th Street." (*Id.*) He further stated that Montalvo's aunt had "had confrontations with members of the Acevedo family" and that "it's believed that ... [Montalvo's aunt] filed complaints with the 30th Precinct about what was going on, on that block." (*Id.*) Alfonzo's counsel asked for a hearing because Montalvo's aunt "may have had a conversation about her complaints, about her living situation with [Montalvo]." (*Id.* at 97.) Petitioner's attorney took no part in this exchange.

The court denied both the motion to remove Montalvo and the motion for a hearing. (*Id.*) It stated that it did not consider the family member's alleged recognition of Montalvo to be "credible or relevant or probative," reiterating that Montalvo had, in response to the court's questioning, stated that she knew nothing about the case or any name involved with it. (*Id.* at 95.) If a relative of a defendant could disqualify a juror simply by claiming to recognize her, the court reasoned, a relative would be likely to make such a claim if he felt the trial was progressing in a direction contrary to his wishes. (*Id.*) The court further dismissed Alfonzo's counsel's suggestion that Montalvo and her aunt discussed the drug dealing at 550 and 552 West 146th Street as "speculation." (*Id.* at 97.) The Appellate Division affirmed the trial court's decision, reasoning that "the juror did not have implied bias based on th[e] remote fact" that her aunt lived in one of the buildings in which the drug dealing occurred. *Devison,* 831 N.Y.S.2d 64, 64–65, 38 A.D.3d 203, 204–5.

**b. The Merits—Juror Bias**

*\*17* Petitioner contends that the trial court erred by refusing to discharge Montalvo after learning that her aunt lived in the same building as Petitioner, thus depriving Petitioner of his right to a fair and impartial jury. (Pet. at 9 (Doc. 1).) Petitioner's claim is meritless.

"[D]ue process does not require a new trial every time a juror is placed in a potentially compromising situation." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (bias could not be imputed to juror who

submitted, during criminal trial, employment application with district attorney's office prosecuting the case). Instead, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* "In reviewing claims of [juror bias], the deference due to district courts is at its pinnacle: 'A trial court's findings of juror impartiality may be overturned only for manifest error.' " *Skilling,* 130 S.Ct. at 2923–24 (no bias imputed to jurors who assured trial court that they could be impartial) (quoting *Mu'Min v. Virginia,* 500 U.S. 415, 428, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991)). Finally, as discussed in Part III.B.2.b. *supra,* under AEDPA, there is a presumption of correctness that attaches to atrial court's determination of juror impartiality. *See Fama,* 235 F.3d at 813.

Here, like the jurors in *Skilling,* Montalvo assured the court that she could remain impartial. (Trial Tr. at 82.) She stated that she had not visited her aunt's residence in a number of months, promised she would not go to the building during trial, and unequivocally agreed that she had neither formed an opinion about the case based on her visit to the building, nor mentioned the fact that she had been to 552 West 146th Street to any other juror. (*Id.*) The court acted well within its discretion in its determination that Montalvo was impartial, and there is no reason not to accord the court's determination its due presumption of correctness under AEDPA. The Appellate Division's conclusion that Montalvo was impartial and that the court properly declined to replace her, *see Devison,* 38 A.D.3d at 204–05831 N.Y.S.2d at 65–66, was not an unreasonable application of Supreme Court precedent; therefore, Petitioner's claim is meritless.[FN9]

> **FN9.** To the extent Petitioner asserts that the court denied him his right to a fair and impartial jury by improperly refusing to dismiss Montalvo pursuant to C.P.L. § 270.20(1)(c), which provides, in part, that a party may challenge a prospective juror for cause if the "[juror] is related within the sixth degree of consanguinity or affinity to ... the person allegedly injured by the crime charged, ...." (Pet. at 9 (Doc. 1)), that claim fails as well. The Appellate Division

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

concluded that this argument was "unpreserved" and stated that were it to review the claim, it "would find it to be without merit, ...." *Devison, 38 A.D.3d at 205, 831 N.Y.S.2d at 64*. As discussed above, the Second Circuit recognizes New York's contemporaneous objection rule as an "independent and adequate state ground" that procedurally bars habeas review. *See Greene, 497 F.3d at 218*. Furthermore, the Appellate Division's alternative ruling on the merits does not undermine the procedural bar imposed by that court's reliance on Petitioner's procedural default. *See Harris, 489 U.S. at 264 n. 1; Green, 414 F.3d at 294*. There is nothing to suggest that the application of the contemporaneous objection rule to Petitioner in this case is "exorbitant." *See Greene, 497 F.3d at 218*. Similarly, Petitioner cannot demonstrate cause for, or actual prejudice resulting from, his failure to preserve his claim. *Coleman, 501 U.S. at 749–50*. Finally, Petitioner has not demonstrated that a failure to consider his impartial jury claim will result in a miscarriage of justice. *Id.* Consequently, I conclude that to the extent Petitioner makes this claim, it is procedurally barred.

**C. Multiple Conspiracies Charge**

Petitioner next contends that the trial court erred by not giving a multiple conspiracies charge to the jury. (Pet. at 9 (Doc. 1).) At different times, Petitioner has proposed two different theories related to the conspiracy charge. The Petitioner has asserted, first, that the drug-selling operations operating within 550 and 552 West 146th Street, those headed by Hernandez and Pena, were independent conspiracies. Second, he has contended that there were additional drugselling operations on the same block that were independent of both Hernandez and Pena's operations. Petitioner's first claim is procedurally barred and his second claim is meritless.

**1. Multiple Conspiracies Within 550 and 552 West 146th Street**

**a. Independent and Adequate State Law Grounds**

**\*18** To the extent that Petitioner asserts that the trial court erred by not giving the jury a multiple conspiracies

charge based on the theory that the conspiracies in 550 and 552 West 146th Street were separate, Petitioner's claim is procedurally barred. On direct appeal, Petitioner argued that multiple conspiracies were at work in 550 and 552 West 146th Street: one conspiracy in 550, and another in 552. (Litsky Decl. Ex. A, at 68, 70–72 (Doc. 15).) The Appellate Division rejected this claim as "unpreserved and unavailing ...." *Devison, 38 A.D.3d at 206, 831 N.Y.S.2d 64* (citation omitted). During his and Petitioner's trial, Alfonzo joined Petitioner's request for a multiple conspiracies charge based on the drug-selling activity along the whole block. (Trial Tr. at 2903.)

On appeal, however, Alfonzo argued, like Petitioner, that the trial court should have given a multiple conspiracies instruction based on the drug-selling activity in the two adjoining buildings. As the Appellate Division noted, Alfonzo's request at trial "was made on a theory that was not only significantly different from, but was actually contradictory to, the theory [Alfonzo] now raises on appeal," *Alfonso, 35 A.D.3d at 269, 827 N.Y.S.2d at 39*. The Appellate Division accordingly found the argument that the court should have given the jury a multiple conspiracies instruction based on the activity in the two buildings unpreserved. *Id.* When the court in *Devison* pointed to its reasoning in *Alfonso*, it necessarily applied this argument to Petitioner's claim.

As discussed in Part III.B.1.b. *supra,* the Second Circuit has consistently recognized New York's contemporaneous objection rules as an independent and adequate state law procedural bar. *See Garvey, 485 F.3d at 720; Garcia, 188 F.3d at 79*. Thus, in invoking New York's preservation rule, the Appellate Division rejected Petitioner's argument on an independent and adequate state law ground, and this Court is procedurally barred from considering Petitioner's claim on its merits. Accordingly, the remaining question is whether the Appellate Division's application of the rule to the Petitioner's case was reasonable, and not "exorbitant." *See Garvey, 485 F.3d at 718*. As before, this requires an analysis of the *Cotto* factors.

**i. *Was the alleged violation actually relied on at trial, and would perfect compliance have changed the trial court's decision?***

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

As an initial matter, it is not helpful to ask whether the trial court actually relied on the violation, since the violation in question was a failure to raise an issue at trial. *See* Cotto, 331 F.3d at 242. In any event, it is unlikely the trial court would have ruled differently if Petitioner had raised the issue, since the court, during a discussion with Petitioner's and other defendants' counsel, rejected the idea of multiple conspiracies within the two buildings. (Trial Tr. at 2908.) Thus, the first factor does not suggest that the Appellate Division's application of C.P.L. § 470.05 was exorbitant.

**ii. *Did New York State case law indicate that compliance with the rule was demanded in the present case?***

**\*19** Regarding the second *Cotto* factor, New York case law indicates that parties must raise issues regarding jury instructions at the time of trial in order for them to be considered on appeal. *See, e.g.,* People v. Rivera, 72 A.D.3d 576, 577, 900 N.Y.S.2d 31, 33 (1st Dep't 2010) (defendant's failure to request justification charge rendered issues pertaining to such charge unpreserved for appellate review); People v. Green, 49 A.D.3d 1029, 1030, 853 N.Y.S.2d 695 (1st Dep't 2008) (defendant's contention that trial court erroneously failed to give jury additional charge was unpreserved for review because defendant failed to request charge or object to charge as given).

Petitioner did not raise at trial the particular claim he raises here. Instead, he only argued that a multiple conspiracies charge should be given with respect to the other drug-selling activity on the block. (Trial Tr. at 2905–11.) New York case law required compliance with the rule here, and this factor thus does not suggest that the Appellate Division's application of C.P.L. § 470.05 was exorbitant.

**iii. *Would demanding perfect compliance with the contemporaneous objection rule serve a legitimate governmental interest?***

Finally, the Second Circuit has recognized that demanding compliance with C.P.L. § 470.05 serves a legitimate governmental interest—"the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." Garvey, 485 F.3d at 720. Indeed, "[t]he basis of § 470.05(2) is that the trial court must be given a fair opportunity to rule on an issue of law before it can be raised on appeal." *Id.* Petitioner's

counsel gave the trial court no such opportunity here as he never alerted the court to the argument that he subsequently raised on direct appeal. Thus, the third consideration does not indicate that the Appellate Division's application of C.P.L. § 470.05 was exorbitant.

Consequently, because the Appellate Division's decision was based on a ground independent of any federal question and adequate under firmly established and regularly followed state law, Petitioner's claim is procedurally barred.

**b. Cause and Prejudice, or Fundamental Miscarriage of Justice**

Petitioner cannot overcome his procedural bar. He has not identified any "objective factor external to the defense" that impeded his counsel's efforts to request at trial a multiple conspiracies charge based on the organizations within 550 and 552 West 146th Street. *See* Murray, 477 U.S. at 488. Moreover, because Petitioner has not demonstrated cause for his procedural default, the Court need not address the issue of prejudice. See McCleskey, 499 U.S. at 502. Finally, Petitioner points to no evidence to suggest that he is actually innocent, so he cannot prove a fundamental miscarriage of justice. *See* Murray, 477 U.S. at 495–96. Consequently, Petitioner is unable to overcome the procedural bar of his claim that the trial court's refusal to provide the jury with a multiple conspiracies charge violated Petitioner's federal constitutional rights.

**2. Other Conspiracies on the Block**

**\*20** At trial, Petitioner contended that there were "multiple groups of people who package [drugs] in different ways" in addition to the sellers at 550 and 552 West 146th Street. (Trial Tr. at 2907.) Petitioner's counsel was clear that his "argument was not for 550 and 552" but "was to the testimony in this case about drug groups operating out of the entire block" who "packaged drugs differently" than the sellers at 550 and 552 West 146th Street. (*Id.* at 2910–11.) Petitioner argued similarly on direct appeal. (Litsky Decl. Ex. A, at 68, 72–76 (Doc 15).) Petitioner appears to contend that if the trial court had given the jury a multiple conspiracies charge based on the fact that there were several conspiracies up and down the block, Petitioner could have been found to have been working for one of the other conspiracies. The Appellate

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

Division found Petitioner's argument, though preserved, to be unavailing. *Devison,* 38 A.D.3d at 205, 206, 831 N.Y.S.2d at 64. The Appellate Division's decision in this regard was not an unreasonable application of Supreme Court precedent; Petitioner's claim is thus meritless.

**a. Clearly Established Federal Law Regarding Jury Instructions**

As an initial matter, "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (citation omitted). Where an error in a jury instruction is alleged, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). "The question is not whether the trial court gave a faulty instruction, but rather "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147; *see also Estelle,* 502 U.S. at 72.

In light of these principles, "[the Second Circuit] has repeatedly held that '[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law.' " *Davis v. Strack,* 270 F.3d 111, 123 (2d Cir.2001) (quoting *Casillas v. Scully,* 769 F.2d 60, 63 (2d Cir.1985)). Moreover, in situations such as the one presented here—where a petitioner claims that he should have received a certain jury instruction at trial—"a finding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination whether that error violated the petitioner's federal due process rights." *Id.* Consequently, I must determine whether Petitioner was entitled to a multiple conspiracies charge under New York State law.

**b. Multiple Conspiracies Charges Under New York Law**

**\*21** The New York Court of Appeals has concluded that a multiple conspiracies charge "is required whenever the possibility of more than one conspiracy is supported by a reasonable view of the evidence." *People v. Leisner,* 73 N.Y.2d 140, 538 N.Y.S.2d 517, 522, 535 N.E.2d 647, 652 (1989); *accord Llaca v. Duncan,* No. 01 Civ. 9367(DC), 2004 WL 964113, at \*29 (S.D.N.Y. May 4, 2004). In *Leisner,* appellants, two landlords convicted of conspiracy in the fourth degree based upon their plot to force tenants from their rent-controlled apartments, contended that the trial court committed reversible error by refusing to charge the jury on the possibility of multiple conspiracies and that, at best, the proof at trial established a number of discrete conspiracies, not the single conspiracy alleged in the indictment. *Leisner,* 535 N.E.2d at 651, 538 N.Y.S.2d at 522. The Court of Appeals agreed, reasoning that "there was ... a reasonable view of the evidence to support appellants' contention that any conspiracy or conspiracies proven were narrower in scope than the single overarching one charged in the indictment." *Id.* The court explained that the prosecution's chief witness testified that (1) one of the appellants had nothing to do with the buildings of the other appellant and did not participate in vacating them; (2) there was no agreement between the appellants concerning the relocation of the tenants from their respective buildings; and (3) each of the appellant's actions concerning his own building did not depend on the other appellant's actions. *Id.* at 650–51, 538 N.Y.S.2d at 523, 535 N.E.2d 647.

Unlike in *Leisner,* there was no such evidence requiring the need for a multiple conspiracies jury instruction here. Indeed, although Petitioner asserts that "there was more than a reasonable view of the evidence that multiple conspiracies were present," (Pet. at 9 (Doc. 1)), he points to no evidence tending to suggest that there were multiple conspiracies regarding the drug dealing on West 146th Street. To the contrary, the proof adduced at trial strongly suggests Petitioner's membership in a single conspiracy between the organizations at 550 and 552 West 146th Street. For instance, Tony Perez and Altagracia Ignacio testified to Petitioner's membership in the conspiracy. (*See e.g.,* Trial Tr. at 1714–19, 2115–17.) Moreover, as Petitioner's counsel stated at trial, the other alleged drug dealing conspiracies on the block "packaged drugs differently" than the conspiracy at 550 and 552

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

West 146th Street. (*Id.* at 2910–11, 538 N.Y.S.2d 517, 535 N.E.2d 647.) This statement further suggests that Petitioner was not part of any conspiracy other than the one to which he was tied by the evidence presented at trial. In short, Petitioner was not entitled to a multiple conspiracies charge under New York law regarding other conspiracies on West 146th Street based on a reasonable view of the evidence.

Since Petitioner can show no state law error, he necessarily cannot show that his right to a fair trial was violated as a matter of federal constitutional law. See *Davis,* 270 F.3d at 123. The Appellate Division's decision did not constitute an unreasonable application of Supreme Court precedent; thus, Petitioner's claim is meritless.

**D. Ineffective Assistance of Counsel**

**\*22** Lastly, Petitioner contends that his trial counsel was ineffective because counsel did not move for the trial court to (1) question Rivera regarding his conversation with Detective Canelo, or (2) remove Montalvo after she revealed that her aunt lived in one of the buildings involved in the case. Respondent contends, on the other hand, that Petitioner's ineffective assistance of counsel claim is procedurally barred under New York C.P.L. § 440.10(2)(c) FN10 and, in any event, are meritless. (Resp.'s Opp'n at 54 (Doc. 16).) I conclude that although Petitioner's claim is not procedurally barred, it is meritless.

> FN10. New York Criminal Procedure Law § 440.10(2)(c) provides, in part, that a court must deny a § 440.10 motion when sufficient facts appear on the record of the proceedings to have allowed adequate review of an issue on appeal, but the defendant unjustifiably failed to raise the issue on appeal.

**1. Petitioner's Claim is not Procedurally Barred**

A habeas claim is not procedurally barred unless "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris,* 489 U.S. at 263 (quoting *Caldwell v. Mississippi,* 472 U.S. at 327); *accord Coleman,* 501 U.S. at 735. Courts have found a violation of this principle in situations where the reliance on a state law ground was unclear from the last state court opinion.

See e.g., *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000) (state court set forth factual predicate for finding of waiver but did not clearly state its intention to rely upon that state law ground); *Reid v. Senkowski,* 961 F.2d 374, 377 (2d Cir.1992) (state court did not clearly and expressly state whether it had examined merits of petitioner's missing witness claim or relied on procedural default).

Although the Second Circuit has consistently recognized Section 440.10(2)(c) to be an independent and adequate bar to federal habeas review, *see, e.g., Clark,* 510 F.3d at 390–91; *Jimenez v. Walker,* 458 F.3d 130, 148–49 (2d Cir.2006), here, the trial court did not expressly state that its judgment rested on § 440.10(2)(c) grounds. Indeed, in a one sentence order, the trial court stated only that it denied Petitioner's § 440.10 Motion "for the reasons set forth in the People's Response." (See Litsky Decl. Ex. H, at 32 (Doc 15).)

Respondent's contention that the trial court "implicitly relied on" the procedural bar argument that Respondent made in its response to Petitioner's § 440.10 motion is unavailing. (Resp.'s Opp'n at 56 (Doc. 16).) Although in that response Respondent appears to argue, without mentioning § 440.10(2)(c), that Petitioner's claim was procedurally barred, (*see* Litsky Decl. Ex. H, at 80 ¶ 16 (Doc. 15) (stating that the alleged errors in question do not rise to the level of constitutional violation "because the issues in question are contained squarely within the four corners of the trial record and available for appeal")), he also appears to contend that Petitioner's claim was meritless (*see id.* at 80 ¶ 17 ("[S]uch claims do not implicate Constitutional violations where the defendant had counsel at trial, the opportunity and means to object and chance for appeal.") (citation omitted))). Consequently, I cannot conclude that the trial court's adoption of Respondent's argument constitutes a clear and express statement that its judgment rested upon a procedural bar. See *Reid,* 961 F.2d at 377. I must therefore consider the merits of Petitioner's claim.

**2. The Merits–Ineffective Assistance of Counsel**

**\*23** "[T]he *Strickland* standard ... is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.' " *Aparicio v. Artuz,*

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

269 F.3d 78, 95 & n. 8 (2d Cir.2001) (quoting 28 U.S.C. § 2254(d)(1)); *accord Knowles,* 129 S.Ct. at 1420. Under *Strickland,* a petitioner seeking to have his conviction reversed due to ineffective assistance of counsel must prove that (1) counsel's performance was deficient; and (2) this deficiency prejudiced the petitioner. *Knowles,* 129 S.Ct. at 1420 (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

To establish deficient performance, Petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Thus, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. This deference is particularly warranted when considering matters of trial strategy-an area that reviewing courts are "ill-suited to second-guess." *United States v. Luciano,* 158 F.3d 655, 660 (2d Cir.1998). Moreover, "[f]ailure to make a meritless argument does not amount to ineffective assistance." *U.S. v. Regalado,* 518 F.3d 143, 149 n. 3 (2d Cir.2008) (quoting *United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999) (citations omitted)); *accord United States v. Javino,* 960 F.2d 1137, 1145 (2d Cir.1992) (counsel's failure to request certain jury instructions did not amount to deficient performance because court's instructions were correct as given).

"To establish prejudice,' [Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The Supreme Court has emphasized, moreover, "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Regarding deficiency, Petitioner contends that his

counsel's failure to make motions for the trial court to question Rivera and remove Montalvo constitute ineffective assistance. As discussed above in Parts III.B.l.a. and III.B.3.a. *supra,* both of these arguments would have been meritless as the trial court, exercising its broad discretion in determining juror impartiality, had already refused the requests of codefendant Carlos's counsel to question Rivera and, later, to remove Montalvo. Failure to make meritless arguments does not amount to ineffective assistance. *Regalado,* 518 F.3d at 149 n. 3. Additionally, there is nothing to suggest that Petitioner's counsel's decisions not to make the arguments were not "virtually unchallengeable" strategic decisions made with knowledge of the law and facts relevant to plausible options. *See Strickland,* 466 U.S. at 690. Indeed, the fact that the trial court had already refused the requests of Petitioner's co-defendant's counsel to question Rivera and remove Montalvo suggests that Petitioner's counsel had no plausible options.

**\*24** Moreover, viewing the record as a whole, Petitioner's counsel vigorously and competently defended Petitioner at trial. *See Miller v. People of New York,* No. 05 Civ. 5754(LTS)(DCF), 2009 WL 5061746, at \* 10 (S.D.N.Y. Dec. 23, 2009) (viewing record as whole can demonstrate that trial counsel provided competent representation) (citation omitted); *Roberts v. Payant,* No. 05 Civ. 3110(RJH)(DF), 2009 WL 6412017, at \*14 (S.D.N.Y. Dec. 3, 2009) (same). Petitioner's counsel delivered an opening statement in which he reminded the jury of the burden of proof and the presumption of innocence. (Trial Tr. 62–63.) He cross-examined witnesses and made objections that the trial court sustained. (*See e.g., id.* at 1063, 2075.) At the end of the people's case, moreover, he moved for an order of dismissal. (*Id.* at 2825–26.) Finally, when the trial court denied that motion, counsel delivered a summation in which he advanced the arguments that he had developed during the course of the trial (Trial Tr. at 2948–99.) As a result of these efforts, the jury acquitted Petitioner of the top count of Conspiracy in the First Degree. (*Id.* at 3507.) On this record, I cannot conclude that counsel's performance was objectively unreasonable. *See Miller,* 2009 WL 5061746, at \*10.

Even though the prejudice prong of *Strickland* need

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060789 (S.D.N.Y.)

(Cite as: 2010 WL 5060789 (S.D.N.Y.))

not be addressed, *see Strickland,* 466 U.S. at 697, I note that Petitioner has not demonstrated that he suffered prejudice from his counsel's performance. To prevail on his ineffective assistance claim, Petitioner must show that there was a "reasonable probability" that with a newly constituted jury that did not include Montalvo or Rivera, his trial would have turned out differently. *See Knowles,* 129 S.Ct. at 1422 This Petitioner cannot do. Indeed, the newly constituted jury would have seen the extensive evidence inculpating Petitioner as outlined above. *See Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir.2001) ("Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt.").

On this record, the trial court's rejection of Petitioner's ineffective assistance of counsel claim was not an unreasonable application of federal law, as enunciated by the Supreme Court in *Strickland;* accordingly, Petitioner's application for habeas relief on the grounds of ineffective assistance of counsel should be denied, under AEDPA. 28 U.S.C. § 2254(d).

### IV. CONCLUSION

For the foregoing reasons, I recommend that Petitioner's petition for habeas corpus be DENIED in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has failed to make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

### *PROCEDURES FOR FILING OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A**

**WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Am.* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFLCIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 72. If Petitioner does not have access to cases cited herein that are reported on LexisNexis or Westlaw, he should request copies from Respondent's counsel. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009).

FNPetitioner contends that Davin exhibited a pro-police bias. The transcript, however, indicates that Davin merely expressed the idea that police can fabricate testimony but that it is "not their purpose in general" to do so. (*Id.* at 354.) The trial court denied Petitioner's counsel's for-cause challenge to Vasquez and a codefendant counsel's for-cause challenge to Davin. (*Id.* at 265, 375–76.)

S.D.N.Y.,2010.

Devison v. Cunningham
Slip Copy, 2010 WL 5060789 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 5060728 (S.D.N.Y.)

(Cite as: 2010 WL 5060728 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

S.D. New York.
Miguel DEVISON, Petitioner,
v.
Raymond J. CUNNINGHAM, Respondent.
No. 09 Civ. 1031(DAB)(JLC).

Dec. 8, 2010.

*ADOPTION OF REPORT AND RECOMMENDATION AND DENIAL OF ORDER TO SHOW CAUSE*

DEBORAH A. BATTS, District Judge.

*I. BACKGROUND*

**\*1** Pursuant to 28 U.S.C. § 2254, *pro se* Petitioner Miguel Devison ("Petitioner") petitions this Court seeking a writ of habeas corpus under 28 U.S.C. § 2254 (the "Petition") challenging his June 24, 2004 conviction and sentence in New York State Supreme Court, New York County. A jury convicted Petitioner of Conspiracy in the Second Degree under N.Y. Penal Law § 105.15 and Criminal Sale of a Controlled Substance in the Third Degree under N.Y. Penal Law § 220.39. The state court sentenced Petitioner to separate consecutive prison terms of eight to twenty-four, and two to six years, which he is currently serving. On October 15, 2010, United States Magistrate Judge James L. Cott submitted a Report and Recommendation ("the Report") to this Court, recommending that the Petition be denied in its entirety. Magistrate Judge Cott also recommended that this Court decline to issue a certificate of appealability. On October 26, 2010, Petitioner filed timely objections to the Report (the "Objections").[FN1]

> **FN1.** Under the prison mailbox rule, *pro se* prisoner's objections are deemed filed at the moment he gave it to prison officials. *See Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001).

Petitioner's specific Objections to Magistrate Judge Cott's Report are as follows: (1) the trial court failed to conduct an inquiry of a sworn juror who spoke with a lead police witness during trial; (2) the trial court failed to dismiss a juror whose aunt lived in the building where the conspiracy took place; and (3) Petitioner was denied effective assistance of counsel when his defense counsel failed to makes motions to, (a) conduct a inquiry of the sworn juror who was observed interacting and conversing with a lead prosecution witness during trial, and (b) remove a juror that was related to the sixth degree to a person that lived in the building where the alleged conspiracy occurred.[FN2]

> **FN2.** In Footnote 1 of his Objections, Petitioner argues he is not "abandon[ing] any claims not specifically addressed [in his Objections]." The Court reviews all portions of Report that are not specifically addressed in Petitioner's Objections for clear error. *Advance Coating Tech Inc. v. LEP Chem. Ltd.,* 142 F.R.D. 91, 94 (S.D.N.Y.1992).

For the reasons below, the Court fully adopts Magistrate Judge Cott's Report, denies Petitioner Miguel Devison's Petition for habeas corpus in its entirety and declines to issue a certificate of appealability. In addition, the Court denies as moot Petitioner's November 29, 2010 (file-stamped December 6, 2010) Order to Show Cause for an Injunction and Restraining Order requesting that New York State correctional and/or parole officers be restrained from "allowing INS to gain custody of petitioner until the outcome of petitioner's conviction is finalized."

*II. FACTS AND PROCEDURAL HISTORY*

The facts and procedural history are set forth in Magistrate Judge Cott's Report and will not be reiterated here. (*See* Report, Docket No. 20.)

*III. DISCUSSION*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060728 (S.D.N.Y.)

(Cite as: 2010 WL 5060728 (S.D.N.Y.))

A. General Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1)(c), "[w]ithin ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations." The District Court is required under 28 U.S.C. § 5636(b)(1)(C) to make a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Moreover, the court may accept any portion of a magistrate's report and recommendation to which no objection has been made as long as there is no clear error on the face of the record. *Advance Coatina Tech Inc. v. LEP Chem. Ltd.,* 142 F.R.D. 91, 94 (S.D.N.Y.1992).

**\*2** Where a party only raises general objections, "a district court need only satisfy itself there is no clear error on the face of the record." *Id.; see also Brown v. Peter,* 1997 U.S. Dist. LEXIS 14718, at \*7 (N.D.N.Y. Sep. 19, 1997). Indeed, "objections that are merely perfunctory responses argued in an attempt to engage the district court in rehashing of the same arguments set forth in the original petition will not suffice to invoke *de novo* review of the magistrate's recommendations." *Vega v. Artuz,* 2002 U.S. Dist. LEXIS 18270, \*3, 2002 WL 31174466 (S.D.N.Y. Sept. 30, 2002). Such objections "are frivolous, general and conclusory" and would "reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Id.* (internal citations and quotations marks omitted).

After conducting the appropriate level of review, the Court may then accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate. 28 U.S.C. § 636(b)(1)(c); *see also* Local Civil Rule 72.1(d).

B. Petitioner's First Objection: The trial court failed to conduct an inquiry of a juror who spoke with a lead police witness during trial

In his first objection, Petitioner contends that during Petitioner's trial, Juror Ferdinand Rivera had a conversation with "the prosecution's leading police witness," Detective Richard Canelo, outside the Courtroom. (Objections ¶ 9.) Upon discovery of the conversation, the trial court spoke to Det. Canelo on the record before deciding that the contact between Juror Rivera and Det. Canelo had no impact on the proceedings

or Juror Rivera's ability to continue as a juror. (Objections ¶ 11.) However, Petitioner contends that the trial court should have conducted a separate inquiry with Juror Rivera regarding his interaction and conversation with Det. Canelo. (Objections ¶ 15.) As required by 28 U.S.C. § 5636(b)(1)(c), the Court will conduct a *de novo* review of Magistrate Judge Cott's findings that relate to Petitioner's first objection to the Report.

After opening statements, Det. Canelo informed the court, outside of the presence of the jury, that he had spoken with Juror Rivera in the hallway earlier in the day. (Trial Tr. at 5.) The conversation began with Juror Rivera remarking that Det. Canelo "wasn't here yesterday," to which Det. Canelo responded that he was "a detective on one of the cases." (*Id.*) Juror Rivera then "said something about the trains being delayed; about the weather." (*Id.*) Juror Rivera said he was a paramedic and asked where Det. Canelo worked. Det. Canelo responded that he worked in Washington Heights, and the conversation ended. (*Id.*)

No other jurors were present, and the conversation did not touch on the case. (*Id.*) Det. Canelo did not know that Juror Rivera was a juror. (*Id.* at 6.)

Counsel for codefendant Jose Luis Carlos asked the trial court to question Juror Rivera about the conversation, but the trial court declined to do so, reasoning that it did not "like singling out jurors" and that it was satisfied on this record that nothing inappropriate took place, especially considering that there was no discussion about the case. (*Id.*) Carlos's counsel then requested that the court remove Juror Rivera from the jury, arguing that Juror Rivera was "ingratiating himself with the detective." (*Id.* at 7.) The court declined, pointing out that Det. Canelo had not told Juror Rivera that both men were involved with the same case. (*Id.*)

**\*3** Petitioner's trial counsel asserted that Juror Rivera would recognize Det. Canelo when Det. Canelo testified and would have formed an opinion about Det. Canelo's credibility based on the fact that "[t]hey had his very friendly, lovely conversation." (*Id.*) The prosecutor responded that Juror Rivera and Det. Canelo had a "one-way conversation" that would not have allowed Juror Rivera to form an opinion about Det. Canelo. (*Id.* at 8.)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060728 (S.D.N.Y.)

(Cite as: 2010 WL 5060728 (S.D.N.Y.))

Counsel for codefendant Guillermo Acevedo reiterated the earlier motion to question Juror Rivera. (*Id.*) The court again declined to do so. (*Id.*)

1. Independent and Adequate State Grounds

As Magistrate Judge Cott noted in his Report, the Second Circuit has stated that ordinarily, federal review is precluded where "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Carrion v. Smith,* 549 F.3d 583, 587 (2d Cir.2008) (quoting *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996)).

Here, the Appellate Division concluded that Petitioner's constitutional arguments regarding the trial court's determination concerning Juror Rivera were not preserved for appellate review because Petitioner's counsel never lodged an objection based on federal constitutional grounds. *See People v. Devison,* 38 A.D.3d 203, 204, 831 N.Y.S.2d 64, 65 (1st Dep't 2007). The trial transcript confirms that Petitioner's counsel did not specifically assert a federal constitutional basis for Petitioner's objections at trial. (See Trial Tr. at 5-7.)

The Court agrees with Magistrate Judge Cott's analysis that New York Criminal Procedure Law § 470.05-the statute that requires preservation of issues at trial-is an independent and adequate state procedural bar to Petitioner's claims. *See Garcia v. Lewis,* 188 F.3d 71, 78-79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citing *Bossett v. Walker,* 41 F.3d 825, 829 n. 2 (2d Cir.1994)); *see also Garvey v. Duncan,* 485 F.3d 709, 720 (2d Cir.2007); *Cotto v. Herbert,* 331 F.3d 217, 239-41 (2d Cir.2003); *Rhagi v. Artuz,* 309 F.3d 103, 106 (2d Cir.2002) ("Absent a showing of cause and prejudice, it is settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas.").

In Paragraph 7 of his Objections, Petitioner cites *DeBerry v. Portuondo,* 403 F.3d 57 (2d Cir.2005) to support his argument that there was no independent state judgment or procedural bar here as "all six (6) of Petitioner's original claims ... contain ambiguous language such as: 'The claims are either unpreserved or were we to

review these claims they would be without merit.' " In *DeBerry,* the Second Circuit held that where it is "impossible to ascertain with any confidence" if the Appellate Division found a claim procedurally barred, then no independent and adequate state ground bars federal review. The Court in *DeBerry* examined the Appellate Division's dismissal of certain claims by the following sentence: "The defendant's remaining contentions are either unpreserved for appellate review ... *or* are without merit." (Emphasis Added.) However, here, the Appellate Division clearly stated: "Defendant's constitutional arguments regarding the court's determination are unpreserved (*see e.g. People v. Kello,* 96 N.Y.2d 740, 743-744, 723 N.Y.S.2d 111, 746 N.E.2d 166 (2001)), *and* without merit." (Emphasis Added.) The distinction between "or" in *DeBerry* and the word "and" here is paramount. By using "or" the federal court in *DeBerry* was unable to ascertain exactly what basis each claim was extinguished by the Appellate Division. There no such problem here because by using "and," it is clear the Appellate Division is stating that Petitioner's claim is unpreserved.

**\*4** Even though the Appellate Division found that Petitioner's constitutional claim was unpreserved for state appellate review and procedurally bars Petitioner's claim (*see Garcia,* 188 F.3d at 82), federal review of Petitioner's claim is still possible if the Appellate Division's application of its rule to the Petitioner's case was unreasonable or "exorbitant." *See Garvey,* 485 F.3d at 718. This requires an analysis of the *Cotto* factors found in *Cotto v. Herbert,* 331 F.3d 217 (2d Cir.2003) (noting that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."). These factors are: (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Id.* at 240.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060728 (S.D.N.Y.)

(Cite as: 2010 WL 5060728 (S.D.N.Y.))

a. Was the alleged violation actually relied on at trial, and would perfect compliance have changed the trial court's decision; and

b. Did New York State case law indicate that compliance with the rule was demanded in the present case?

Magistrate Judge Cott's engaged in a comprehensive analysis in finding that the *Cotto* factors do not require federal review of Petitioner's claim given that the Appellate Division found his claims procedurally barred. First, Magistrate Judge Cott correctly found that under the first *Cotto* factor, whether the trial judge "actually relied on" the procedural default here "is less applicable in this case because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court" and "the likely impact of a timely objection involves a certain degree of speculation." *Cotto,* 331 F.3d at 242-43; *see also Ashley v. Burge,* 2006 WL 3327589, at *5 (S.D.N.Y. Nov.3, 2006) (explaining that perfect compliance would have changed the outcome, "is less relevant" in evaluating the failure to preserve a claim.). Accordingly, as Magistrate Judge Cott found, the first *Cotto* factor does not suggest that application of the rule was "exorbitant."

As to the second *Cotto* factor, Magistrate Judge Cott found that New York courts consistently require compliance with the contemporaneous objection rule, except in unique circumstances. *See, e.g., People v. Hicks,* 6 N.Y.3d 737, 739, 810 N.Y.S.2d 396, 843 N.E.2d 1136, 1138 (N.Y.2005) (concluding that defendant's contention that trial court failed to conduct probing inquiry of allegedly biased juror was unpreserved in absence of protest to scope or intensity of court's inquiry of juror) (citing C.P.L.R. 470.05(2)); *People v. Dandridge,* 45 A.D.3d 330, 331, 845 N.Y.S.2d 55, 57 (1st Dep't 2005) (rejecting as unpreserved defendant's claim that trial court failed to make additional inquiry of juror when defendant failed to object to inquiry that trial court made or request additional inquiry). While "unique circumstances" may require federal review of an otherwise adequate state-law ground, Petitioner here offers no special circumstances here. *Compare Lee v. Kemna,* 534 U.S. 362, 380-88, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) (holding that the sudden, unanticipated, and unexplained disappearance of

critical, subpoenaed witnesses on the last day of trial may excuse strict compliance with a state rule of procedure) *with Garvey v. Duncan,* 485 F.3d 709, 719 (2d. Cir.2007) (quoting *Lee* and finding no unique circumstances that led to noncompliance).[FN3]

> [FN3.] Petitioner cites *United State v. Torres,* 128 F.3d 38 (1997) and *Remmer v. U.S.,* 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (U.S.1956) in arguing that the trial court erred when it refused to interview Juror Rivera. It is clear, however, that both *Torres* and *Remmer* are legally and factually distinguishable from this case. *Torres* is inapposite to the facts presented here and, in fact, the *Torres* Court strongly reiterates that a trial judge has much discretion in how a court can determine if a juror possesses actual, implied or inferable bias. *Torres,* 128 F.3d at 43. In *Remmer,* the Court examined the affect of alleged jury tampering and subsequent interview of a juror by law enforcement-all while that juror was sitting on a panel. This is quite different from the circumstances described in this case, where a juror and a witness engaged in an innocent conversation, unbeknownst of each other's identity, as participants in the same case.

**\*5** Since there was no "unique circumstances" that caused Petitioner's failure to comply with C.P.L. § 470.05(2), Magistrate Judge Cott is correct that the second *Cotto* factor does apply and application of the procedural bar was not exorbitant. *Garvey,* 485 F.3d at 719; *see also Lee,* 534 U.S. at 382.

c. Would demanding perfect compliance with the contemporaneous objection rule serve a legitimate governmental interest?

Finally, as Magistrate Judge Cott found, it is clear that Petitioner did not "substantially comply" with the contemporaneous objection rule. Demanding compliance with C.P.L. § 470.05 serves a legitimate governmental interest: "the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." *Garvey,* 485 F.3d at 720. While Petitioner's counsel did put the trial court on notice regarding his

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060728 (S.D.N.Y.)

(Cite as: 2010 WL 5060728 (S.D.N.Y.))

belief that the trial court should question Juror Rivera regarding his conversation with Det. Canelo, Petitioner's counsel's omission of any federal dimension in his comments to the court hindered the furtherance of the court's legitimate governmental interest in requiring compliance with the rule as the trial court could not consider a federal constitutional basis for Petitioner's objection. Thus, Magistrate Judge Cott is correct that the third *Cotto* Factor does not suggest that the Appellate Division's application of C.P.L. § 470.05 was exorbitant.

As the Appellate Division's decision was based on a ground independent of any federal question and adequate under firmly established and regularly followed state law, Petitioner's claim that the trial court's refusal to question Juror Rivera violated his federal constitutional rights is procedurally barred.

2. Cause and Prejudice or Fundamental Miscarriage of Justice

Having examined the *Cotto* factors, next Magistrate Judge Cott examined whether Petitioner could overcome the procedural bar by showing "the cause standard" applies. The cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court." *McClesky v. Zant,* 499 U.S. 467,493 (1991) (quoting Murray, 477 U.S. 478, 488 (1976)); *accord* Bloomer v. United States, 162 F.3d 187, 191 (2d Cir.1998). Petitioner has identified no such objective factor external to the defense. Accordingly, the Court need not address the issue of whether Petitioner was prejudiced. *See McCleskey,* 499 U.S. at 502; *Acosta v. Giambruno,* 326 F. Supp.2d 513, 520 (S.D.N.Y.2004).

Finally, Magistrate Judge Cott found that Petitioner makes no showing that failure to consider his claim would result in a fundamental miscarriage of justice. Magistrate Judge Cott is correct that Petitioner points to no evidence to suggest that he is actually innocent, as the record demonstrates that substantial evidence was presented at trial demonstrating his guilt. *See Murray,* 477 U.S. at 495-96.

**\*6** Accordingly, Petitioner is unable to overcome the procedural bar of his claim that the trial court's refusal to question Juror Rivera violated his federal constitutional

rights. The Court fully adopts Magistrate Judge Cott's conclusions on this claim.

C. Petitioner's Second Objection: The trial court failed to dismiss a juror whose aunt lived in the building where the conspiracy took place

In his second objection, Petitioner contends that the trial court erred by refusing to discharge Juror Maria Montalvo after learning that her aunt lived in the same building as Petitioner, which also is where part of the conspiracy occurred. (Objections ¶¶ 21-22.) As required by 28 U.S.C. § 5636(b)(1)(C), the Court will conduct a *de novo* review of Magistrate Judge Cott's findings that relate to Petitioner's second objection to the Report.

At the end of the day on April 15, 2004, after the government's first witness concluded his testimony and after the jury had left the courtroom, a court officer reported that Juror Maria Montalvo had told the officer that her aunt lived at 552 West 146th Street, one of the buildings in which Petitioner and his codefendants worked. (Trial Tr. at 80.) The officer stated that she only realized her aunt lived in a building involved in the case when she "watched the building," presumably on a video introduced into evidence. (*Id.*) The court recalled Juror Montalvo. In response to the court's questions, Juror Montalvo stated that she had visited her aunt at 552 West 146th Street, but that she had not done so since September or October 2003, six or seven months before Petitioner's trial, when she went in "for two seconds." (*Id.* at 81.) Juror Montalvo assured the court that she would not visit the building for the duration of the trial and that she did not know any of the defendants or witnesses in the case. (*Id.* at 81-82.) Further, she agreed that she had formed no opinion about the case based on her visits to the building and that she had not discussed the matter with any other jurors, after which she exited the courtroom. (*Id.* at 82.)

After Juror Montalvo departed. Petitioner's counsel stated, "Judge, we have an-" but was interrupted by codefendant Effrain Alfonzo's counsel before he could continue. (*Id.* at 82.) Alfonzo's counsel requested that Juror Montalvo be replaced by an alternate juror, arguing that counsel would not have selected a juror with a relative in 550 or 552 West 146th Street. (*Id.* at 82-83.)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060728 (S.D.N.Y.)

(Cite as: 2010 WL 5060728 (S.D.N.Y.))

Codefendant Jose Luis Carlos' counsel declared his concern to be "what [Montalvo had] been told by her aunt, [and] what she's heard about the building." (*Id.* at 84.) Codefendant Guillermo Acevedo's counsel was concerned that Juror Montalvo had not disclosed the place of her aunt's residence during voir dire. (*Id.* at 85-86.) After his initial interrupted statement, Petitioner's counsel was silent during this exchange.

The court declined to replace Juror Montalvo with an alternate juror. (*Id.* at 86.) It noted that Juror Montalvo had not intentionally withheld information during voir dire, but had only realized that her aunt lived in a building involved in the case when she saw an image of the building during the trial. (*Id.* at 84.) After declining to remove Juror Montalvo, the court adjourned. (*Id.* at 87.)

**\*7** The court reconvened on April 19, 2004. Codefendant Carlos' counsel then renewed the motion to have Juror Montalvo removed from the jury. (*Id.* at 94.) He reported that a defendant's family member who had been observing the trial had "recognized [Montalvo] from 146th Street." (*Id.*) He further stated that Montalvo's aunt had "had confrontations with members of the Acevedo family" and that "it's believed that ... [Montalvo's aunt] filed complaints with the 30th Precinct about what was going on, on that block." (*Id.*) Alfonzo's counsel asked for a hearing because Juror Montalvo's aunt "may have had a conversation about her complaints, about her living situation with [Montalvo]." (*Id.* at 97.) Petitioner's attorney took no part in this exchange.

The court denied both the motion to remove Juror Montalvo and the motion for a hearing. (*Id.*) The Court stated that it did not consider the family member's alleged recognition of Juror Montalvo to be "credible or relevant or probative," reiterating that Juror Montalvo had, in response to the court's questioning, stated that she knew nothing about the case or any name involved with it. (*Id.* at 95.) If a relative of a defendant could disqualify a juror simply by claiming to recognize her, the court reasoned, a relative would be likely to make such a claim if he felt the trial was progressing in a direction contrary to his wishes. (*Id.*) The court further dismissed Alfonzo's counsel's suggestion that Juror Montalvo and her aunt discussed the drug dealing at 550 and 552 West 146th Street as

"speculation." (*Id.* at 97.) The Appellate Division affirmed the trial court's decision, reasoning that "the juror did not have implied bias based on th[e] remote fact" that her aunt lived in one of the buildings in which the drug dealing occurred. *Devison,* 831 N.Y.S.2d 64, 64-65, 38 A.D.3d 203, 204-5.

1. Juror Bias

In order to assess Petitioner's claim, Magistrate Judge Cott engaged in an analysis of whether Juror Montalvo possessed the bias necessary to require her to be excused as a juror. Of course, "due process does not require a new trial every time a juror is placed in a potentially compromising situation." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (bias could not be imputed to juror who submitted, during criminal trial, employment application with district attorney's office prosecuting the case). Instead, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* "In reviewing claims of juror bias, the deference due to district courts is at its pinnacle: 'A trial court's findings of juror impartiality may be overturned only for manifest error.' " *Skilling v. U.S.,* --- U.S. ----, at ---- - ----, 130 S.Ct. 2896, at 2923-24, 177 L.Ed.2d 619 (2010) (no bias imputed to jurors who assured trial court that they could be impartial) (quoting *Mu'Min v. Virginia,* 500 U.S. 415, 428, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991)). In addition, there is a presumption of correctness that attaches to a trial court's determination of juror impartiality. *See Fama Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 813 (2d. Cir.2000).

**\*8** Magistrate Judge Cott correctly analyzed the case here with that of the jurors in *Skilling.* Here Juror Montalvo assured the court that she could remain impartial. (Trial Tr. at 82.) She stated that she had not visited her aunt's residence in a number of months, promised she would not go to the building during trial, and unequivocally agreed that she would have neither formed an opinion about the case based on her visit to the building, nor mentioned the fact that she had been to 552 West 146th Street to any other juror. (*Id.*) It is clear that the court acted well within its discretion in its determination

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060728 (S.D.N.Y.)

(Cite as: 2010 WL 5060728 (S.D.N.Y.))

that Juror Montalvo was impartial. The Appellate Division's conclusion that Juror Montalvo was impartial, and that the court properly declined to replace her, was a proper application of Supreme Court precedent. Accordingly, as Magistrate Judge Cott found, Petitioner's claim is, therefore, meritless. [FN4]

> FN4. As Magistrate Judge Cott noted, to the extent Petitioner argues Juror Montalvo should have been dismissed pursuant to C.P.L. § 270.20(1)(c), that claim fails as well as the Appellate Division concluded that this argument was "unpreserved" and stated that were it to review the claim, it "would find it to be without merit, ...." Devison, 38 A.D.3d at 205, 831 N.Y.S.2d at 64. Nothing on the record suggests that this procedural bar should be disturbed as New York's contemporaneous objection rule is an "independent and adequate state ground" that procedurally bars habeas review. (See the Court's reasoning in Section A, supra.)

D. Petitioner's Third Objection: Ineffective Assistance of Counsel

In his third objection, Petitioner contends that "his conviction was unduly rendered in direct contravention of his rights under the Sixth and Fourteenth Amendments to the United States Constitution because trial counsel failed to make motions for the trial court to: (1) conduct a probing and tactful inquiry of the sworn juror who was observed interacting and conversing with a lead prosecution witness during trial and (2) remove a juror that was related within the sixth degree to a person that lived in the same building where the alleged conspiracy occurred." As required by 28 U.S.C. § 5636(b)(1)(c), the Court will conduct a de novo review of Magistrate Judge Cott's findings that relate to Petitioner's third objection to the Report.

To prevail on an ineffective-assistance-of-trial-counsel claim, Petitioner must show: (1) that counsel's performance was deficient; and (2) actual prejudice to the defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner would need to show that trial counsel's conduct fell "outside the range of professionally

competent assistance" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

As Magistrate Judge Cott concluded, the Court agrees that the record indicates that trial counsel did not perform in a deficient way; and (2) no prejudice to Petitioner can be shown. Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

Magistrate Judge Cott found that as to deficiency, both of Petitioner's alleged claims, i.e., the failure of trial counsel to make motions as to Jurors Rivera (speaking to a trial witness) and Juror Montalvo (related to a person that lived where the crime occurred) can not be sustained because as discussed in Sections B and C, supra, they would have been meritless had the trial court considered them. Indeed, on other grounds, Petitioner's trial counsel's actions can easily be characterized as strategic decisions and "virtually unchallengeable." Strickland, 466 U.S. at 690. Finally, there is also no evidence on the record that Petitioner suffered any prejudice from his counsel's performance. Id. at 697.

E. Petitioner's General Objections

*9 Although not specifically addressed in Petitioner's Objections, Petitioner's Petition also argues the following: (1) he was deprived of his due process right and his right to an impartial jury by the trial court's denial of two of his for-cause challenges to two prospective jurors-Maria Vasquez and John Davin; (2) the trial court improperly declined to question Juror Yoiata Ehe after she disclosed she had been robbed during the course of the trial; (3) the trial court improperly declined to question Juror Andrea Scheuer before she was discharged when she informed the trial court she had formed an irrevocable opinion about defendants' guilt or non-guilt; and (4) the trial court erred by not giving a multiple conspiracies charge.

Where a party only raises general objections, "a district court need only satisfy itself there is no clear error on the face of the record." Advance Coatina Tech Inc., 142 F.R.D. at 94; see also Brown, 1997 U.S. Dist. LEXIS 14718, at *7. After a review of the Report and the record,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5060728 (S.D.N.Y.)

(Cite as: 2010 WL 5060728 (S.D.N.Y.))

the Court is satisfied with Magistrate Judge Cott's thorough and thoughtful analysis of Petitioner's remaining claims and arguments and fully adopts Magistrate Judge Cott's findings.

*IV. CONCLUSION*

ORDERED AND ADJUDGED as follows:

1. The Report and Recommendation of United States Magistrate Judge James L. Cott, dated October 15, 2010 be and the same hereby is APPROVED, ADOPTED, and RATIFIED by the Court in its entirety;

2. Pursuant to Judge Cott's recommendation, the Court DENIES Petitioner Miguel Devison's writ, DISMISSES the petition, and the Court DECLINES to issue a certificate of appealablity;

3. The Court hereby DENIES as moot Petitioner's November 29, 2010 (date stamped December 6, 2010) Order to Show Cause for an Injunction and Restraining Order requesting that New York State correctional and/or parole officers be restrained from "allowing INS to gain custody of petitioner until the outcome of petitioner's conviction is finalized"; and

4. The Clerk of the Court is directed to close the docket in the above-captioned case,

SO ORDERED.

S.D.N.Y.,2010.

Devison v. Cunningham
Slip Copy, 2010 WL 5060728 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Alberto MARTINEZ, Petitioner,
v.
Joseph J. COSTELLO, Superintendent, Mid–State
Correctional Facility, and Eliot Spitzer, Attorney
General of the State of New York, Respondents.
No. 03 Civ. 2763(GEG).

Jan. 5, 2004.

**Background:** Defendant convicted of criminal possession of a controlled substance in the second degree brought a pro se petition for a writ of habeas corpus.

**Holdings:** The District Court, Gorenstein, United States Magistrate Judge, held that:

(1) determination that defendant was not entitled to withdraw his guilty plea on the ground that it was unknowing was not unreasonable;

(2) defendant had no federal constitutional right to an evidentiary hearing on his motion to withdraw his guilty plea; and

(3) trial court did not violate defendant's right to counsel when it failed to appoint new counsel to represent defendant on his motion to withdraw the guilty plea.

Petition denied.

West Headnotes

**[1] Habeas Corpus 197 ☞ 475.1**

197 Habeas Corpus

197II Grounds for Relief; Illegality of Restraint
197II(B) Particular Defects and Authority for Detention in General
197k475 Arraignment and Plea

197k475.1 k. In General. Most Cited Cases
State court's determination that defendant's "vague and conclusory allegations of innocence, [and] lack of comprehension" did not entitle him to withdraw his guilty plea, on the ground that it was unknowing, was not unreasonable, thus precluding habeas relief; statements defendant made during his plea allocution demonstrated that the plea was entered with full knowledge of the charge and the consequences of pleading guilty, and the statements he made during the plea allocution controlled over unexplained statements in his affidavit in support of a withdrawal motion. 28 U.S.C.A. § 2254(d).

**[2] Criminal Law 110 ☞ 274(1)**

110 Criminal Law

110XV Pleas
110k272 Plea of Guilty
110k274 Withdrawal
110k274(1) k. In General. Most Cited Cases
**Habeas Corpus 197 ☞ 475.1**

197 Habeas Corpus

197II Grounds for Relief; Illegality of Restraint
197II(B) Particular Defects and Authority for Detention in General
197k475 Arraignment and Plea
197k475.1 k. In General. Most Cited Cases
Defendant had no federal constitutional right to an evidentiary hearing on his motion to withdraw his guilty plea, and thus, state appellate court's decision upholding the failure to hold such a hearing was not contrary to, or an unreasonable application of, clearly established Federal law, as required for habeas relief. 28 U.S.C.A. § 2254(d).

**[3] Criminal Law 110 ☞ 1828(1)**

110 Criminal Law

110XXXI Counsel
110XXXI(B) Right of Defendant to Counsel

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

110XXXI(B)9 Choice of Counsel
110k1824 Discharge by Accused
110k1828 Particular Cases
110k1828(1) k. In General. Most
Cited Cases

(Formerly 110k641.10(2))

Trial court did not violate defendant's right to counsel when it failed to appoint new counsel to represent defendant on his motion to withdraw a guilty plea; the defendant failed to provide any explanation for attempting to withdrawal his plea when he was given a chance to speak before sentencing or through a pre-sentence motion, and there were no allegations that his attorney attempted to coerce him. U.S.C.A. Const. Amend. 6.

*OPINION AND ORDER*

GORENSTEIN, Magistrate J.

**\*1** Following a plea of guilty to one count of Criminal Possession of a Controlled Substance in the Second Degree in New York County Supreme Court, Alberto Martinez was sentenced as a second felony offender to a prison term of six years to life. He now brings this petition for writ of habeas corpus *pro se* pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of jurisdiction over this petition by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons below, the petition is denied.

I. *BACKGROUND*

In March 1998, Martinez was indicted for Criminal Possession of a Controlled Substance in the First Degree and related charges in connection with a drug sale turned shoot-out which occurred in Martinez's apartment. *See* Martinez's Appellate Brief, dated May 2001 ("App.Brief") (annexed to Petition for Writ of Habeas Corpus, filed April 22, 2003 (Docket # 2) ("Petition")), at 3; Plea: Tr. 3, 7–9. During this incident, Martinez was shot in the face and three other participants also sustained gunshot wounds. App. Brief at 3; Respondents' Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, filed September 3, 2003 (Docket # 11) ("Resp.Opp."), at 2.

On August 19, 1999, Martinez appeared with counsel before the Honorable Ronald A. Zweibel of the New York County Supreme Court for a pre-trial hearing. *See*

*generally* Transcript of Plea Hearing Conducted August 19, 1999 (Docket # 10). Martinez was represented by Alfredo Hernandez, a court-appointed lawyer. Petition at 1. Apparently, plea discussions had been ongoing over the entire one-and-a-half-year period since the case was first indicted. (Plea: Tr. 3). Defense counsel stated to the court that he had "had extensive conversations with Mr. Martinez" and that he had explained to Martinez that various people had made statements against him; Felix Pabon, a participant in the crime, would likely testify against him; cocaine had been recovered from outside Martinez's apartment; and his fingerprints had been lifted from one of the bricks of cocaine. (Plea: Tr. 3). If convicted as charged, Martinez faced a minimum sentence of fifteen years to life, (Plea: Tr. 2), and a maximum of twenty-five years to life, (Plea: Tr. 5). Nonetheless, defense counsel reported that Martinez had been "completely recalcitrant" in participating in the plea discussions. (Plea: Tr. 3).

As of August 19, 1999, all other individuals involved in the incident had pled guilty. (Plea: Tr. 4). The Assistant District Attorney stated on the record that she was offering Martinez a sentence of six years to life in return for a plea of guilty to Criminal Possession of a Controlled Substance in the Second Degree in full satisfaction of the indictment. (Plea: Tr. 3–4, 7). She made it clear that this was the best offer she was allowed to make and that the offer would be revoked as soon as the pre-trial hearing began. (Plea: Tr. 9). She explained her offer based on the facts that "this defendant arranged a drug deal for three kilos of cocaine, in a residential area.... As a result ... four people were shot.... He has three prior felony convictions." (Plea: Tr. 7–8).

**\*2** After consulting with Martinez, defense counsel reported to the court that Martinez was rejecting the offer and was prepared to proceed with the hearing. (Plea: Tr. 9). The first witness was called to the stand but before he could be sworn in, defense counsel asked the court to "hold on just a second" so he could consult with Martinez. (Plea: Tr. 10). Thereafter, Martinez's counsel stated that Martinez was withdrawing his plea of not guilty and entering a plea of guilty. (Plea: Tr. 10–11).

During the subsequent allocution, Martinez

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

acknowledged that he had discussed his case and plea with his attorney, that he understood he was waiving certain constitutional rights, and that he was pleading guilty of his own free will. (Plea: Tr. 11–12). The court asked him: "Are you pleading guilty because you are, in fact, guilty of this crime?" Martinez replied "Yes, sir." (Plea: Tr. 12).

The court asked Martinez if he understood that a plea had the same effect as if he had been convicted after a trial, to which Martinez responded that he did. (Plea: Tr. 12–13). Martinez also stated that he understood the charge he was pleading to and that no one had forced him to enter into the plea. (Plea: Tr. 13). The court then repeated the nature of the charge—Criminal Possession of a Controlled Substance in the Second Degree—and the following colloquy ensued:

THE COURT: It is alleged that the defendant[ ], Alberto Martinez[,] ... in the County of New York, on or about March 15th, 1998, knowingly and unlawfully possessed one or more preparations, compounds, mixtures and substances containing a narcotic drug; to wit, cocaine, and said preparations, compounds, mixtures and substances are of an aggregate weight of two ounces or more. Do you plead guilty to that charge?

THE DEFENDANT: Yes, sir.

(Plea: Tr. 13–14). The clerk officially recorded the plea and the case was scheduled for sentencing on September 1, 1999. (Plea: Tr. 14–15).

A few days later, Martinez filed a *pro se* motion to withdraw his plea that annexed an affidavit. *See* Notice of Motion, dated August 24, 1999, and Affidavit of Alberto Martinez, dated August 25, 1999 ("Martinez Aff.") (both annexed as Ex. A to Resp. Opp.). Both the Notice of Motion and affidavit were "fill-in-the-blank" forms inasmuch as lines appear where case-specific information, such as the defendant's name, docket number, and dates, needs to be filled in. Martinez filled in some of these lines but left blank a large space provided for him to fill in the specific facts supporting his motion. Martinez Aff. ¶ 5.

The affidavit form states that the affiant is "not fully aware of the circumstances involved when he made such

guilty plea," that he "plead [sic] guilty for reasons which are outside the record," that "he was unaware of the fact[ ] that he has a good meritorious defense to the prosecution," and that "he is not guilty of the offense." Martinez Aff. ¶¶ 4–7. The affidavit also contained a statement that "defendant ... was fully aware of the consequences of his plea of guilty." *Id.* ¶ 6. Martinez's counsel later explained that this was a typographical error and that Martinez meant he was *not* fully aware, as the context of the statement implies. *See* Sentencing: Tr. 4; App. Brief at 6 n. 3.

*3 On September 1, 1999, prior to sentencing, Judge Zweibel considered Martinez's motion to withdraw his plea. *See generally* Transcript of Hearing on Motion to Withdraw Plea & Sentencing Hearing Conducted September 1, 1999 (Docket # 9), at 2–8. Defense counsel indicated that the *pro se* motion "puts me in a situation where it would be a conflict of interest for me to remain on this case, an irreconcilable interest [sic]." (Sentencing: Tr. 3). He explained:

Anyway, I did not encourage this motion. I cannot join this motion in good conscience ... and I certainly wouldn't start to feel that I'm in a position to effectively argue such a motion considering a very extensive record that I made on the last date ... regarding the proof in this case, the consequences to the Defendant and what his options were....

So, I have not joined in this motion. This is a pro se motion. I don't know if it would be in conflict. Clearly, I cannot in good conscience argue this particular motion. I think my client stands to be seriously prejudiced if this motion were granted.

(Sentencing: Tr. 4–5). He further stated:

As I said, I feel that I'm at a conflict of interest with this particular motion to withdraw, and I think the Court should make a ruling as to whether to relieve me on this matter regarding this particular motion and have another attorney, maybe, make an effective argument for him on this matter, since I don't feel that I can make an argument, and it may be to his prejudice that he doesn't have an attorney to argue this withdrawal.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

(Sentencing: Tr. 6–7). The trial court declined to allow defense counsel to withdraw and to appoint Martinez a new attorney. (Sentencing: Tr. 7) ("I see no basis for you to be discharged on the basis of this motion that was presented to me. I see no merit whatsoever to this motion, and that application is denied to relieve you, counsel.").

With respect to the underlying motion to withdraw the plea, the trial court examined the papers submitted by Martinez and observed that "[t]hese are boiler plate papers that are prepared within the prison system." (Sentencing: Tr. 4). Further, the court found the assertions made in Martinez's affidavit to be "contrary to the full allocution he made the other day." (Sentencing: Tr. 5–6). The trial judge agreed with the prosecutor's statement that "[t]he only question [is] whether [the plea] was knowing and voluntary, and it was one of the most extensive plea allocutions and discussions on the record, prior to allocution, that I've had since I've been with the District Attorney's Office." (Sentencing: Tr. 7–8).

Before he was sentenced, Martinez was invited to address the court. He stated only: "I don't have any drugs, and I don't know anything about any drugs." (Sentencing: Tr. 11). He was then sentenced to the agreed-upon term of six years to life imprisonment. (Sentencing: Tr. 11).

In May 2001, through newly-assigned counsel, Martinez appealed his conviction, arguing that the "trial court erred in refusing to relieve counsel, who stated that he had a conflict of interest, and in summarily denying Mr. Martinez'[s] motion to withdraw his plea." App. Brief at 6. The conviction was unanimously affirmed by the Appellate Division, First Department, on December 11, 2001. *People v. Martinez,* 289 A.D.2d 70, 733 N.Y.S.2d 867 (1st Dep't 2001). The Appellate Division stated:

**\*4** The court properly exercised its discretion in denying defendant's motion to withdraw his guilty plea without a hearing and without appointing new counsel. Defendant was afforded a sufficient opportunity to present his assertions by means of his written motion, upon which he did not elaborate, and the court gave the motion proper consideration (*see People v. Frederick,* 45 N.Y.2d 520, 410 N.Y.S.2d 555, 382 N.E.2d 1332 [

(1978) ]; *People v. Colon,* 283 A.D.2d 193, 724 N.Y.S.2d 600 [ (1st Dep't 2001) ] ). The motion consisted of vague and conclusory allegations of innocence, lack of comprehension and ineffective assistance of counsel, which the court described as "boilerplate papers that are prepared within the prison system." The court, which had also accepted the guilty plea, was entitled to rely on the plea colloquy, which contradicted defendant's assertions.

*Id.* at 70, 733 N.Y.S.2d 867. Thereafter, Martinez sought leave to appeal to the New York Court of Appeals, which was denied on March 27, 2002. *People v. Martinez,* 97 N.Y.2d 757 (2002).

Martinez is currently incarcerated at the Mid–State Correctional Facility in Marcy, New York. He timely filed this petition for writ of habeas corpus arguing that he was deprived of his right to due process of law and his right to conflict-free counsel when the trial court summarily denied his motion to withdraw his guilty plea without appointing new counsel. *See* Petition at 2–3. Martinez exhausted his state law remedies by presenting the constitutional nature of his claims to each available level of the state courts. *See Daye v. Attorney Gen.,* 696 F.2d 186, 190–92 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

II. *DISCUSSION*

A. *Standard of Review*

Under the Antiterrrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Second Circuit has held that "adjudication on the merits" requires only that the state court base its decision on "the substance of the claim

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001). Furthermore, it is not necessary for the state court to refer to any federal claim or any federal law for AEDPA's deferential standard to apply. *Id.* at 312. In light of the Appellate Division's decision in this case, it is clear that Martinez's claims were adjudicated on the merits. Accordingly, the state court's decision will be reviewed under the standard laid out in 28 U.S.C. § 2254(d).

**\*5** In *Williams v. Taylor,* the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *Williams* also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409.

B. *The Merits of Martinez's Claims*

Martinez argues that his Sixth and Fourteenth Amendment rights were violated when the state court denied his motion to withdraw his plea without appointing new counsel to represent him on the motion. *See* Petition at 2–3, 5–6. The petition appears to raise three claims: (1) the plea was entered unknowingly, in violation of the Due Process Clause; (2) Martinez was denied due process by the state court's failure to hold a hearing on his motion; and (3) the state court's failure to appoint new counsel to represent him on his motion denied Martinez his right to conflict-free counsel. Martinez bases his claims on the allegations in his affidavit and on defense counsel's statements that he had a conflict of interest with regard to

the allegations made in the motion and therefore could not argue the motion on Martinez's behalf. *See id.* at 4–5. Each claim is addressed separately.

1. *Unknowing Guilty Plea*

[1] The Due Process Clause of the Fourteenth Amendment requires that a guilty plea be knowingly and voluntarily entered. *E.g., Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A plea is made knowingly when it is entered " 'with [an] understanding of the nature of the charge and the consequences of the plea.' " *Santobello v. New York,* 404 U.S. 257, 261 n. 1, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (quoting Fed.R.Crim.P. 11).

Martinez does not contend that the plea colloquy itself reflects an improperly entered plea. Rather, Martinez relies on his motion to withdraw his plea, in which he stated that he "plead [sic] guilty for reasons which are outside of the record ... and was [not] fully aware of the consequences of his plea of guilty and also ... he was unaware of the fact[ ] that he has a good meritorious defense." Martinez Aff. ¶ 6. He also stated that he was "not guilty of the offense(s) to which he plead [sic] guilty." *Id.* ¶ 7.

**\*6** Case law reflects that assertions of this kind are insufficient to negate the existence of a valid plea. As the Supreme Court has noted, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal...." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *accord Singh v. Kuhlman,* 1996 WL 337283, at \*3 (S.D.N.Y. June 19, 1996). As already noted, the affidavit containing these statements was a fill-in-the-blank form and Martinez never provided any details explaining—let alone substantiating—any of the conclusory assertions contained in the affidavit. Furthermore, the affidavit completely contradicts Martinez's own statements during his plea allocution. *Compare* Martinez Aff. ¶¶ 4, 6–7, *with* Plea: Tr. 11–15. As for Martinez's contention of having a "meritorious defense," Martinez Aff. ¶ 6, there is no indication anywhere in the record that such a defense actually existed. Indeed, defense counsel stated on the record before the plea:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

I don't think he has much of a defense on [this case], because, after all, he would have to testify in this case to make out the defense that he has and I've advised him he has a criminal record here and that will be made known to the jurors in this case, that he has a criminal record, and that will seriously effect his credibility, in addition to the proof that the prosecution has here, that he at some point possessed the narcotics in this case.

(Plea: Tr. 6). Martinez's motion to withdraw did not elaborate on any new possible defense he had discovered or indicate that he could substantiate his claim of innocence.

Martinez's statements during his plea allocution demonstrate that the plea was knowing in that it was entered with full knowledge of the charge and the consequences of pleading guilty. *See Santobello,* 404 U.S. at 261. The statements Martinez made during the plea allocution control over the unexplained statements in his affidavit. *See Singh,* 1996 WL 337383, at *3. The state court's determination that Martinez's "vague and conclusory allegations of innocence, [and] lack of comprehension" were nothing more than "boilerplate" and "contradicted defendant's assertions," *Martinez,* 289 A.D.2d at 70, 733 N.Y.S.2d 867, was neither contrary to, nor did it involve an unreasonable application of, any clearly established federal law.

2. *Motion to Withdraw Guilty Plea*

[2] The next question raised by Martinez is whether he was entitled to an evidentiary hearing on his motion to withdraw his guilty plea. A recent case from the Second Circuit, *Hines v. Miller,* 318 F.3d 157 (2d Cir.), *cert. denied,* 538 U.S. 1040, 123 S.Ct. 2089, 155 L.Ed.2d 1075 (2003), is almost precisely on point. In *Hines,* the petitioner pled guilty in state court and thereafter sought to withdraw his plea, claiming that his attorney coerced him into accepting the plea and that he was innocent of the crime. *Id.* at 159. Defense counsel asked to be relieved and for new counsel to be appointed to represent the petitioner on the motion. *Id.* The trial court, however, denied the *pro se* motion without holding a hearing and without appointing new counsel, noting that the petitioner had inculpated himself when he entered the plea and stated

during the plea allocution that no one had forced him to plead guilty. *Id.*

*7 In seeking federal habeas review of his conviction, the petitioner in *Hines* argued that the failure to hold a hearing on his motion to withdraw his plea violated due process. 318 F.3d at 161. The Second Circuit held, however, that "a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea." *Id.* at 162; *accord Cosey v. Walsh,* 2003 WL 1824640, at *3 (S.D.N.Y. Apr.8, 2003); *Thomas v. Senkowski,* 968 F.Supp. 953, 956 (S.D.N.Y.1997). Thus, "the failure to hold an evidentiary hearing ... does not offend a deeply rooted or 'constitutional' principle of justice." *Hines,* 318 F.3d at 162 (quoting *Medina v. California,* 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)). The failure to hold a hearing is especially understandable in Martinez's case where petitioner "did nothing more than contradict his own statements at the time he entered the plea," *Hutchings v. Herbert,* 260 F.Supp.2d 571, 581 (W.D.N.Y.2003).

In light of the lack of a federal constitutional right to an evidentiary hearing in this situation, the Appellate Division's decision upholding the failure to hold such a hearing was not "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

3. *Ineffective Assistance of Counsel/Motion to Substitute Counsel*

[3] Martinez also argues that the trial court violated his right to counsel when it failed to appoint new counsel to represent him on his motion to withdraw his plea. *See* Petition at 5–6. *Hines* considered the same issue in the context of petitioner's argument that he was denied effective assistance of counsel by his attorney's failure to represent him on his motion to withdraw his plea. 318 F.3d at 162–64. As is true here, the petitioner in *Hines* based his motion in part on the ground that his attorney had an actual conflict of interest. *Id.*

The *Hines* court noted that such claims can be analyzed two ways: either (1) "as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea," or (2) "as a claim that petitioner was denied the effective

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)

(Cite as: 2004 WL 26306 (S.D.N.Y.))

assistance of counsel because an actual conflict of interest adversely affected counsel's performance." *Id.* at 163 (citations omitted). The Supreme Court has not clarified which analysis courts should apply, but *Hines* observed that the Second Circuit has applied the ineffective-assistance-of-counsel analysis and has "generally decided the case on the basis of whether the underlying motion had sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy.' " *Id.* (citations omitted); *see, e.g., United States v. Davis,* 239 F.3d 283, 285–88 (2d Cir.2001); *Lopez v. Scully,* 58 F.3d 38, 41–43 (2d Cir.1995); *Fluitt v. Superintendent, Green Haven Corr. Facility,* 480 F.Supp. 81, 86 (S.D.N.Y.1979) (Weinfeld, J.). *Hines* also noted that "numerous reviewing courts, irrespective of the analysis employed, have affirmed the denial of a withdrawal motion despite the failure to appoint new counsel." 318 F.3d at 164 (citing cases). *Hines* ruled against the petitioner in that case, holding that there was "no basis for concluding ... that the Appellate Division's decision here constituted an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States." *Id.*

**\*8** *Hines* governs the instant case. If anything, there was more information in the record in *Hines* as to the petitioner's explanation for attempting to withdrawal his guilty plea. *See* 318 F.3d at 159. Here, there is no such information and Martinez failed to provide any when he was given a chance to speak before sentencing or through the pre-sentence motion. In addition, unlike *Hines,* there are no allegations that Martinez's attorney attempted to coerce him. What is left is a patently meritless submission that obviously could not meet the standard of a motion with "sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy,' " *Hines,* 318 F.3d at 163. Thus, the trial court properly concluded that there was no need to appoint new counsel.

Because the Appellate Division's determination upholding this decision was not contrary to, or an unreasonable application of, any clearly established federal law, it must be upheld.

*Conclusion*

For the foregoing reasons, the petition is denied. In addition, because Martinez has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). The Court also certifies, pursuant to 28 U.S.C.1915(a)(3), that any appeal from the judgment would not be taken in good faith.

The Clerk is requested to enter judgment and close this case.

S.D.N.Y.,2004.

Martinez v. Costello
Not Reported in F.Supp.2d, 2004 WL 26306 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.